UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA MENNINGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 19-11441-LTS |
| | ) |
| PPD DEVELOPMENT, L.P., | ) |
| | ) |
| Defendant. | ) |

ORDER ON PLAINTIFF'S MOTION TO COMPEL (DOC. NO. 28)

March 14, 2021

Plaintiff Lisa Menninger brings this action against her former employer, Defendant PPD Development, L.P., pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. Menninger has moved to compel (Doc. No. 28) certain emails exchanged by PPD's managers and HR personnel in response to Menninger's requests for accommodations. PPD originally asserted work product and attorney-client privilege with regard to eleven conversations.[1] The parties subsequently narrowed the dispute to only nine email conversations, which the Court has reviewed in camera. Doc. No. 55. PPD asserts all nine conversations are protected from discovery under the work product doctrine and that one conversation (Conversation 2) is also protected by the attorney-client privilege. For the reasons which follow, Menninger's Motion to Compel (Doc. No. 28) is ALLOWED IN PART and DENIED IN PART.

I.      LEGAL STANDARDS

---

[1] The parties have taken to referring to the various sets of emails at issue as "Conversation __", with each set of emails given its own numeric designation. See, e.g., Doc. No. 29. This written decision adopts the parties' naming convention.

1

A. The Work Product Doctrine

The work product doctrine, first articulated by the United States Supreme Court in Hickman v. Taylor, 329 U.S. 495 (1947) is partially codified in Fed. R. Civ. P. 26(b)(3). It shields from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The core purpose of the privilege "is to protect the adversary trial process itself." Maine v. U.S. Dep't of Interior, 298 F.3d 60, 66 (1st Cir. 2002) (internal quotation marks omitted).

"The First Circuit has taken a narrow view of the attorney work product doctrine." United States ex rel. Wollman v. Mass. Gen. Hosp., Inc., 475 F. Supp. 3d 45, 61 (D. Mass. 2020). In the leading case, the en banc First Circuit explained that the doctrine only applies to those documents "prepared for use in possible litigation[.]" United States v. Textron Inc. & Subsidiaries, 577 F.3d 21, 27 (1st Cir. 2009) (en banc) (emphasis in original).

B. The Attorney-Client Privilege

The attorney-client privilege applies:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002) (quoting 8 J.H. Wigmore , Evidence § 2292, at 554 (McNaughton rev. 1961)).

The privilege "protects 'only those communications that are confidential and are made for the purpose of seeking or receiving legal advice.'" Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 24 (1st Cir. 2011) (quoting In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003)). "By safeguarding communications between

2

attorney and client, the privilege encourages disclosures that facilitate the client's compliance with law and better enable him to present legitimate arguments when litigation arises." Id. at 23 (citing United States v. Mass. Inst. of Tech., 129 F.3d 681, 684 (1st Cir. 1997)). "Still, the privilege is not limitless, and courts must take care to apply it only to the extent necessary to achieve its underlying goals." In re Keeper of Records, 348 F.3d at 22 (citing In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.), 274 F.3d 563, 571 (1st Cir. 2001)). Thus, "the attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." Id. (citing United States v. Nixon, 418 U.S. 683, 709–10 (1974)).

II. DISCUSSION

The Court considers in turn each of the nine email conversations submitted for in camera review.[2]

A. Conversation 1

This conversation consists of seven emails sent on March 12, 2018 between Chad St. John, the Human Resources official assigned to Menninger's requests for accommodations, and Deborah Ballweg, PPD's Executive Director for Human Resources (and St. John's supervisor). Doc. No. 55. The brief exchange is purely administrative, relating to whether and when St. John had sent Menninger an email. None of these emails are protected by the work product doctrine.

B. Conversation 2

This conversation consists of a single attachment to an email sent to PPD's in house counsel on March 12, 2018. Doc. No. 55-1. The parties do not dispute whether the email to

---

[2] The parties represent they have resolved their disputes regarding Conversation 3 and Conversation 6. Doc. No. 48 at 2.

counsel itself must be turned over; the sole question is whether the attachment to this email is discoverable. The attachment is itself an email which has previously been produced to Menninger. Thus, the only information which could be gleaned from production is counsel for PPD's interest in the attachment. That fact is privileged, and the attachment therefore need not be produced.

    C.  Conversation 4

This conversation consists of some number[3] of emails exchanged between or among St. John, Ballweg, and Hacene Mekerri (Menninger's direct supervisor) dated from April 20, 2018 to May 1, 2018. Doc. No. 55-2. The emails document internal communications between these managers over how they ought to respond to an email sent by Menninger to Mekerri on April 17, 2018. None of the emails are privileged, with the exception of the email sent by Ballweg to St. John on April 20, 2018 at 12:25 p.m.

    D.  Conversation 5

This conversation consists of six emails[4] exchanged on April 26, 2018 between Ballweg and St. John. The emails discuss the logistics of sending Menninger an email. Doc. No. 55-3. The only possible basis for PPD's invocation of the work product doctrine is the implication

---

[3] The parties filed a status report which included an attached spreadsheet detailing the documents in dispute. Doc. No. 42-1. From this spreadsheet, the Court understands that Conversation 4 contains twelve emails, of which five have already been produced. Id. at 10–12. PPD's in camera submission included only six of the remaining seven emails in this conversation. PPD's submission did not include the email labeled CTRL00105048, which the Court understands to still be the subject of dispute. See id. at 12. The parties are instructed to confer over whether the Court's ruling today resolves PPD's assertion of privilege as to CTRL00105048 and to jointly propose a path forward if it does not.

[4] In briefing, Menninger states this conversation contains only five emails. Doc. No. 29 at 10. But the spreadsheet jointly submitted by the parties indicates Conversation 5 consists of six emails, see Doc. No. 42-1 at 11, and PPD submitted six separate emails for in camera review, see Doc. No. 55-3.

arising from this exchange that in house counsel was involved in editing the email to Menninger. That is not adequate to support PPD's claim of privilege; the conversation must be produced.

    E.  Conversation 7

This conversation consists of a single email from St. John to Mekerri discussing Menninger's proposal for hiring an additional employee to cover what she describes as "existing compliance gaps" within the organization. Doc. No. 55-4 at 2. The document is not privileged with the exception of the final bullet point appearing under the heading "Upside." PPD may redact that sentence from the document prior to production.

    F.  Conversation 8

This conversation consists of a single email from St. John to Ballweg dated May 14, 2018. Doc. No. 55-5. In this email, St. John details his search for emails from Menninger's supervisor documenting prior performance issues. The conversation is not privileged.

    G.  Conversation 9

This conversation consists of six emails between St. John and Ballweg entitled "RE:FYI." Doc. No. 55-6. The emails discuss an upcoming meeting with Menninger and suggest in house counsel assisted in preparing for the meeting (but does not disclose the content of counsel's advice). The conversation is not privileged.

    H.  Conversation 10

This conversation consists of a single email from Ballweg to St. John dated May 22, 20018. Doc. No. 55-7. The conversation relies upon advice of counsel and is shielded by the work product doctrine.

    I.  Conversation 11

This conversation consists of a single email from Ballweg to St. John dated May 25, 2018. Doc. No. 55-8. The email discusses efforts being undertaken to aid counsel in anticipation of litigation. It is shielded by the work product doctrine.

III. CONCLUSION

For the foregoing reasons, Menninger's Motion to Compel (Doc. No. 28) is ALLOWED IN PART and DENIED IN PART as detailed herein. PPD shall comply with this Order within three business days.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge