UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA MENNINGER, <br><br> Plaintiff, <br><br> v. <br><br> PPD DEVELOPMENT, L.P., <br><br> Defendant. | Civil Action No. 1:19-CV-11441-LTS |

**MEMORANDUM IN SUPPORT OF DEFENDANT PPD DEVELOPMENT, L.P.'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF POTENTIAL DISABILITY ACCOMMODATIONS THAT PLAINTIFF DID NOT REQUEST DURING HER EMPLOYMENT**

By accompanying Motion, Defendant PPD Development, L.P. ("PPD") has moved *in limine* to exclude from the evidence admitted at trial any evidence of potential accommodations of Plaintiff Lisa Menninger's disability that Plaintiff or her medical provider did not request during Plaintiff's employment with PPD. In its Order on PPD's Motion for Summary Judgment (ECF Doc. No. 81), the Court held that if Plaintiff is able to carry her burden of showing that she could perform the essential functions of her position at PPD with a reasonable accommodation, she will also have to show (among other things) not only that a reasonable accommodation existed, but also that she requested the accommodation in question. Accordingly, evidence of other accommodations that PPD might have provided but that Plaintiff did not request is irrelevant to the issues that the jury must decide in this case. In addition, even if such evidence were relevant, it would nevertheless be subject to exclusion as unduly prejudicial.

**Background**

A.  Plaintiff's employment with PPD and requests for accommodation.

On August 31, 2015, PPD hired Plaintiff as the Executive Director of its Global Central Labs, based in Highland Heights, Kentucky. In this role, Plaintiff was responsible for overseeing the Labs' operations. In late 2016, Plaintiff asked that she be permitted to work remotely because her daughter was being bullied, and Plaintiff wanted to move her family to the east coast. PPD granted that request, and in June 2017 Plaintiff moved to Massachusetts.

In April 2017, Plaintiff's supervisor, Hacene Mekerri, told Plaintiff that he wanted her to be more involved than she had been in two important aspects of her job: client meetings and influencing business development. In addition, on December 20, 2017—during a meeting with Plaintiff to discuss her performance and PPD's expectations for 2018—Mr. Mekerri again encouraged Plaintiff to focus on being more involved in client meetings and in various aspects of business development, including increased social interactions and presentations. As part of PPD's annual executive talent assessment, completed on December 20, 2017, Mr. Mekerri rated Plaintiff's performance as "fully effective," but also noted that while her business performance had been "solid," there was a "risk of falling behind due to lack of leadership capability."

On January 11, 2018, Plaintiff sent an email to Mr. Mekerri in which she disclosed, for the first time, that she suffered from "generalized anxiety disorder that includes social anxiety disorder and panic attacks." Mr. Mekerri connected Plaintiff with Chad St. John, an employee in PPD's Human Resources department, who provided Plaintiff with accommodation request forms. On January 31, 2018, Plaintiff's psychiatrist, Dr. Marianna Kessimian, submitted to PPD an accommodation request form noting that "[a]ny change to [Plaintiff's] role that increase the need for public speaking and/or social interactions will increase her anxiety and worsen her

somatic symptoms, which would make it substantially more difficult, if not impossible, for [Plaintiff] to perform her job."

On February 6, 2018, Mr. Mekerri emailed Plaintiff and Mr. St. John to describe his specific expectations of Plaintiff with respect to her involvement in client meetings and business development that he had referred to during the December 20, 2017 meeting:

> (1) senior leadership team presentations, Town Hall meetings, and meetings with the Chief Operating Officer and Executive Vice President (bi-weekly, monthly, and/or quarterly), (2) client bid defenses, issue resolution calls, meetings at Highland Heights and/or client meetings in-person (at client site) or via phone (once a month at minimum per client), (3) technical sales presentations (internal and external) (monthly, quarterly, and as-needed), (4) meals and social interactions while at client visits (expected 60-80% of the time to build business relationships), and (5) travel (up to 30%).

On February 14, 2018, Dr. Kessimian sent her requested accommodations to Mr. St. John and Mr. Mekerri:

> For senior leadership team presentations, Town Hall meetings, and meetings with the Chief Operating Officer and Executive Vice President, Dr. Kessimian requested: [Plaintiff will be] "responsible for all slides/handouts/ presentation material with necessary information but will require a reader to present to the group, or can pre-record the audio/video and it can be played at the meeting available for questions via email after the meeting."  For client bid defenses, issue resolution calls, and meetings at Highland Heights, Dr. Kessimian requested: [Plaintiff will be] "available via email/ text/ remote video conferencing for a representative of the client, 1-2 person audience maximum … If it is a site meeting, surrogate or reader with all necessary information / real time access to [Plaintiff] will be available."  For client site meetings, Dr. Kessimian requested: [Plaintiff] "would like a surrogate to attend, but [Plaintiff] will be responsible for all problem solving/ ideas for resolution if emailed/ communicated to [Plaintiff] a few days before anticipated visit."  For technical sales presentations (internal and external), Dr. Kessimian requested: [for Plaintiff to be] "excused from sales presentations but again [Plaintiff] will provide any necessary data information for the reader/ surrogate to have at their disposal."  For meals and social interactions while at client visits, Dr. Kessimian requested: "[a] surrogate, as this is not

> [Plaintiff's] strength/ skill set and her disability will flare with significant impairment. [Plaintiff] is able to build business relationship in a more 'behind the scenes' fashion and would like [to] brainstorm other potential avenues where she can add value as she does understand this is an important part of the business." Finally, for travel, Dr. Kessimian inexplicably requested that Plaintiff be allowed to travel to PPD's Belgium laboratory, versus its laboratories in the United States (which included the Global Central Labs home-base in Highland Heights, Kentucky).

On February 26, 2018, Mr. St. John emailed Plaintiff to let her know that the Company would provide accommodations with respect to two of the five categories. He explained that the other tasks – which constituted sub-categories of specific expectations falling under the umbrella categories of client-facing meetings and sales presentations – were central to Plaintiff's role and critical to the needs of the business. At Mr. Mekerri's request, Mr. St. John scheduled a meeting for February 28, 2018, to discuss Plaintiff's requests and PPD's responses. *See id*. at ¶¶42-43.

After their meeting, Plaintiff emailed Mr. St. John and Mr. Mekerri to thank them for agreeing to provide some of the accommodations that she had requested, and to ask for more information regarding the other categories of tasks for which PPD could not provide accommodations. On March 12, 2018, Mr. St. John explained the reasons why the Company could not provide some of the accommodations Plaintiff sought. He referenced specific tasks falling within the categories of client-facing meetings and sales presentations – i.e., business development meetings, client dinners, and bid defenses – and noted their importance to the business. The Company was open to "brainstorm[ing] other potential avenues where [Plaintiff] could add value" as Dr. Kessimian had suggested, but it was not possible to do away with these core job requirements. Mr. St. John asked Plaintiff to review her job description with Dr. Kessimian to see if there might be other accommodations that would allow her to perform these essential functions.

On March 24, 2018, Plaintiff emailed Mr. St. John, explaining that although "certain types of tasks" were "challenging due to [her] disability," she was "capable of performing all of [her] responsibilities with or without accommodation." Plaintiff noted that she had met with Mr. Mekerri the week before, and it did not appear that there would be any "activities or events in the near future that would implicate [her] disability" – therefore, she suggested that they "table this discussion until a particular task arises." She further explained that "[d]ealing with these issues in context … might … help us all engage in a more meaningful dialogue."

On April 3, 2018, Mr. St. John assured Plaintiff that the Company was committed to an open dialogue, and that he would continue to review any accommodation requests as she raised them. He asked Plaintiff to let him know if she had any additional accommodation requests. At no time thereafter did Plaintiff ask for any additional or different accommodation(s).

On June 2, 2018, Plaintiff went out on unannounced, unplanned leave (with pay covering the majority of the leave). She remained out of work for the next eight months, at which time PPD needed to find a permanent replacement. Accordingly, the Company terminated Plaintiff's employment effective February 1, 2019.

      B.      <u>Plaintiff's lawsuit, PPD's Motion for Summary Judgment, and the Court's Order on PPD's Motion.</u>

On June 28, 2019, Plaintiff initiated this action by filing her Complaint and Demand for Jury Trial. *See* ECF Doc. No. 1. In her Complaint, Plaintiff alleges (among other things) that PPD violated the Americans with Disabilities Act (the "ADA") and Chapter 151B of the Massachusetts General Laws ("Chapter 151B") by failing to provide her with reasonable accommodations of her disability. *See* Complaint at ¶¶ 18-35, 60-71.

On March 24, 2021, PPD filed a Motion for Summary Judgment. *See* ECF Doc. No. 43. In her Opposition to PPD's Motion, Plaintiff argued that a psychiatric expert whom she had

retained for purposes of this litigation, Dr. Summergrad, had identified "multiple other reasonable accommodations that could have been reached," beyond those that Plaintiff and Dr. Kessimian had identified and requested during Plaintiff's employment, and argued that PPD could be held liable under the ADA and Chapter 151B because it had not provided those accommodations. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (ECF Doc. No. 65) at 11.

In its Order on PPD's Motion for Summary Judgment (ECF Doc. No. 81), the Court rejected Plaintiff's argument. *See* Order on PPD's Motion for Summary Judgment (Doc. No. 43) and Menninger's Motion to Strike (ECF Doc. No. 81) (the "Order") at 11-12 n.11. Specifically, the Court held that if Plaintiff is able to carry her burden of proving that she could perform the essential functions of her job with a reasonable accommodation, she will also have the burden of demonstrating not only that "a reasonable accommodation existed," but also that she "'sufficiently requested the accommodation in question' because 'the ADA's reasonable accommodation requirement usually does not apply unless 'triggered by a request' from the employee." *See id.* at 11 n.11 (quoting *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 260-61 (1st Cir. 2001)). The Court further held that Plaintiff's situation was not one of the "limited situations where different rules apply," and thus that "although the jury will ultimately decide whether the accommodations proposed by Menninger's doctor were reasonable, any accommodations not requested at the time of the underlying events cannot be considered at summary judgment or trial as possible reasonable accommodations." *See id.*

## Argument

In the Order, the Court correctly ruled that in determining whether Plaintiff has carried her burden at trial of showing that a reasonable accommodation existed, the jury may only consider the accommodations that Plaintiff and her medical provider "sufficiently requested" of

PPD "at the time of the underlying events." *See* Order at 11-12 n.11 (quoting *Reed*, 244 F.3d at 260); *see also Freadman v. Metropolitan Prop. & Cas. Ins. Co.*, 484 F.3d 91, 102 (1st Cir. 2007) (holding that "the plaintiff has the burden of showing that she 'sufficiently requested the accommodation in question'"). Accordingly, evidence of other accommodations that PPD might have provided, but that Plaintiff and her medical provider did not sufficiently request at the time, whether offered through her psychiatric expert or otherwise, is irrelevant and therefore inadmissible at trial. *See* Order at 11 n.11; *Freadman*, 484 F.3d at 102; *see also* Fed. R. Evid. 401.

Even if evidence of alternative accommodations not requested by Plaintiff or her medical provider at the time were somehow relevant, it should nevertheless be excluded because its prejudicial effect would far outweigh whatever probative value it might have. Under Rule 403 of the Federal Rules of Evidence, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Here evidence concerning accommodations that Plaintiff did not ask PPD to provide, and that the jury is therefore barred from considering in determining whether Plaintiff carried her burden of establishing the existence of a reasonable accommodation, has no probative value, and if admitted would inevitably confuse the jury as to what accommodations it may consider in determining whether Plaintiff has carried her burden. Accordingly, the substantial risk of prejudice to PPD outweighs whatever probative value evidence of the unrequested accommodations might have.

## Conclusion

For all of the foregoing reasons, PPD respectfully requests that the Court issue an order granting this Motion, and excluding from the evidence to be admitted a trial any evidence of

potential accommodations of Plaintiff's disability that Plaintiff or her medical provider did not request during her employment with PPD.

                PPD DEVELOPMENT, L.P.

                By its attorneys,

                */s/ Patrick M. Curran, Jr.*
                Rachel Reingold Mandel (BBO #660495)
                Patrick M. Curran, Jr. (BBO #659322)
                OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
                One Boston Place, Suite 3500
                Boston, MA 02108
                Telephone: (617) 994-5700
                Facsimile:  (617) 994-5701
                rachel.mandel@ogletree.com
                patrick.curran@ogletree.com

Dated: March 10, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2023 the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                        */s/ Patrick M. Curran, Jr.*
                                        Patrick M. Curran, Jr.

23370737.1