## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

LISA MENNINGER,

                    Plaintiff,

v.                                              Civil Action No.  1:19-CV-11441-LTS

PPD DEVELOPMENT, L.P.,

                    Defendant.

## MEMORANDUM IN SUPPORT OF DEFENDANT PPD DEVELOPMENT, L.P.'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF THE COMPENSATION PAID TO ANY EMPLOYEE OF DEFENDANT OTHER THAN PLAINTIFF

By accompanying Motion, Defendant PPD Development, L.P. ("PPD") has moved *in limine* to exclude from the evidence admitted at trial evidence of the compensation paid to any employee of PPD other than Plaintiff Lisa Menninger. This is a disability discrimination and retaliation case in which the jury must decide whether PPD failed to provide reasonable accommodations of Plaintiff's alleged disability, discriminated against her on the basis of her disability, or retaliated against her for engaging in protected conduct. It is not a pay disparity case, and the compensation paid to other PPD employees has no bearing on Plaintiff's liability or damages claims. Accordingly, any evidence of the compensation paid to other PPD employees should be excluded from the evidence at trial as both irrelevant and unfairly prejudicial.

## Background

On August 31, 2015, PPD hired Plaintiff as the Executive Director of its Global Central Labs, based in Highland Heights, Kentucky. In that role, Plaintiff was responsible for overseeing the Labs' operations. In April 2017, Plaintiff's supervisor, Hacene Mekerri, told Plaintiff that he

wanted her to be more involved than she had been in two important aspects of her job: client meetings and influencing business development. In addition, on December 20, 2017—during a meeting with Plaintiff to discuss her performance and PPD's expectations for 2018—Mr. Mekerri again encouraged Plaintiff to focus on being more involved in client meetings and in various aspects of business development, including increased social interactions and presentations.

On January 11, 2018, Plaintiff sent an email to Mr. Mekerri in which she disclosed, for the first time, that she suffered from "generalized anxiety disorder that includes social anxiety disorder and panic attacks." Mr. Mekerri connected Plaintiff with Chad St. John of PPD's Human Resources department, who provided Plaintiff with accommodation request forms. Thereafter, following an exchange of communications between Mr. St. John and Plaintiff's psychiatrist, Dr. Marianna Kessimian, Dr. Kessimian submitted a list of requested accommodations on behalf of Plaintiff.

On February 26, 2018, Mr. St. John emailed Plaintiff to let her know that the Company would provide accommodations with respect to two of the five categories of accommodations that Dr. Kessimian had identified. He explained that the accommodations requested in the other three categories involved tasks that were central to Plaintiff's role and critical to the needs of the business. At Mr. Mekerri's request, Mr. St. John scheduled a meeting for February 28, 2018, to discuss Plaintiff's requests and PPD's responses. *See id*. at ¶¶42-43.

After their meeting, Plaintiff emailed Mr. St. John and Mr. Mekerri to thank them for agreeing to provide some accommodations, and to ask for more information regarding the other categories of tasks for which PPD could not provide accommodations. On March 12, 2018, Mr. St. John explained the reasons why the Company could not provide some of the accommodations

Plaintiff sought. He referenced specific tasks falling within the categories of client-facing meetings and sales presentations – i.e., business development meetings, client dinners, and bid defenses – and noted their importance to the business.

On March 24, 2018, Plaintiff emailed Mr. St. John, explaining that although "certain types of tasks" were "challenging due to [her] disability," she was "capable of performing all of [her] responsibilities with or without accommodation." Plaintiff noted that she had met with Mr. Mekerri the week before, and it did not appear that there would be any "activities or events in the near future that would implicate [her] disability" – therefore, she suggested that they "table this discussion until a particular task arises." She further explained that "[d]ealing with these issues in context … might … help us all engage in a more meaningful dialogue."

On April 17, 2018, Plaintiff complained to Mr. St. John that Mr. Mekerri was "targeting [her] because of [her] disability." Mr. St. John immediately notified Deborah Ballweg, a more senior member of the Human Resources department, of Plaintiff's complaint about Mr. Mekerri, and they agreed that Ms. Ballweg would conduct an investigation (because Mr. St. John had been involved in the discussions leading up to Plaintiff's complaint). In connection with her investigation of Plaintiff's complaint to Mr. St. John, Ms. Ballweg interviewed Plaintiff on May 2, 2018 (and again on May 15, 2018). She also interviewed Mr. Mekerri, Mr. St. John, and three other PPD employees. After completing the investigation, Ms. Ballweg concluded that there was no evidence of discrimination, and on May 22, 2018, she informed Plaintiff of that conclusion and of her specific findings with respect to the concerns that Plaintiff had communicated to her.

On June 2, 2018, Plaintiff went out on unannounced, unplanned leave (with pay covering the majority of the leave). She remained out of work for the next eight months, at which time

PPD needed to find a permanent replacement. Accordingly, the Company terminated Plaintiff's employment effective February 1, 2019.

On June 28, 2019, Plaintiff initiated this action by filing her Complaint and Demand for Jury Trial. *See* ECF Doc. No. 1. In her Complaint, Plaintiff alleges that PPD's refusal to provide her with all of the accommodations that Dr. Kessimian had requested on her behalf in February 2018 constituted a failure to reasonably accommodate her disability in violation of the Americans with Disabilities Act (the "ADA") and Chapter 151B of the Massachusetts General Laws ("Chapter 151B"), and (2) that the actions by Mr. Mekerri that she had complained about in April 2018, as well as Ms. Ballweg's subsequent investigation of her complaint, constituted disability discrimination and retaliation in violation of the ADA and Chapter 151B. She makes no allegation or claim whatsoever of any pay disparity based on her disability, or on any other basis.

<u>**Argument**</u>

**I.     The compensation paid to other PPD employees is irrelevant to the issues that the jury must decide in this case.**

In order for the compensation of other PPD employees to even conceivably be relevant in this case, Plaintiff would have to show that those other employees are comparators. To be a comparator, the other employee must be similarly situated to the plaintiff "in material respects." *Perkins v. Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996); *see Garcia v. Bristol-Myers Squibb Co.*, 535 F.3d 23, 31 (1st Cir. 2008) (comparators "must 'closely resemble one another in respect to relevant facts and circumstances'") (quoting *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999)); *Kosereis v. Rhode Island*, 331 F.3d 207, 214 (1st Cir. 2003) (comparators must be "similarly situated to [the employee] in all relevant respects"). To be similarly situated to Plaintiff, a PPD employee or former employee must be an Executive

Director of the Company's Global Central Labs, with similar education, work experience, and performance, and who do not have "'differentiating or mitigating circumstances that would distinguish'" their situations from Plaintiffs. *See Perkins*, 78 F.3d at 751 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)); *see also Ray v. Ropes & Gray LLP*, 799 F.3d 99, 114-15 (1st Cir. 2015) (holding that plaintiff's proposed comparators were not similarly situated to plaintiff).

Plaintiff has not alleged that PPD discriminated or retaliated against her by paying her less than other similarly situated employees, and there is no evidence to support such a claim. Further, in determining if two employees' circumstances are substantially similar, courts rely on factors such as performance, qualifications, conduct, and job duties. *See, e.g.*, *Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 129-30 (1997). Plaintiff cannot establish the existence of such a comparator in this case. In addition, the only compensation discovery regarding other PPD employees that Plaintiff sought were two requests for documents—one for documents concerning "the merit salary increase or bonus awarded to Mr. Mekerri's other direct reports in 2018," and another for documents "sufficient to identify the annual compensation, including any bonus or other incentive compensation, paid to the individual hired to assume Plaintiff's job responsibilities." PPD objected to both requests on several grounds, including that the information sought was irrelevant, and refused to produce the responsive documents. Thus, there is no reliable information on the basis of which Plaintiff could claim that any other PPD employees qualify as her comparators, how such employees were compensated, or what her compensation should or would have been based on theirs.

In sum, absent a showing that any PPD employee was similarly situated to Plaintiff, testimony or other evidence regarding the compensation paid to such employees is not probative

of any issues in this case. *See, e.g.*, *Perkins*, 78 F.3d at 751 (holding that the proponents of comparative evidence must demonstrate that the cases are roughly equivalent).

**II.    Evidence of the compensation paid to other PPD employees, even if it were relevant, would be unduly prejudicial and speculative.**

Even if Plaintiff could somehow demonstrate that evidence of the compensation that PPD paid to other employees is relevant to an issue in this case, the evidence should nevertheless be excluded because whatever probative value such evidence could have is substantially outweighed by the danger of unfair prejudice and confusion of the issues. *See* Fed. R. Evid. 403. First, the evidence would lead the jury to conclude that simply because another employee received a particular amount of compensation, or realized a certain return on the stock option or other equity-based incentive compensation that he or she received, Plaintiff would have received the same compensation or return if she had remained employed with PPD, despite the fact that any such conclusion would be entirely speculative and without basis in the evidence. Second, references to the compensation received by other PPD employees might lead the jury to draw to inappropriate and unfair inferences about PPD's "deep pockets" that could activate economic prejudices on the part of the jury. *See, e.g.*, *La Plante v. American Honda Motor Co., Inc.*, 27 F.3d 731, 740 (1st Cir. 1994) (holding that evidence concerning defendant's profits was prejudicial and should not be admitted); *see also Burnett v. Ocean Properties, Ltd.*, No. 2:16-cv-00359-JAW, 2018 WL 5270229, at *1 (D. Me. Oct. 23, 2018) (holding that the court would bifurcate questions of liability/compensatory damages from the question of punitive damages in order to avoid admitting "evidence of wealth" during the liability/compensatory damages phase); *Curtis Manufacturing Co. v. Plasti-Clip Corp.*, 933 F. Supp. 94, 101 (D.N.H. 1995) (holding that the danger of unfair prejudice caused by presenting evidence of defendant's financial condition to the jury outweighed the evidence's probative value). Here, evidence concerning the

compensation paid to other PPD employees has no probative value, and Plaintiff therefore will not be prejudiced by an order excluding that evidence, while admitting the evidence would cause substantial unfair prejudice to PPD and would inevitably confuse the jury. Accordingly, the Court should exclude evidence concerning the compensation that PPD paid to employees other than Plaintiff.

## Conclusion

For all of the foregoing reasons, PPD respectfully requests that the Court grant this Motion, and exclude all testimony and other evidence concerning the compensation paid to any employee of PPD other than Plaintiff.

PPD DEVELOPMENT, L.P.

By its attorneys,

*/s/ Patrick M. Curran, Jr.*
Rachel Reingold Mandel (BBO #660495)
Patrick M. Curran, Jr. (BBO #659322)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Telephone: (617) 994-5700
Facsimile:  (617) 994-5701
rachel.mandel@ogletree.com
patrick.curran@ogletree.com

Dated: March 10, 2023

### <u>CERTIFICATE OF SERVICE</u>

 I hereby certify that on March 10, 2023 the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

<u>*/s/ Patrick M. Curran, Jr.*</u>
Patrick M. Curran, Jr.

23370737.1
