# EXHIBIT A

THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LISA MENNINGER,

        Plaintiff,

v.

PPD DEVELOPMENT, L.P.,

        Defendant.

C.A. NO: 1:19-CV-11441-LTS

## PLAINTIFF'S RULE 26 INITIAL DISCLOSURES

Pursuant to Rules 26 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the District of Massachusetts, Plaintiff Lisa Menninger ("Plaintiff"), by and through her attorneys, hereby makes the following initial disclosures, subject to revision or supplementation as further information is received and analyzed. Plaintiff reserves the right to supplement or amend these disclosures at any time prior to trial, and to utilize subsequently discovered evidence at trial or in connection with pre-trial proceedings.

**A.**     **The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.**

Mason Daniel Menninger likely has discoverable information concerning the allegations in Plaintiff's Complaint, including her disability and emotional distress. This disclosure is made without waiving the spousal disqualification and all applicable spousal communications privileges, marital communications privilege or other applicable privilege afforded to spouses; such privileges are expressly reserved. Mr. Menninger may be reached through the undersigned counsel.

1

Hacene Mekerri likely has discoverable information concerning the allegations in Plaintiff's Complaint, including, without limitation, her working conditions, responsibilities, performance, the disclosure of her disability, and her request for accommodations. Plaintiff is unaware of Mr. Makerri's address and telephone number.

Chad St. John likely has discoverable information concerning the allegations in Plaintiff's Complaint, including, without limitation, her working conditions, responsibilities, performance, the disclosure of her disability, her request for accommodations, and her complaints of harassment and retaliation. Plaintiff is unaware of Mr. St. John's address and telephone number.

Deborah Ballweg likely has discoverable information concerning the allegations in Plaintiff's Complaint, including, without limitation, her working conditions, responsibilities, performance, the disclosure of her disability, her request for accommodations, and her complaints of harassment and retaliation. Plaintiff is unaware of Ms. Ballweg's address and telephone number.

Christopher Fikry likely has discoverable information concerning the allegations in Plaintiff's Complaint, including, without limitation, her working conditions, responsibilities, performance, the disclosure of her disability, her request for accommodations, and her complaints of harassment and retaliation. Plaintiff is unaware of Mr. Fikry's address and telephone number.

Chris Clendening likely has discoverable information concerning the allegations in Plaintiff's Complaint, including, without limitation, Defendant's practices regarding interviewing and hiring senior level candidates, Mr. Clendening's 2018 merit salary increase and/or bonus, and his job responsibilities. Plaintiff is unaware of Mr. Clendening's address and telephone number.

Marianna Kessimian, MD, who has knowledge or information relevant to the allegations in Plaintiff's Complaint, including without limitation, Plaintiff's disability and request for accommodations.  Dr. Kessimian's last known business address is 10 Elmgrove Avenue, Providence, RI 02906.

Michael Everson, MD, who has knowledge or information regarding Plaintiff's disability and attendant medical treatment. Dr. Everson's last known business address is Psychiatry Associates of Kansas City, PA, 8900 State Line Road suite 380, Leawood, KS 66206.

Alicia Burbano, MD, who has knowledge or information regarding Plaintiff's disability and attendant medical treatment.  Dr. Burbano's business address is Sandia Psychiatry, 3900 Juan Tabo Blvd NE, Suite 4, Albuquerque, NM 87111.

Plaintiff may also call any witnesses identified in Defendant's initial disclosures.

**B.      A copy of, or a description by category and location of, all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.**

Plaintiff may use the following categories of non-privileged documents and electronically stored information ("ESI") within her possession, custody or control in support of her claims.

1. Documents concerning Plaintiff's employment with Defendant;

2. Documents concerning Plaintiff's disability and requests for accommodations;

3. Documents concerning Plaintiff's damages.

The documents and ESI described above are currently in the possession of Plaintiff and/or Plaintiff's counsel.  Plaintiff expressly reserves her right to supplement and/or modify the foregoing document categories.

3

**C.**     **A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.**

Plaintiff seeks the following categories of damages:

   a. Back pay;

   b. Front pay;

   c. Emotional distress damages;

   d. Compensatory and punitive damages;

   e. Attorneys' fees and costs; and

   f. Any and all additional relief to which Dr. Menninger may be justly entitled.

**D.**     **Any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

Plaintiff states that she has no such insurance agreements.

Plaintiff reserves the right to supplement these responses pursuant to Fed. R. Civ. P. 26(e).

Dated: October 16, 2019

Respectfully submitted

**Plaintiff Lisa Menninger**

By Her Attorneys

*/s/ Patrick J. Hannon*
HARTLEY MICHON ROBB LLP
Patrick J. Hannon (BBO# 664958)
155 Seaport Boulevard, 2nd Floor
Boston, MA 02210
Telephone: (617) 723-8000
Facsimile: (617) 447-2800
Email: phannon@hartleymichonrobb.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon counsel of record via email

on October 16, 2019 and first class mail on October 17, 2019.

*/s/ Patrick J. Hannon*

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

LISA MENNINGER,

                    Plaintiff,

v.                                                              Civil Action No.  1:19-CV-11441-LTS

PPD DEVELOPMENT, L.P.,

                    Defendant.

## DEFENDANT PPD DEVELOPMENT, L.P.'s FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO PLAINTIFF LISA MENNINGER

Pursuant to Fed. R. Civ. P. 34 and Local Rule 34.1, Defendant PPD Development, L.P. ("PPD" or "Defendant") hereby requests that Plaintiff Lisa Menninger produce the documents indicated below that are in her possession, custody, or control, or in the possession, custody, or control of any one or more of her attorneys, agents, employees, representatives, family members, accountants, and any other person or entity acting for her or on her behalf, for inspection and copying at the offices of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., One Boston Place, Suite 3500, Boston, MA  02108, within thirty (30) days from the date hereof.

## DEFINITIONS

As used herein:

1.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.      "Concerning" means referring to, describing, offering evidence of, or constituting.

3.      "Plaintiff," "you" and "your" refer to Plaintiff Lisa Menninger and her attorneys, agents, employees, representatives, family members, accountants, and any other person or entity acting for her or on her behalf.

4.      "Document" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a).  As such, the term includes any information stored or reproducible electronically, including but not limited to electronic mail, copies of correspondence and other matters stored on any computer, compact disc, or other device in the possession, custody or control of Plaintiff.  A draft or non-identical copy is a separate document within the meaning of this term.

5.      "Person" means any natural person or any business, legal, or governmental entity or association.

6.      "Action" refers to the above-captioned lawsuit, entitled *Lisa Menninger v. PPD Development, L.P.*, Civil Action No. 1:19-CV-11441-LTS pending in the United States District Court for the District of Massachusetts.

7.      "Complaint" refers to the Complaint filed in this action by Lisa Menninger, on June 28, 2019.

8.      "PPD" refers to Defendant PPD Development, L.P. and its attorneys, agents, officers, partners, directors, shareholders, employees, representatives, and any other person or entity acting for it or on its behalf.

## INSTRUCTIONS

1.      If any documents responsive to any of these requests is missing, has been lost, destroyed, or transferred to another, or was otherwise disposed of, please describe each such document in full and complete detail and state (a) whether it is missing, has been lost, has been

2

destroyed, has been transferred to another, or was otherwise disposed of; (b) the date (or approximate date, if the exact date is unknown) of its loss, destruction, transfer or disposal; (c) the name of the author; (d) the name of the person who destroyed it; (e) the circumstances surrounding its loss, destruction, transfer, or disposal; and (f) the reasons for its loss, destruction, transfer, or disposal.

2.     If you contend that any document responsive to any of these requests is privileged or otherwise not subject to discovery, please provide a privilege log indicating: (a) the name and address of each signatory to the document, if any, and the capacity in which he signed; (b) the date of the document; (c) the name of each address or author of the document and capacity in which each was acting at the time he or she addressed or created the document; (d) the name of each addressee of the document (including all persons to whom copies were sent) and the capacity in which each was addressed; (e) the nature of the document (e.g., note, memorandum, letter, e-mail, etc.) and subject matter of the document; and (f) the specific grounds or reasons for withholding the document.

3.     To the extent that you object to any of these Requests for the Production of Documents ("Requests"), or any part thereof, set forth all reasons therefore.  You are required for each such Request to respond to the fullest extent that your objections permit.

4.     You must produce true, correct, and legible copies of the documents requested.

5.     You must produce the responsive documents either (a) as they are kept in the usual course of business; or (b) organized and labeled to correspond with the Requests to which they are responsive.

6.     These Requests are subject to the requirements of Rule 26(e) of the Federal Rules of Civil Procedure regarding supplemental or amended responses.

## REQUESTS

**DOCUMENT REQUEST NO. 1:**

All documents concerning any written or recorded statement (whether signed or unsigned) made by or on behalf of any person identified in your Initial Disclosures or your responses to Defendant's First Set of Interrogatories to you in this Action.

**DOCUMENT REQUEST NO. 2:**

All documents identified in your Initial Disclosures or your responses to Defendant's First Set of Interrogatories to you in this Action.

**DOCUMENT REQUEST NO. 3:**

All documents that you consulted, reviewed, or relied upon in responding to Defendant's First Set of Interrogatories to you in this Action.

**DOCUMENT REQUEST NO. 4:**

Any and all documents concerning the terms and conditions of your employment at any time with the Defendant, including, without limitation, all notes, memoranda, diaries, journals, day calendars, logs, records, email correspondence, and other documents that constitute or concern your or other's notes, descriptions or thoughts concerning your compensation, work assignments, discipline, relationship to, or conversations with, your superiors, and any other aspects of your employment or the termination of your employment with the Defendant.

**DOCUMENT REQUEST NO. 5:**

All documents concerning your work experience prior to working at PPD and your education and training, including but not limited to, any employment applications, diplomas, degrees, certificates, employment agreements, offer letters, your resume as it appeared when you became employed with PPD, and your present resume.

4

**DOCUMENT REQUEST NO. 6:**

All documents, including but not limited to, handwritten or typed correspondence, and electronic communications such as emails, text messages, instant messages, messages sent through social media services including, but not limited to, Facebook, LinkedIn, Twitter, Instagram, etc., and voicemails, between you and anyone (other than your attorney) related in any way to your claims or Defendant's defenses in the Action.

**DOCUMENT REQUEST NO. 7:**

All documents evidencing your allegations in the Complaint.

**DOCUMENT REQUEST NO. 8:**

All documents evidencing your allegations in the Complaint that PPD's termination decision was related to your alleged disability.

**DOCUMENT REQUEST NO. 9:**

All documents evidencing your allegations in the Complaint that PPD failed to reasonably accommodate your alleged disability.

**DOCUMENT REQUEST NO. 10:**

All documents concerning each item of damage you seek to recover in this matter, and the manner in which you calculated each such alleged item of damage. This Request includes, but is not limited to, all documents concerning your alleged lost wages, your alleged emotional distress damages, your alleged punitive damages, or your alleged attorney's fees, costs, and interest.

**DOCUMENT REQUEST NO. 11:**

All documents concerning any complaint or claim, whether formal or informal, brought by you against any of your employers or former employers or their employees or agents, whether internally or to any local, state or federal agency or in any court.

**DOCUMENT REQUEST NO. 12:**

All documents concerning any complaint, claim or charge filed by you with any governmental agency, state or federal court, including but not limited to any documents evidencing income from settlements and court judgments.

**DOCUMENT REQUEST NO. 13:**

All documents that support the allegation in Paragraph 20 of your Complaint that, after you had disclosed your disability to Hacene Mekerri, he "became cold and distant."

**DOCUMENT REQUEST NO. 14:**

All documents that support the allegation in Paragraph 47 of your Complaint that, after you had disclosed your disability, "Mr. Mekerri also cut [you] out from important decision-making that affected [your] business unit."

**DOCUMENT REQUEST NO. 15:**

All documents that support the allegation in Paragraph 48 of your Complaint that Mr. Mekerri engaged in "increased unreasonable scrutiny of [your] job performance" after you disclosed your disability.

**DOCUMENT REQUEST NO. 16:**

All documents that support the allegation in Paragraph 46 of your Complaint that, following your disclosure of your alleged disability, "similarly situated non-disabled laboratory professionals received [merit] increases of 2.6% or more."

**DOCUMENT REQUEST NO. 17:**

All documents concerning your earnings and income, including, without limitation, your complete federal income tax returns, Form W-2s, Form 1099s, and paystubs, for the years 2015 to the present.

**DOCUMENT REQUEST NO. 18:**

Any and all documents Plaintiff provided to or received from an expert witness whose testimony Plaintiff expects to present at trial, including but not limited to, background material, hypothetical questions, expert opinions, and curriculum vitae.

**DOCUMENT REQUEST NO. 19:**

Any and all documents on which Plaintiff expects any expert witness in the trial of this matter to rely on in forming his or her opinions.

**DOCUMENT REQUEST NO. 20:**

Any and all documents, written or tangible item of any type, nature or description, not produced in response to the preceding requests, upon which Plaintiff will rely at trial.

**DOCUMENT REQUEST NO. 21:**

Any and all insurance filings, and letters, physician's, psychiatrist's, psychologist's, social worker's, or vocational counselor's records and reports, and reports of clinics, hospitals, and counseling agencies revealing all instances of treatment, admission, evaluation, counseling, and consultation for any medical, mental or psychological disorders or conditions suffered by Plaintiff during the period of January 1, 2010 to date.  To the extent that such information is not in Plaintiff's possession, Defendant requests that Plaintiff execute and return the attached authorization for release of medical records (Exhibit A, HIPAA Authorization For Release Of Medical Records).

Respectfully submitted,

PPD DEVELOPMENT, L.P.

By its attorneys,

_____
Rachel Reingold Mandel (BBO #660495)
Alexandra E. Shaw (BBO #694534)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Telephone: (617) 994-5700
Facsimile:  (617) 994-5701
rachel.mandel@ogletree.com
alexandra.shaw@ogletree.com

Dated:  November 13, 2019

## CERTIFICATE OF SERVICE

I, Alexandra E. Shaw hereby certify that on this 13th day of November, 2019, Defendant
PPD Development, L.P.'s First Set of Requests for the Production of Documents to Plaintiff Lisa
Menninger was served on counsel for the Plaintiff by e-mailing and mailing via First Class Mail
a copy to:

Patrick J. Hannon, Esq.
HARTLEY MICHON ROBB LLP
155 Seaport Boulevard, 2nd Floor
Boston, MA 02210
phannon@hartleymichonrobb.com

_____
Alexandra E. Shaw

40435794.1

8

# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LISA MENNINGER,

Plaintiff,

v.

PPD DEVELOPMENT, L.P.,

Defendant.

Civil Action No. 1:19-CV-11441-LTS

## PLAINTIFF LISA MENNINGER'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 26 and 34, Plaintiff Lisa Menninger ("Plaintiff") submits the following objections and responses to Defendant's First Set of Requests for the Production of Documents.

### DOCUMENT REQUEST NO: 1:

All documents concerning any written or recorded statement (whether signed or unsigned) made by or on behalf of any person identified in your Initial Disclosures or your responses to Defendant's First Set of Interrogatories to you in this Action.

**Objection:** Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, work product doctrine, spousal privilege, psychotherapist-patient privilege and/or any other applicable privilege or legal doctrine protecting such information from disclosure ("Privileged Information"). Plaintiff further objects to this request as vague to the extent it refers to the undefined term "statement."

**Response:** Subject to and without waiving the foregoing objections, Plaintiff responds that she will conduct a reasonable search for all affidavits, declarations, or similar "statements"

responsive to this request and will produce, with the exception of any Privileged Information, all

such affidavits, declarations, or similar "statements."

**DOCUMENT REQUEST NO: 2:**

All documents identified in your Initial Disclosures or your responses to Defendant's First Set of Interrogatories to you in this Action.

**Objection**:     Plaintiff objects to this request to the extent that it seeks Privileged Information.

**Response:**     Subject to and without waiving the foregoing objections, Plaintiff responds that

she will conduct a reasonable search for documents and electronically stored information ("ESI")

responsive to this request and will produce, with the exception of any Privileged Information, all

such documents or ESI.

**DOCUMENT REQUEST NO: 3:**

All documents you consulted, reviewed, or relied upon in responding to Defendant's First Set of Interrogatories to you in this Action.

**Objection**:     Plaintiff objects to this request to the extent that it seeks Privileged Information.

**Response:**     Subject to and without waiving the foregoing objections, Plaintiff responds that

she will conduct a reasonable search for documents and electronically stored information ("ESI")

responsive to this request and will produce, with the exception of any Privileged Information, all

such documents or ESI.

**DOCUMENT REQUEST NO: 4:**

Any and all documents concerning the terms and conditions of your employment at any time with the Defendant, including, without limitation, all notes, memoranda, diaries, journals, day calendars, logs, records, email correspondence, and other documents that constitute or concern your or other's notes, descriptions or thoughts concerning your compensation, work assignments, discipline, relationship to, or conversations with, your superiors, and any other aspects of your employment or the termination of your employment with the Defendant.

**Objection**:     Plaintiff objects to this request to the extent that it seeks all documents and ESI

"concerning the terms and conditions of [her] employment," on the grounds that it is overbroad,

and the burden imposed by this request is not proportional to the needs of the case, and,

2

therefore, it exceeds the scope of discovery permitted under Fed. R. Civ. P. 26. Plaintiff further

objects to this request to the extent that it seeks Privileged Information.

**Response:**     Subject to and without waiving the foregoing objections, Plaintiff responds that

she will conduct a reasonable search for documents and electronically stored information ("ESI")

responsive to this request and will produce, with the exception of any Privileged Information, all

such documents or ESI.

### DOCUMENT REQUEST NO: 5:

All documents concerning your work experience prior to working at PPD and your
education and training, including but not limited to, any employment applications, diplomas,
degrees, certificates, employment agreements, offer letters, your resume as it appeared when you
became employed with PPD, and your present resume.

**Objection:**     Plaintiff objects to this request on the grounds that it is overly broad and the

burden imposed by this request is not proportional to the needs of the case, and, therefore, it

exceeds the scope of discovery permitted under Fed. R. Civ. P. 26. Plaintiff further objects to this

request to the extent that it seeks Privileged Information.

**Response:**     Subject to and without waiving the foregoing objections, Plaintiff responds that

she will conduct a reasonable search for documents and electronically stored information ("ESI")

describing, evidencing, or constituting her employment application to PPD that led to her hiring;

her resume or curriculum vitae as it appeared when she became employed with PPD, and her

present resume or curriculum vitae; and will produce, with the exception of any Privileged

Information, all such documents or ESI.

**DOCUMENT REQUEST NO: 6:**

      All documents, including but not limited to, handwritten or typed correspondence, and electronic communications such as emails, text messages, instant messages, messages sent through social media services including, but not limited to, Facebook, LinkedIn, Twitter, Instagram, etc., and voicemails, between you and anyone (other than your attorney) related in any way to your claims or Defendant's defenses in the Action.

**Objection**:     Plaintiff objects to this request to the extent that it seeks all documents and ESI

"related in any way" to her claims or Defendant's defenses in this action, on the grounds that this

request is overly broad and the burden imposed by this request is not proportional to the needs of

the case and, therefore, it exceeds the scope of discovery permitted under Fed. R. Civ. P. 26.

Plaintiff further objects to this request to the extent that it seeks Privileged Information.

**Response**:     Subject to and without waiving the foregoing objections, Plaintiff responds that

she will conduct a reasonable search for documents and electronically stored information ("ESI")

constituting communications between her and anyone else that describe or evidence her claims

of discrimination and retaliation in this case; and will produce, with the exception of any

Privileged Information, all such documents or ESI.

**DOCUMENT REQUEST NO: 7:**

      All documents evidencing your allegations in the Complaint.

**Objection**:     Plaintiff objects to this request to the extent that it seeks all documents and ESI

evidencing her "allegations in the Complaint," on the grounds that this request is overly broad

and the burden imposed by this request is not proportional to the needs of the case, particularly to

the extent that it seeks discovery concerning matters that are not in dispute, and, therefore, it

exceeds the scope of discovery permitted under Fed. R. Civ. P. 26. Plaintiff further objects to this

request to the extent that it seeks Privileged Information.

**Response**:     Subject to and without waiving the foregoing objections, Plaintiff responds that

she will conduct a reasonable search for documents and electronically stored information ("ESI")

evidencing her claims of discrimination and retaliation in this case; and will produce, with the exception of any Privileged Information, all such documents or ESI.

**DOCUMENT REQUEST NO: 8:**

All documents evidencing your allegations in the Complaint that PPD's termination decision was related to your alleged disability.

**Objection**:      Plaintiff objects to this request to the extent that it seeks Privileged Information.

**Response:**      Subject to and without waiving the foregoing objections, Plaintiff responds that she will conduct a reasonable search for documents and electronically stored information ("ESI") responsive to this request and will produce, with the exception of any Privileged Information, all such documents or ESI.

**DOCUMENT REQUEST NO: 9:**

All documents evidencing your allegations in the Complaint that PPD failed to reasonably accommodate your alleged disability.

**Objection**:      Plaintiff objects to this request to the extent that it seeks Privileged Information.

**Response:**      Subject to and without waiving the foregoing objections, Plaintiff responds that she will conduct a reasonable search for documents and electronically stored information ("ESI") responsive to this request and will produce, with the exception of any Privileged Information, all such documents or ESI.

**DOCUMENT REQUEST NO: 10:**

All documents concerning each item of damage you seek to recover in this matter, and the manner in which you calculated each such alleged item of damage. This Request includes, but is not limited to, all documents concerning your alleged lost wages, your alleged emotional distress damages, your alleged punitive damages, or your alleged attorney's fees, costs, and interest.

**Objection:**      Plaintiff objects to this request on the grounds that this request is overly broad and that the burden imposed by this request is not proportional to the needs of the case, particularly to the extent that it seeks discovery of "all documents," which would include cumulative and duplicative documents and ESI, and to the extent it seeks discovery concerning matters that are

not in dispute. Therefore, this request exceeds the scope of discovery permitted under Fed. R.

Civ. P. 26. Plaintiff further objects to this request to the extent that it seeks Privileged

Information.

**Response:**    Subject to and without waiving the foregoing objections, Plaintiff responds that

she will conduct a reasonable search for documents and electronically stored information ("ESI")

responsive to this request and will produce, with the exception of any Privileged Information, all

such documents or ESI upon which she may rely at trial.  Further responding, Plaintiff states that

she will produce documents concerning her attorney's fees and costs at the time, and in the

manner, directed by the Court.

### DOCUMENT REQUEST NO: 11:

All documents concerning any complaint or claim, whether formal or informal, brought by you against any of your employers or former employers or their employees or agents, whether internally or to any local, state or federal agency or in any court.

**Objection:**    Plaintiff objects to this request on the grounds that it seeks irrelevant information,

particularly to the extent that it is not limited to a particular time period or subject matter.

Plaintiff further objects to this request on the grounds that this request is overly broad and the

burden imposed by this request is not proportional to the needs of the case and, therefore, it

exceeds the scope of discovery permitted under Fed. R. Civ. P. 26. Plaintiff further objects to this

request to the extent that it seeks Privileged Information.

### DOCUMENT REQUEST NO: 12:

All documents concerning any complaint, claim or charge filed by you with any governmental agency, state or federal court, including but not limited to any documents evidencing income from settlements and court judgments.

**Objection:**    Plaintiff objects to this request on the grounds that it seeks irrelevant information,

particularly to the extent that it is not limited to a particular time period or subject matter.

Plaintiff further objects to this request on the grounds that this request is overly broad and the

burden imposed by this request is not proportional to the needs of the case and, therefore, it

exceeds the scope of discovery permitted under Fed. R. Civ. P. 26. Plaintiff further objects to this

request to the extent that it seeks Privileged Information.

**DOCUMENT REQUEST NO: 13:**

      All documents that support the allegation in Paragraph 20 of your Complaint that, after you had disclosed your disability to Hacene Mekerri, he "became cold and distant."

**Objection**:    Plaintiff objects to this request to the extent that it seeks Privileged Information.

**Response:**    Subject to and without waiving the foregoing objections, Plaintiff responds that

she will conduct a reasonable search for documents and electronically stored information ("ESI")

responsive to this request and will produce, with the exception of any Privileged Information, all

such documents or ESI.

**DOCUMENT REQUEST NO: 14:**

      All documents that support the allegation in Paragraph 47 of your Complaint that, after you had disclosed your disability, "Mr. Mekerri also cut [you] out from important decision-making that affected [your] business unit."

**Objection**:    Plaintiff objects to this request to the extent that it seeks Privileged Information.

**Response:**    Subject to and without waiving the foregoing objections, Plaintiff responds that

she will conduct a reasonable search for documents and electronically stored information ("ESI")

responsive to this request and will produce, with the exception of any Privileged Information, all

such documents or ESI.

**DOCUMENT REQUEST NO: 15:**

      All documents that support the allegation in Paragraph 48 of your Complaint that Mr. Mekerri engaged in "increased unreasonable scrutiny of [your] job performance" after you disclosed your disability.

**Objection**:    Plaintiff objects to this request to the extent that it seeks Privileged Information.

**Response:**    Subject to and without waiving the foregoing objections, Plaintiff responds that

she will conduct a reasonable search for documents and electronically stored information ("ESI")

responsive to this request and will produce, with the exception of any Privileged Information, all such documents or ESI.

**DOCUMENT REQUEST NO: 16:**

All documents that support the allegation in Paragraph 46 of your Complaint that, following your disclosure of your alleged disability, "similarly situated non-disabled laboratory professionals received [merit] increases of 2.6% or more."

**Objection**:   Plaintiff objects to this request to the extent that it seeks Privileged Information.

**Response**:   Subject to and without waiving the foregoing objections, Plaintiff responds that she will conduct a reasonable search for documents and electronically stored information ("ESI") responsive to this request and will produce, with the exception of any Privileged Information, all such documents or ESI.

**DOCUMENT REQUEST NO: 17:**

All documents concerning your earnings and income, including, without limitation, your complete federal income tax returns, Form W-2s, Form 1099s, and paystubs, for the years 2015 to the present.

**Objection**:   Plaintiff objects to this request on the grounds that it is overbroad, and the burden imposed by this request is not proportional to the needs of the case, and, therefore, it exceeds the scope of discovery permitted under Fed. R. Civ. P. 26. Plaintiff further objects to this request to the extent that it seeks Privileged Information.

**Response**:   Subject to and without waiving the foregoing objections, Plaintiff responds that she will produce her Form W-2's and Form 1099's for the requested period.

**DOCUMENT REQUEST NO: 18:**

Any and all documents Plaintiff provided to or received from an expert witness whose testimony Plaintiff expects to present at trial, including but not limited to, background material, hypothetical questions, expert opinions, and curriculum vitae.

**Objection:**     Plaintiff objects to this request to the extent that it seeks to impose an obligation outside the scope of Fed. R. Civ. P. 26.

**Response:**     Subject to and without waiving the objection set forth above, Plaintiff responds that as of the date hereof, she has not retained any expert witnesses, but she will make all required disclosures at the time and in the manner provided by the applicable rules and any pertinent Order of the Court.

**DOCUMENT REQUEST NO: 19:**

Any and all documents on which Plaintiff expects any expert witness in the trial of this matter to rely on in forming his or her opinions.

**Objection:**     Plaintiff objects to this request to the extent that it seeks to impose an obligation outside the scope of Fed. R. Civ. P. 26.

**Response:**     Subject to and without waiving the objection set forth above, Plaintiff responds that as of the date hereof, she has not retained any expert witnesses, but she will make all required disclosures at the time and in the manner provided by the applicable rules and any pertinent Order of the Court.

**DOCUMENT REQUEST NO: 20:**

Any and all documents, written or tangible item of any type, nature or description, not produced in response to the preceding requests, upon which Plaintiff will rely at trial.

**Objection:**     Plaintiff objects to this request to the extent that it seeks to impose an obligation outside the scope of Fed. R. Civ. P. 26.

**Response:**     Subject to and without waiving the objection set forth above, Plaintiff responds that she has not yet determined what exhibits she will offer at trial and that she will make such disclosure at the time and in the manner provided by the applicable rules and any pertinent Order of the Court.

**DOCUMENT REQUEST NO: 21:**

Any and all insurance filings, and letters, physician's psychiatrist's, psychologist's, social worker's, or vocational counselor's records and reports, and reports of clinics, hospitals, and counseling agencies revealing all instances of treatment, admission, evaluation, counseling, and consultation for any medical, mental or psychological disorders or conditions suffered by Plaintiff during the period of January 1, 2010 to date. To the extent that such information is not in Plaintiff's possession, Defendant requests that Plaintiff executed and return the attached authorization for release of medical records (Exhibit A, HIPAA Authorization For Release Of Medical Records).

**Objection**:      Plaintiff objects to this request to the extent that it seeks Privileged Information.

**Response:**      Subject to and without waiving the foregoing objections, Plaintiff responds that she will conduct a reasonable search for documents and electronically stored information ("ESI") responsive to this request and will produce, with the exception of any Privileged Information, all such documents or ESI.

Patrick J. Hannon (BBO# 664958)
Hartley Michon Robb, LLP
155 Seaport Blvd., 2nd Floor
Boston, MA 02210
P: (617) 723-8000
F: (617) 447-2800
phannon@hartleymichonrobb.com

## CERTIFICATE OF SERVICE

I, Patrick J. Hannon, counsel for Plaintiff, Lisa Menninger, hereby certify that on February 26, 2020, I caused a copy of the within document to be served by email upon counsel of record.

Patrick J. Hannon

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LISA MENNINGER,

     Plaintiff,

          v.                        Civil Action No. 1:19-CV-11441-LTS

PPD DEVELOPMENT, L.P.,

     Defendant.

**EXPERT REPORT OF
BRUCE R. JONAS, C.P.A.
JONAS & WELSCH, P.C.**

**October 22, 2020**

# JONAS & WELSCH

Finance • Economics
Litigation Support

|  |  |  |
|---|---|---|
| October 22, 2020 | 20 Waldeck Court<br>West Orange, N.J. 07052-2986<br>Telephone (973) 324-9850<br>Facsimile (973) 324-9705<br>eMail: DonaldW18@aol.com | 29 Galahad Lane<br>Nesconset, N.Y. 11767<br>Telephone (631) 366-4300<br>Facsimile (631) 366-4360<br>eMail: bj626@aol.com |

Patrick Hannon, Esq.
Hartley Michon Robb, LLP
155 Seaport Boulevard, 2nd Floor
Boston, MA 02210

Re: Lisa Menninger, MD v. PPD Development, LP
Case 1:19-cv-11441-LTS

Dear Mr. Hannon:

This report, prepared at your request, summarizes the economic and financial losses relating to salary, bonuses and benefits, allegedly suffered by Dr. Lisa Menninger, as a result of the actions of the defendant[1]. It is our opinion that she has suffered and will continue to suffer loss of salary, bonus and benefits of $6,983,000 (rounded, adjusted for net present value and labor force participation)[2]. Table 1 summarizes these losses. Table 2 (attached as Exhibit A) details the annual amounts.

### TABLE 1
### SUMMARY OF LOST SALARY, BONUS AND BENEFITS

| ITEM | AMOUNT |
|---|---|
| PAST (2018-20) | $ 736,146 |
| FUTURE (2021-36) npv @ .85% | 6,247,306 |
| **TOTAL LOSSES** | $ 6,983,453 |

---

[1] We understand that Dr. Menninger's termination may have resulted in additional economic losses relating to lost stock options and/or other equity grants (the "Equity Losses"). We have not been asked to render an opinion as to the monetary value of the Equity Losses and, therefore, do not address them in this report.

[2] This opinion is based on the information available as of the date of the report and assumes the trier of fact finds for the plaintiff. The findings and conclusions are subject to revision and amendment based on availability and evaluation of new or additional information or documentation. All findings and conclusions are made with a reasonable degree of economic certitude.

MENNINGER v. PPD DEVELOPMENT, LP                    PAGE (2)

This report is divided into four (4) sections:

    1) Background Underlying This Report,
    2) Components of Economic and Financial Losses Relating to Salary, Bonuses and Benefits,
    3) Amount of Economic and Financial Losses Relating to Salary, Bonuses and Benefits,
    4) Alternative Calculation.

This report is based on our review of the relevant documents that were supplied to us, and analyses of the information contained therein. These documents include:

    1) IRS form W-2 year 2019 Unum Life Insurance Company ("UNUM W-2") (Bates Menninger Supp 000075-000076),
    2) IRS form 1040 for years 2015 through 2018 (Bates Menninger 000915-001131), year 2019 (Bates Menninger Supp 000077-000163)
    3) Pay stub for the period ending 10/31/2017 (Bates Menninger Supp 000164),
    4) IRS form W-2 from PPD for years 2017 and 2018 (Bates Menninger Supp 000165-000170),
    5) PPD Retirement Services Statements for the period 7/1/2017 through 12/31/2019 (Bates Menninger Supp 000171-230),
    6) Letter from UNUM dated January 16, 2020 regarding 2019 repayment of long-term disability ("LTD repayment letter"), (Bates Menninger Supp 000231-000232),
    7) Compensation Statements for years 2016 through 2018 (Bates Menninger Supp 000233-000235),
    8) Offer of employment letter from PPD dated September 1, 2015 ("Offer Letter") (Bates PPD Menninger 00459-00466),
    9) 2019 PPD Benefits Brochure (Bates Menninger 000159-000177),
    10) Complaint in this matter,
    11) PPD US Employee Handbook updated December 2016, ("employee handbook") (Bates Menninger 000115-157),
    12) UNUM Long Term Disability Plan (Bates Menninger 000192-229),
    13) Social Security Administration letter dated February 18, 2019 ("SSA letter") (Bates Menninger 000864-865),
    14) Selected publications containing economic data and literature as indicated below.

## 1. BACKGROUND UNDERLYING THIS REPORT

I am a C.P.A. and forensic accountant with over 30 years of experience in litigation support, including the calculation of damages for economic losses. I am a founding principal of Jonas & Welsch, P.C., where I have served as an expert witness in numerous litigation matters since 1991.

We have confined our study in this case to the information and data believed relevant to this matter. We have relied on education and training in the fields of accounting and economics, together with experience in the field of damage

calculations. The methodology applied to this matter is consistent with the principles and methods commonly relied upon by experts in calculating the value of lost salary, bonuses and benefits.

You have asked us to assume that Dr. Menninger is unable to work, as reflected by her approval for social security disability[3], and will remain disabled and unable to return to the workforce for the remainder of her worklife.

Dr. Menninger, born on August 27, 1968, was 49 years old when she was allegedly forced to take medical leave from work due to the actions of the defendant on June 3, 2018. We have computed her life expectancy to age 84.1[4].

## 2. COMPONENTS OF ECONOMIC AND FINANCIAL LOSSES RELATING TO SALARY, BONUSES, AND BENEFITS

The financial losses, which we have included in our estimate relating to salary, bonuses, and benefits suffered by Dr. Menninger include:

A. <u>Pre-Injury/Expected Salary</u> -This assumes that she would have been employed as the Executive Director of Global Central Labs with PPD, or a similar position, until her expected retirement. We have computed her expected 2018 expected base wages to be $269,321[5]. We have computed her expected 2018 bonus to be $46,576[6]. For the period 2019 forward, we have computed the amount of her annual wage increases to be 2.70%[7]. We have computed the amount of her annual bonus to be 20.0% of her salary[8]. An allowance has been made for labor force participation, to account for periods of voluntary and involuntary unemployment[9].

---

[3] SSA letter.
[4] U.S. Life Tables, <u>National Vital Statistics Reports, 2008,</u> United States Life Tables, U.S. Department of Health and Human Services, Vol.66 , Number 3, April 11 2017.
[5] Calculated using data contained in Compensation Statements, 3 months of salary at the 2017 base salary rate of $265,537 and 9 months at the 2018 base salary rate of $270,582.
[6] Calculated using data contained in Compensation Statements, 3 months of bonus at the 2017 bonus rate of $53,273 and 9 months at the 2018 bonus rate of $44,343.
[7] Calculated as the average of base salary raises as reported in Compensation Statements for years 2016-2018.
[8] Calculated as the average of bonus as a percentage of base salary as reported in Compensation Statements for years 2016-18.
[9] The Labor Force Participation Adjustment (LFPA) amount reduces the gross income. The LFPA is computed by adding the long-term education specific cohort unemployment rate (involuntary) and the national "job leaver" unemployment rate (voluntary). This amount is adjusted for the state-specific Unemployment Compensation amount based on the expected weeks of unemployment.

B. <u>Expected Retirement Age</u> – We have estimated her expected retirement age to be 67.41 years. The retirement age is based on information on future worklife. This information may include available economic literature[10] and/or specific information regarding intended retirement date. The expected worklife does not measure the total expected years of work that may include part-time work before and/or after expected retirement. Table 2 states the annual amounts of her losses up to her expected retirement age.[11] However, it is important to note that, if the trier of fact were to find that at any point prior to her expected retirement age, Dr. Menninger would be able to return to the workforce, she could still have substantial losses between the date of her return to the workforce and her expected retirement date. This could occur if her compensation at the point of her return is less than what she would have earned had her employment at PPD continued.

C. <u>Expected Benefits</u> – We have calculated the value of the employer's contributions to social security based on the social security maximum taxable wages. We have also calculated the value of the health benefits provided to her by her employer. These benefits are computed on an employer cost basis[12]. These items do not include any benefits payments or employee contributions. In addition, we have valued the lost employer matching contribution to her 401k Plan[13].

---

[10] Expected retirement date is based on the mean worklife expectancy data from Kurt V. Krueger, Gary R. Skoog, and James E. Ciecka, (KSC) "The Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors," Journal of Forensic Economics 22(1), 2011, pp. 165-229. The expected worklife is an estimate of the mean number of years, added to the current age, that the average person in the age-gender-education group can be expected to continue to participate continuously in the labor force. Worklife expectancy is based on current age, labor force status, gender and educational attainment. The expected worklife does not measure the total expected years of work that may include part-time work before and/or after expected retirement. Also, it does not include any time spent in non-market work, such as child rearing and family assistance. Finally, since this estimate does not measure voluntary or involuntary temporary separation from the labor force, we have adjusted for this separation elsewhere in our analysis.

[11] As noted above, my calculations assume that Dr. Menninger will remain unable to work for the duration of her estimated worklife. If Dr. Menninger were able to return to work in some fashion, at some point, the earnings from that work would be considered mitigation and could reduce the damages.

[12] Employer Costs for health care are valued using BLS Expectancy Data, Professional & Technical, Table 66 and 2,080 full-time hours per year. Future growth rates are based on the compound annual growth rate for specific fringe benefits as reported in Expectancy Data, Employer Paid Benefits, Professional & Technical, 2004 through 2018. Data based on BLS Survey of Employers Costs for Employee Compensation 2019.

[13] According to the employee handbook page 35 (Bates Menninger 000149) PPD matches 50 cents to every dollar an employee contributes to the Plan up to the first 6% of the employee's contributions. At the time of her termination, Dr. Menninger was contributing 6% to the plan. The company match is, therefore, 3%.

D. Post-Injury/Mitigation Salary and Benefits – We have included Dr. Menninger's actual income for the year 2018[14].


E. Interest and Discount Rate – We have not calculated interest on past losses, as it is our understanding that the Court will calculate pre-judgment interest. We have discounted all future values at 0.85% to reflect the combined effects of expected rate of return on conservatively invested assets and the risk that the cash flows may not be as expected[15].

## 3. AMOUNT OF ECONOMIC AND FINANCIAL LOSSES RELATING TO SALARY, BONUSES, AND BENEFITS

Based on the compensation components identified above, we have calculated Dr. Menninger's lost past salary, bonus and benefits as of year-end 2020 to be $736,000 (rounded, adjusted for labor force participation). We have calculated her lost future salary, bonus and benefits to be $6,247,000 (rounded, adjusted for labor force participation and net present value). Her total lost salary, bonus and benefits are $6,983,000 (rounded, adjusted for labor force participation and net present value).

## 4. ALTERNATIVE CALCULATION

You have indicated that, under the applicable standards for Dr. Menninger's claims, the finder of fact on damages may have discretion to consider social security disability (SSDI), and long-term disability (LTD) benefits as mitigation. Accordingly, we have provided an alternative table calculating Dr. Menninger's losses in the event the finder of fact finds that these items (SSDI, LTD) should be deducted from her losses.

We have included Dr. Menninger's actual income for the years 2018 and 2019[16]. This includes 2018 wages prior to her termination as well as long-term disability,

---

[14] 2018 wages as reported on Dr. Menninger form W-2. (Bates Menninger Supp 000169).

[15] Based on a blended time portfolio that includes the current rates for the time appropriate U.S. Treasury securities. The time horizon is based upon the future period included in the calculation. Information obtained from U.S. Treasury Yield Curve Releases as retrieved @ www.ustreas.gov. Blending is based on the assumption that funds will be used for income replacement and/or future costs.

[16] 2018 wages as reported on Dr. Menninger form W-2. (Bates Menninger Supp 000169), 2019 social security disability as reported on IRS form 1040 (Bates Menninger Supp 000087) and 2019 long term disability as reported on UNUM W-2 of $69,630 less amount repaid of $13,351 as stated in LTD repayment letter for a net of $56,279.

MENNINGER v. PPD DEVELOPMENT, LP                                  PAGE (6)

and social security disability. In addition, we have included future social security disability payments through her full retirement age 67[17]. All other assumptions and calculations outlined above remain the same. Table 3 summarizes these losses. Table 4 (attached as Exhibit B) details the annual amounts.

**TABLE 3**
**SUMMARY OF LOST SALARY, BONUS AND BENEFITS**

| ITEM | AMOUNT | |
|------|:---:|---:|
| PAST (2018-20) | $ | 620,629 |
| FUTURE (2021-36) npv @ .85% | | 5,758,267 |
| **TOTAL LOSSES** | **$** | **6,378,896** |

I have attached a copy of my CV, which lists my qualifications, to this report as Exhibit C[18]. A statement of the compensation to be paid for the study and testimony in the case is attached hereto as Exhibit D.

Sincerely,

*[signature]*

Bruce R. Jonas, CPA
Jonas & Welsch, P.C.

---

We have included LTD payments for year 2019 only as, per UNUM Long Term Disability Plan, page 17 (Bates Menninger 000210) disabilities due to mental illness have a limited pay period up to 12 months.

[17] Future social security disability amounts were calculated by applying the compound annual growth rate of social security cost of living adjustments over the last 19 years. Social security disability was included in our analysis for year 2019 through age 67 in August 2035, as it is our understanding that the social security disability payments convert to social security payments when she reaches her full retirement age.

[18] I have not authored any publications in the last 10 years, and have not testified in any trial or deposition within the last four years.

**EXHIBIT A**

TABLE 2
SALARY, BONUS AND BENEFIT LOSSES
SUFFERED BY DR. LISA MENNINGER

| | | EXPECTED | | | ACTUAL/MITIGATION | | | LOSSES | | | CUMULATIVE | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| YEAR | AGE | WAGES & BONUS | BENEFITS | TOTAL | WAGES & BONUS | BENEFITS | TOTAL | WAGES & BONUS | BENEFITS | TOTAL | NOMINAL | NPV |
| 2018 | 50 | $ 312,200 | $ 23,092 | $ 335,292 | $ 285,029 | $ 19,148 | $ 304,176 | $ 27,171 | $ 3,944 | $ 31,115 | $ 31,115 | |
| 2019 | 51 | 323,949 | 23,840 | 347,789 | - | - | - | 323,949 | 23,840 | 347,789 | 378,904 | |
| 2020 | 52 | 332,621 | 24,621 | 357,242 | - | - | - | 332,621 | 24,621 | 357,242 | 736,146 | |
| 2021 | 53 | 341,524 | 25,353 | 366,877 | - | - | - | 341,524 | 25,353 | 366,877 | 1,103,023 | $ 1,099,931 |
| 2022 | 54 | 350,665 | 26,107 | 376,772 | - | - | - | 350,665 | 26,107 | 376,772 | 1,479,796 | 1,476,620 |
| 2023 | 55 | 360,052 | 26,884 | 386,936 | - | - | - | 360,052 | 26,884 | 386,936 | 1,866,731 | 1,857,061 |
| 2024 | 56 | 369,689 | 27,684 | 397,373 | - | - | - | 369,689 | 27,684 | 397,373 | 2,264,105 | 2,244,471 |
| 2025 | 57 | 379,585 | 28,509 | 408,094 | - | - | - | 379,585 | 28,509 | 408,094 | 2,672,198 | 2,638,979 |
| 2026 | 58 | 389,745 | 29,359 | 419,104 | - | - | - | 389,745 | 29,359 | 419,104 | 3,091,302 | 3,040,716 |
| 2027 | 59 | 400,177 | 30,234 | 430,411 | - | - | - | 400,177 | 30,234 | 430,411 | 3,521,713 | 3,449,815 |
| 2028 | 60 | 410,889 | 31,136 | 442,025 | - | - | - | 410,889 | 31,136 | 442,025 | 3,963,738 | 3,866,412 |
| 2029 | 61 | 421,887 | 32,066 | 453,953 | - | - | - | 421,887 | 32,066 | 453,953 | 4,417,691 | 4,290,644 |
| 2030 | 62 | 433,180 | 33,024 | 466,203 | - | - | - | 433,180 | 33,024 | 466,203 | 4,883,895 | 4,722,652 |
| 2031 | 63 | 444,774 | 34,011 | 478,785 | - | - | - | 444,774 | 34,011 | 478,785 | 5,362,680 | 5,162,580 |
| 2032 | 64 | 456,680 | 35,028 | 491,708 | - | - | - | 456,680 | 35,028 | 491,708 | 5,854,387 | 5,610,574 |
| 2033 | 65 | 468,904 | 36,076 | 504,980 | - | - | - | 468,904 | 36,076 | 504,980 | 6,359,362 | 6,066,782 |
| 2034 | 66 | 481,455 | 37,156 | 518,611 | - | - | - | 481,455 | 37,156 | 518,611 | 6,877,978 | 6,531,356 |
| 2035 | 67 | 494,342 | 38,269 | 532,611 | - | - | - | 494,342 | 38,269 | 532,611 | 7,410,589 | 7,004,450 |
| 2036 | 68 | 32,683 | 3,768 | 36,451 | - | - | - | 32,683 | 3,768 | 36,451 | 7,447,039 | 6,983,453 |
| | | $ 7,204,998 | $ 546,217 | 7,751,216 | $ 285,029 | $ 19,148 | 304,176 | 6,919,970 | $ 527,070 | $ 7,447,039 | | |

| | | | |
|---|---|---|---|
| 0.85% | PAST | $ 736,146 | (2018-20) |
| | FUTURE | 6,247,306 | (2021-2036) |
| | **TOTAL LOSSES** | **$ 6,983,453** | |

**EXHIBIT B**

TABLE 4
SALARY, BONUS AND BENEFIT LOSSES
SUFFERED BY DR. LISA MENNINGER

| YEAR | AGE | EXPECTED | | | ACTUAL/MITIGATION | | | LOSSES | | | CUMULATIVE | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | WAGES & BONUS | BENEFITS | TOTAL | WAGES, BONUS & SSD/LTD | BENEFITS | TOTAL | WAGES & BONUS | BENEFITS | TOTAL | NOMINAL | NPV |
| 2018 | 50 | $ 312,200 | $ 23,092 | $ 335,292 | $ 285,029 | $ 19,148 | $ 304,176 | $ 27,171 | $ 3,944 | $ 31,115 | $ 31,115 | |
| 2019 | 51 | 323,949 | 23,840 | 347,789 | 85,573 | - | 85,573 | 238,376 | 23,840 | 262,216 | 293,331 | |
| 2020 | 52 | 332,621 | 24,621 | 357,242 | 29,945 | - | 29,945 | 302,676 | 24,621 | 327,297 | 620,629 | |
| 2021 | 53 | 341,524 | 25,353 | 366,877 | 30,610 | - | 30,610 | 310,914 | 25,353 | 336,267 | 956,896 | $ 954,062 |
| 2022 | 54 | 350,665 | 26,107 | 376,772 | 31,290 | - | 31,290 | 319,376 | 26,107 | 345,483 | 1,302,379 | 1,299,467 |
| 2023 | 55 | 360,052 | 26,884 | 386,936 | 31,985 | - | 31,985 | 328,067 | 26,884 | 354,951 | 1,657,330 | 1,648,460 |
| 2024 | 56 | 369,689 | 27,684 | 397,373 | 32,695 | - | 32,695 | 336,994 | 27,684 | 364,679 | 2,022,008 | 2,003,995 |
| 2025 | 57 | 379,585 | 28,509 | 408,094 | 33,421 | - | 33,421 | 346,163 | 28,509 | 374,672 | 2,396,681 | 2,366,195 |
| 2026 | 58 | 389,745 | 29,359 | 419,104 | 34,163 | - | 34,163 | 355,581 | 29,359 | 384,940 | 2,781,621 | 2,735,184 |
| 2027 | 59 | 400,177 | 30,234 | 430,411 | 34,922 | - | 34,922 | 365,255 | 30,234 | 395,489 | 3,177,110 | 3,111,090 |
| 2028 | 60 | 410,889 | 31,136 | 442,025 | 35,698 | - | 35,698 | 375,191 | 31,136 | 406,327 | 3,583,437 | 3,494,042 |
| 2029 | 61 | 421,887 | 32,066 | 453,953 | 36,491 | - | 36,491 | 385,396 | 32,066 | 417,462 | 4,000,900 | 3,884,173 |
| 2030 | 62 | 433,180 | 33,024 | 466,203 | 37,301 | - | 37,301 | 395,878 | 33,024 | 428,902 | 4,429,802 | 4,281,616 |
| 2031 | 63 | 444,774 | 34,011 | 478,785 | 38,130 | - | 38,130 | 406,645 | 34,011 | 440,656 | 4,870,457 | 4,686,509 |
| 2032 | 64 | 456,680 | 35,028 | 491,708 | 38,977 | - | 38,977 | 417,703 | 35,028 | 452,731 | 5,323,188 | 5,098,991 |
| 2033 | 65 | 468,904 | 36,076 | 504,980 | 39,842 | - | 39,842 | 429,061 | 36,076 | 465,137 | 5,788,326 | 5,519,205 |
| 2034 | 66 | 481,455 | 37,156 | 518,611 | 40,727 | - | 40,727 | 440,728 | 37,156 | 477,884 | 6,266,209 | 5,947,295 |
| 2035 | 67 | 494,342 | 38,269 | 532,611 | 27,754 | - | 27,754 | 466,587 | 38,269 | 504,856 | 6,771,066 | 6,395,736 |
| 2036 | 68 | 32,683 | 3,768 | 36,451 | - | - | - | 32,683 | 3,768 | 36,451 | 6,807,517 | 6,378,896 |
| | | $ 7,204,998 | $ 546,217 | 7,751,216 | $ 924,552 | $ 19,148 | 943,699 | 6,280,447 | $ 527,070 | $ 6,807,517 | | |

| | | | |
|---|---|---|---|
| 0.85% | PAST | $ 620,629 | (2018-20) |
| | FUTURE | 5,758,267 | (2021-2036) |
| | **TOTAL LOSSES** | **$ 6,378,896** | |

# EXHIBIT C

BRUCE R. JONAS, CPA
29 GALAHAD LANE
NESCONSET, NEW YORK 11767
(516) 360-1496

BACKGROUND:

| | |
|---|---|
| Jonas & Welsch, P.C. | April 1991 - Present |
| David Berdon & Co. | December 1990 - April 1991 |
| Laventhol & Horwath | May 1985 - November 1990 |
| Peat, Marwick, Mitchell & Co. | November 1978 - May 1985 |
| Dentaco Corp. | February 1978 - November 1978 |
| LAC | December 1977 - February 1978 |
| Avis, Inc. | October 1976 - November 1977 |
| Peat, Marwick, Mitchell & Co. | June 1969 - October 1976 |

EXPERIENCE AND RESPONSIBILITIES:

Jonas & Welsch, P.C.
One of the founders and principals of firm specializing in finance, economics and accounting analysis. Work consists of damages analyses, cost accounting, profit analysis, computer modeling and other forms of analysis.

David Berdon & Co.
Director – Litigation Support
Was responsible for providing accounting analysis and business assistance to a variety of industries.

Laventhol & Horwath
Special Partner – Litigation Support
Managed and directed wide range of engagements. These engagements included developing theory of damages, calculating damages, and negotiating damage settlements; evaluating underlying business assumptions; performing market comparisons; and providing assistance to trustees in bankruptcy. Additionally, worked with local district attorneys and national insurance carriers.

Peat, Marwick, Mitchell & Co.
Senior Manager - Management Consulting
Representative Client Assignments:
Designed and implemented wide range of accounting and management information systems in both automated and manual environments.

Evaluated the "control environment" of major Miami bank as representative of its insurance carrier.

Conducted exhaustive cost accounting study and economic study of leading broker/dealer and asset manager affiliate for purposes of

providing expert testimony in precedent-setting money market fund litigation.

Performed financial management reviews to identify information needs and assisted in implementation of recommendations to maximize benefits.

Performed review of the Payroll-Personnel systems of County of Suffolk, New York for purposes of evaluating controls.  Conclusions and recommendations became foundation for implementation of new systems.

Reviewed and evaluated the cash management function of County of Suffolk, New York.

Conducted, as lead instructor, numerous iterations of the "COMPUTER AUDIT AND CONTROL CONFERENCE" sponsored by The Conference of State Bank Supervisors.

Group Administrator
Co-ordinated and administered a consulting group of seventy professionals plus support staff.

Audit Supervisor - Auditing
Was responsible for a wide range of audit clients, including public and privately held enterprises.

Co-ordinated and supervised local office computer and statistical auditing.

Participated, as lead instructor with over 700 classroom hours, in PMM's national education department.

Dentaco Corp.
Controller
Was primarily responsible for all accounting and financial affairs.

Co-ordinated, designed and implemented automated financial systems.

LAC Industries
Chief Financial Officer
Was responsible for supervising all accounting and financial matters for this local insurance agency.

Avis, Inc.
EDP Audit Manager
Performed computer reviews for all aspects of automated data processing and supported field audit work.

Participated in the general management of the department.

PERSONAL DATA:

BBA Accounting - Hofstra University 1969
Certified Public Accountant 1972
Former member of the staff of the C.W. Post School of Professional Accountancy.
Lecturer for the AICPA, Foundation for Accounting Education and the New England Graduate
     Accounting Study Conference
Arbiter for the American Arbitration Association
Member of the AICPA and NYSSCPA

**EXHIBIT D**

| | |
|---|---|
| Non-Testimony work/Case Preparation | $660.00 per hour for Principal (Bruce R. Jonas, CPA) |
| Non-Testimony work/Case Preparation | $440.00 per hour for Staff |
| Deposition | $660.00 per hour for Principal (Bruce R. Jonas, CPA) |
| Testimony | $600.00 per hour for Principal (Bruce R. Jonas, CPA) |
| Travel Time | (For Testimony and Deposition) Out-of-Town travel time is billable time. |

Plus air travel, meals, accommodations, ground transportation, travel time, and other related expenses to be billed.

# EXHIBIT E

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

LISA MENNINGER,

        Plaintiff,

v.

PPD DEVELOPMENT, L.P.,

        Defendant.

C.A. No.: 1:19-CV-11441-LTS

**EXPERT REBUTTAL REPORT OF
WILLIAM B. SCALLY**

**January 15, 2021**

**Confidential – Attorneys' Eyes Only**

**Lisa Menninger v. PPD Development, L.P.**
**Expert Rebuttal Report of William B. Scally**
**January 15, 2021**

| **Exhibits** | **No.** |
|---|---|
| Curriculum Vitae of William B. Scally | 1 |
| Data Considered in Forming Opinions | 2 |
| Jonas Exhibit A – Salary, bonus and benefits suffered by Dr. Lisa Menninger | 3 |
| Salary, bonus and benefit losses suffered by Dr. Lisa Menninger, corrected for appropriate discount rate | 4 |
| Salary, bonus and benefit losses suffered by Dr. Lisa Menninger | 5 |
| Jonas Exhibit B - Salary, bonus and benefit losses suffered by Dr. Lisa Menninger | 6 |
| Salary, bonus and benefit losses suffered by Dr. Lisa Menninger, corrected for appropriate discount rate | 7 |
| Salary, bonus and benefit losses suffered by Dr. Lisa Menninger | 8 |
| Calculation of Incremental Base Earnings, Wage Inflation, Bonuses   and Losses | 9 |
| Determination of risk free rates of return at various maturities based on U.S Treasury Securities | 10 |

Confidential – Attorney's Eyes Only

# I.  Introduction and Assignment

1.       I have been retained by counsel for PPD Development, L.P ("PPD" or "Defendant"), in this matter brought by Dr. Lisa Menninger ("Dr. Menninger" or "Plaintiff"), to evaluate economic damages claimed by Dr. Menninger, if any, as a result of Plaintiff's allegation of Defendant's discrimination and retaliation against Dr. Menninger, ultimately leading to Plaintiff's claim of lost compensation and benefits.[1]  I have also been retained to respond to the October 22, 2020 Expert Report (the "Jonas Report") of Plaintiff's damages expert, Bruce R. Jonas, C.P.A. ("Mr. Jonas").  I also expect to respond to any opinions and/or testimony that Mr. Jonas may provide at deposition or trial.

2.       I am a Partner in the Business Valuation and Litigation Support practice of Marcum LLP ("Marcum") in Boston, Massachusetts. I am the national firm leader for Marcum's Litigation Advisory practice. I earned a Bachelor of Science in Control Systems Engineering from the United States Naval Academy as well as a Master in Business Administration from Boston College. I am a Chartered Financial Analyst ("CFA") charter holder and have over 19 years of professional experience. Over my career, I have provided expert opinions on numerous matters involving breach of contract, tort claims, theft of proprietary information and intellectual property disputes, and the analysis of resulting damages including, but not limited to, valuing business damages. I have served as an expert witness in over 30 matters, testifying at depositions and/or at trial in approximately 13 matters in state and federal courts, as well as private arbitration. My curriculum vitae, including a list of my prior testimony experience, is attached as **Exhibit 1**.

3.       This report, and the opinions and conclusions described herein, are based on documents produced in this action, various exhibits, publicly available information, information obtained from PPD management, as well as my personal education and business experience.  The materials I considered in preparing this report are identified in this report and/or **Exhibit 2** attached hereto.  My work was limited to the specific procedures and analyses described herein and was based only on the information made available through the

---

[1] Complaint and Demand for Jury Trial, filed June 28, 2019 ("Complaint").

Confidential – Attorney's Eyes Only

date of this report.  Accordingly, changes in circumstances after this date could affect the findings outlined in this report. Should additional information become available, I may request to supplement the opinions I express in this report, if permitted.

4.      My analysis and opinions rest on the assumption that issues of liability will be resolved in favor of the Plaintiff.  While this assumption is necessary as a basis for my analysis, it does not imply that I have been retained to provide opinions as to liability.

5.      My services were performed and this report was developed in accordance with an engagement letter dated November 20, 2020, and are subject to the terms and conditions included therein. My services were performed in accordance with the Standards for Forensic Services established by the AICPA. Accordingly, I provide no attestation on financial statements, as I did not audit any information provided to me. This information has been prepared solely in connection with the above-captioned matter.  Its use is limited to the court proceedings in the above-captioned matter and is not intended for reliance in any other context.  Any disclosure, whether oral, written or otherwise, of the contents of this report to parties outside of this matter shall not be provided without the express written consent of Marcum.

6.      Marcum is compensated for the time spent by its professional staff on this matter at the applicable hourly billing rates, which range from $90 to $625 per hour; my hourly rate is $625 per hour. Neither Marcum nor I have any financial interest in the outcome of this dispute, and my compensation is in no way dependent on the substance of my opinion.

Confidential – Attorney's Eyes Only

## II.  Summary of Conclusions

7.      In my opinion, Mr. Jonas's methodology for determining damages in this matter is flawed and based on unsupported or inaccurate assumptions, resulting in an overstated calculation of damages.

8.      The Jonas Report contained several unsupported or inaccurate assumptions, including:

   i.    An overstated work life expectancy for Dr. Menninger;

   ii.   Incorrect discount rate assumptions; and

   iii.  Failure to appropriately consider Plaintiff's ability to mitigate, and thus offset alleged future damages (i.e. front pay).

9.      Assuming liability is established, I calculated damages independently of the Jonas Report. My analysis is based on the following assumptions:

   i.    Dr. Menninger is capable of returning to a productive career in clinical pathology. In his December 21, 2020 report (the "Kelly Report"),  Martin J. Kelly, M.D., Associate Professor of Psychiatry at the Harvard Medical School, states his professional opinion that Dr. Menninger can return to a productive life "if she were motivated to do so."[2] Therefore, any damage experienced by Dr. Menninger due to alleged lost wages and benefits would end in December 2020, under the assumption that she maintains the independent capability to return to the workforce and productively mitigate any future damages accruing subsequent to December 21, 2020.

   ii.   The undiscounted value of expected lost historical wages, bonuses and benefits from the date Dr. Menninger commenced medical leave from work on June 3, 2018 through approximately December 21, 2020 is the correct value of damages.

---

[2]Expert report of Martin J. Kelly, M.D. dated December 21, 2020, page 6, as provided by Counsel.

Confidential – Attorney's Eyes Only

Based on these assumptions, to a reasonable degree of certainty, the value of damages as of December 2020 is approximately $641,000, as demonstrated within Exhibit 9 of this report.

## III.   Case Background

### A)  Dr. Menninger Employment[3]

10.      Dr. Menninger was hired by PPD in July of 2015 as the Executive Director of its laboratories in Highland Heights, KY, US; Zaventem, Belgium; Shanghai, China and Singapore.

11.      Mr. Mekerri, Dr. Menninger's superior informed Dr. Menninger that he was considering making changes to her role in order to make it more "visible." Such visibility would involve more public exposure and travel to support the goals of PPD.

12.      Dr. Menninger informed Mr. Mekerri by email in January 2018 that she suffered from certain psychological disabilities that limit her ability to participate in large group settings.

13.      Dr. Menninger asked for accommodations for her disabilities under the Americans with Disabilities Act ("ADA").

14.      The Company attempted to accommodate Dr. Menninger's needs, including allowing her to work remotely, but her needs could not be fully accommodated based on the nature of her work.

### B)  Summary of Dispute

15.      On July 28, 2018, Dr. Menninger filed her complaint in this matter, alleging an intentional violation of the ADA, seeking damages.

---

[3] Unless otherwise cited, this section is sourced from the Complaint; paraphrased.

Confidential – Attorney's Eyes Only

## IV.  Discussion of Various Aspects of the Jonas Report

16.     Mr. Jonas assumes an overly precise work life expectancy of 67.41 years for Dr. Menninger. The Jonas Report work life expectancy estimate was derived from tables developed by Krueger, Skoog and Cieka (KSC).[4] The KSC tables are highly generalized across the entire population of the U.S. While they do take into account the education of the individual under consideration, they do not take into account specific professions. By comparison, physician specific data indicates relatively shorter work life durations than experienced by the general population. A 2017 study published in the Annals of Family Medicine, which surveyed nearly 80,000 physicians, indicates that the median retirement age of physicians is 65 years. This study also reports that some physicians continue later in their careers in administrative and educational roles, and the median age of retirement from "any professional activity" is 66 years across all physician specialties. Data also suggests that women retire one year earlier than men.[5] Based on this information, Dr. Menninger's expected retirement age is most likely the age of 65, resulting in a remaining expected work life of approximately 15 years (as compared to the 18 year period used in the Jonas Report)..

17.     The rate of wage and benefit growth used by Mr. Jonas, 2.7%, appears consistent with available data. The observed CAGR of Dr. Menninger's base salary growth from $260,075 at 11/1/2016 to $270,582 at 04/01/2018 is approximately 2.8%.[6]

18.     Mr. Jonas used a slightly overstated bonus to base salary ratio of 20%. While Dr. Menninger's target bonus rate was stated to be 20% of her base salary in her employment agreement, in fact, in 2018 her bonus was only 16.4%.[7] Dr. Menninger's average bonus as a percent of her base salary in 2017 and 2018 was approximately 18.2%.[8]

---

[4] "The Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors." Journal of forensic Economics 22(1), 2011, pp. 165-229.
[5] http://hospitalmedicaldirector.com/age-of-physicians-by-specialty/(last accessed Jan. 13, 2020); and The Annals of Family Medicine, Vol. 14, Issue 4, July/August 2016.
[6] See Exhibit 9.
[7] See Exhibit 9.
[8] See Exhibit 9.

Confidential – Attorney's Eyes Only

19.     Mr. Jonas's discount rate selection of 0.85% based on Treasury securities for the entirety of his analysis is not supported by the current Treasury rate yield curve.  Mr. Jonas selected a single risk free rate of return (0.85%) to use for the entire period of his analysis (sixteen years).  He describes this rate in his report at Page 5, footnote 15 as a "blended time portfolio." This leads to an analytical mismatch of maturity risk to the underlying benefit stream, which in turn leads to errors in the discounting process.

20.     I have replicated the Jonas Report calculations of damages, as set forth within Jonas Report Exhibits A and B to determine accuracy, and to develop an understanding of the mathematics of discounting used. The replicated calculations can been seen at Exhibits 3 and 6 of this report, respectively.

21.     As discussed above, although the formula for present-valuing future expected cash flows appears correct, the Jonas Report use of a single discount rate of 0.85% over his selected sixteen year period in not supported.  The selected risk free rate of return should have a maturity horizon that matches the time horizon of the estimated benefit stream selected by the analyst. Aswath Damodaran, the Kerschner Family Chair in Finance Education and Professor of Finance at New York University Stern School of Business, comments on the risk free rate of return as follows: "Time horizon matters: Thus, the risk free rates in valuation will depend upon when the cash flow is expected to occur and will vary across time."[9]

22.     In Exhibits 4 and 7 of this report, I recomputed Mr. Jonas's estimate of damages as set forth in his Exhibits A and B (corresponding to Exhibits 3 and 6 of this report) using corrected discount rates based on the Treasury rates prevailing on December 31, 2020.

    i.    Treasury securities are quoted on a trading day basis based on maturities ranging from one month to thirty years. On December 31, 2020, one year T-bills were trading at 0.10% and twenty year Treasury notes were trading at 1.45%.[10]

    ii.   Using a process of interpolation of maturity risk I determined an appropriate risk free rate of return to apply in each of the sixteen years used in Mr. Jonas's chosen

---

[9] http://people.stern.nyu.edu/adamodar/pdfiles/eqnotes/dcfrates.pdf
[10] See Exhibit 10.

Confidential – Attorney's Eyes Only

benefit stream. The actual and interpolated rates can be seen at Exhibit 10. The following table sets forth the minor differences that result from Mr. Jonas's choice to use a single rate of return in the Jonas Report.

**Table 1: Impact of Discount Rate on Damages**

| Jonas | | Marcum | | Difference |
|---|---|---|---|---|
| $6,983,454 | *Exhibit 3* | $6,960,108 | *Exhibit 4* | $23,346 |
| $6,378,896 | *Exhibit 6* | $6,356,463 | *Exhibit 7* | $22,433 |

## V.  Calculation of Damages

23.     I calculated the value of damages as follows:

1.     I determined from PPD documents that Dr. Menninger's base salary was $270,582 on April 1, 2018[11].

2.     I determined the appropriate rate of growth of her salary to be 2.8% based on the compounded average rate of growth in Dr. Menninger's salary from 11/01/16 through 04/01/18.[12]

3.     Estimated salaries would range from a low of $270,582 in 2018 to $286,175 in 2020.[13]

4.     Expected future bonuses were computed to be 18.2% of base salary, ranging from a low of $49,314 in 2018 to a high of $52,156 in 2020.[14]

5.     I utilized the expected benefit percentage of approximately 7.4% of salary and bonus estimated by Mr. Jonas, as I believe the underlying economic data supports the assumption. Expected benefits range from a low of $23,672 in 2018 to a high of $25,036 in 2020.

6.     Total expected salaries, bonuses and benefits range from a low of $343,568 in 2018 to a high of $363,368 in 2020.[15]

---

[11] MENNINGER_SUPP000233-000235
[12] See Exhibit 9.
[13] See Exhibit 9.
[14] See Exhibit 9.
[15] See Exhibit 9.

Confidential – Attorney's Eyes Only

**Lisa Menninger v. PPD Development, L.P.**
**Expert Rebuttal Report of William B. Scally**
**January 15, 2021**

7.   I applied known factors of mitigation to those amounts, also based on the calculations of Mr. Jonas, which on examination I found to be accurate. The amounts of mitigation subtracted in determining net damage by period were $304,177 in 2018, $85,573 in 2019, and $29,945 in 2020. The factors of mitigation relate to Social Security Disability Income payments and long-term disability payments received by Dr. Menninger over the period of loss.[16]

8.   Thus, I have concluded total damages on a fully mitigated basis in 2018 of $39,391, in 2019 of $267,756, and in 2020 of $333,423, for a total of $640,570.[17] All of the above calculations can be seen at Exhibit 9 of this report.


* * * * *

I reserve the right to request to respond to any other arguments on damages that Dr. Menninger identifies as well as any amendments or supplements to Mr. Jonas's Report.


Date: January 15, 2021


_____
William B. Scally

---

[16] Jonas Report, Exhibit B.
[17] See Exhibit 9.

Confidential – Attorney's Eyes Only

**Analysis of Lost Wages, Bonuses and Fringe Benefits**                                    Exhibit 1
**Lisa Menninger, Plaintiff, v. PPD Development, L.P**

*Exhibit 1 - C.V. of William B. Scally*

# William Scally, CFA
## Partner-in-Charge Litigation Services - Boston



MARCUM
VALUATION ▲ LITIGATION SUPPORT
A Division of Marcum LLP

### Curriculum Vitae

Mr. Scally is a Partner in the Business Valuation and Litigation Support practice of Marcum LLP ("Marcum") in Boston, Massachusetts. He is also the national leader of Marcum's Litigation Advisory Services practice. He earned a Bachelor of Science in Control Systems Engineering from the United States Naval Academy as well as a Master in Business Administration from Boston College. He is a Chartered Financial Analyst ("CFA") charter holder and has over 19 years of professional experience. He is a member of the CFA Institute and the CFA Society Boston.

Over his career, he has provided expert opinions on numerous matters involving breach of contract, tort claims, theft of proprietary information and intellectual property disputes, and the analysis of resulting damages including, but not limited to, valuing business damages. He has served as an expert witness in over 30 matters, testifying at depositions and/or at trial in approximately 13 matters in state and federal courts, as well as private arbitration. He has been qualified as an expert and been permitted to testify in several matters brought in Federal Court in Boston. Specifically, Judge Talwani found he was qualified to offer expert testimony in a trial involving breach of contract and breach of fiduciary duty claims related to a start-up medical device company in which he offered testimony on the valuation of a medical device business. Judge Casper found he was qualified to offer expert testimony in a trial involving trademark infringement in which he offered testimony on damages, specifically profit disgorgement. Judge Gorton also found he was qualified to offer expert testimony in a trial involving breach of contract and theft of confidential information claims. He also offered testimony on damages in an employment discrimination matter in JAMS arbitration to the Honorable Judge Margaret R. Hinkle, as well as testimony on damages in an employment defamation matter to a panel of arbitrators in FINRA arbitration. He also served as a special master on business valuation in private arbitration to the Honorable Judge Vanaskie (ret.).

### Education

**Master of Business Administration**, *Boston College*
**Bachelor of Science, Control Systems Engineering**, *United States Naval Academy*

### Experience

**Partner-in-Charge, Litigation Services - Boston**                          October 2017 - Present
Marcum LLP

**Director**                                                                 2013 - 2017
PricewaterhouseCoopers

**Manager**                                                                  2004 - 2013
PricewaterhouseCoopers

**Senior Associate**                                                         April 2002 - 2004
PricewaterhouseCoopers

**Lieutenant**                                                               1994 - 1999
United States Navy

### Professional Designations

**CFA**     Chartered Financial Analyst
            Designated by the CFA Institute

Confidential - Attorney's Eyes Only

# William Scally, CFA
## Partner-in-Charge Litigation Services - Boston



Curriculum Vitae

## Professional Organizations and Activities

- CFA Institute
- CFA Society Boston
- Boston Patent Law Association
- Boston Bar Association
- American Bar Association

## Articles and Publications

- Litigation Services Handbook: The Role of the Financial Expert, Sixth Edition, Co-author of Patent Infringement Damages chapter, John Wiley & Sons, Inc., 2017
- "The Comprehensive Guide to Economic Damages, 6th edition," Editor. Business Valuation Resources, LLC, December 2020

## Expert Testimony Experience

Mr. Scally has served as an expert witness and as a special master in complex valuation mediation.  His testimony has included opinions relating to valuation and commercial damages in the context of torts and contract damages, trade secret misappropriation, trademark violations, patent disputes, failed mergers and partnership disputes, employment litigation and personal injury matters.

Prior testimony includes:

EZShield, Inc. v. Harland Clark Corporation (Texas District Court, Bexar County)
Estate of QinPei Lin v. Paul Lidano, Bentley University et al. (Superior Court of Massachusetts, Middlesex County)
Donald Thomas Scholz v. Barry Goudreau (U.S. District Court, MA)
Riverside Acquisition Group LLC v. 5 Digit Plus LLC (U.S. Bankruptcy Court, DE)
Dennis Devona v. Steven Zeitels (U.S. District Court, MA)
Gillette Company v. ShaveLogic, Inc. (Superior Court of Massachusetts, Suffolk County)
Covidien LP and Covidien Holding Inc. v. Kerry P. Falco Esch (U.S. District Court, MA)
Christine Carona v. UBS Financial Services, Inc. and James E. Ducey (JAMS Arbitration)
OptoLum, Inc. v. Cree, Inc. (U.S. District Court, Middle District of N.C.)
Susan Packard v. Morgan Stanley (FINRA Arbitration)
Weston Financial Group, Inc. v. Kerry P. Falco and Maria A. Staffiere (American Arbitration Association)
United States ex rel. Matthew MacDowell v. Synnex Corporation (U.S. District Court, Northern District of CA)
Inline Plastics Corp. v. Lacerta Group Inc. (U.S. District Court, MA)

Confidential - Attorney's Eyes Only

**Analysis of Lost Wages, Bonuses and Fringe Benefits**                                                                **Exhibit 2**
**Lisa Menninger, Plaintiff, v. PPD Development, L.P**

*Exhibit 2 - Data Considered in Forming Opinions*

[1] IRS form W-2 year 2019 Unum Life Insurance Company ("UNUM W-2") (Bates Menninger Supp 000075-000076)

[2] PPD Retirement Services Statements for the period 7/1/2017 through 12/31/2019 (Bates Menninger Supp000171-230)

[3] Letter from UNUM dated January 16 , 2020 regarding 2019 repayment of long-term disability ("LTD repayment letter")
    (Bates Menninger Supp 000231-000232)

[4] Compensation Statements for years 2016 through 2018 (Bates Menninger Supp 000233- 000235)

[5] Offer of employment letter from PPD dated September I , 2015 ("Offer Letter") (Bates PPD Menninger 00459-00466)

[6] Expert report of Martin J. Kelly, M.D. dated December 21, 2020

[7] 2019 PPD Benefits Brochure (Bates Menninger 000159-000177)

[8] Complaint and Demand for Jury Trial, filed June 28, 2019

[9] PPD US Employee Handbook updated December 2016, ("employee handbook") (Bates Menninger 000115-157)

[10]   UNUM Long Term Disability Plan (Bates Menninger 000 I 92-229)

[11]   Social Security Administration letter dated February 18, 2019 ("SSA letter") (Bates Menninger 000864-865)

[12]   Selected publications, database queries and economic data as indicated in the body of the report

**Analysis of Lost Wages, Bonuses and Fringe Benefits**
**Lisa Menninger, Plaintiff, v. PPD Development, L.P**

**Exhibit 3**

*Exhibit 3 - Jonas Exhibit A - Salary, bonus and benefit losses suffered by Dr. Lisa Menninger [1]*

| Year | Age | Expected Wages, Bonus and Benefits | | | less: Actual / Mitigation | | | equals: Nominal Losses | | | | Present Value Calculus | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Wages & Bonus | Benefits | Total | Wages & Bonus | Benefits | Total | Wages & Bonus | Benefits | Total [2] | Discount Rate | Discount Period (years) [3] | Discount Factor [4] | Present Value | Cumulative |
| 2018 | 50 | $312,200 | $23,092 | $335,292 | $285,029 | $19,148 | $304,177 | $27,171 | $3,944 | $31,115 | | | | $31,115 | |
| 2019 | 51 | 323,949 | 23,840 | 347,789 | - | - | - | $323,949 | $23,840 | $347,789 | | | | 347,789 | |
| 2020 | 52 | 332,621 | 24,621 | 357,242 | - | - | - | $332,621 | $24,621 | $357,242 | | | | 357,242 | $736,146 |
| 2021 | 53 | 341,524 | 25,353 | 366,877 | - | - | - | $341,524 | $25,353 | $366,877 | 0.85% | 1 | 0.9916 | 363,785 | $1,099,931 |
| 2022 | 54 | 350,665 | 26,107 | 376,772 | - | - | - | $350,665 | $26,107 | $376,772 | 0.85% | 2 | 0.9832 | 370,448 | $1,470,378 |
| 2023 | 55 | 360,052 | 26,884 | 386,936 | - | - | - | $360,052 | $26,884 | $386,936 | 0.85% | 3 | 0.9749 | 377,235 | $1,847,613 |
| 2024 | 56 | 369,689 | 27,684 | 397,373 | - | - | - | $369,689 | $27,684 | $397,373 | 0.85% | 4 | 0.9667 | 384,145 | $2,231,758 |
| 2025 | 57 | 379,585 | 28,509 | 408,094 | - | - | - | $379,585 | $28,509 | $408,094 | 0.85% | 5 | 0.9586 | 391,184 | $2,622,941 |
| 2026 | 58 | 389,745 | 29,359 | 419,104 | - | - | - | $389,745 | $29,359 | $419,104 | 0.85% | 6 | 0.9505 | 398,351 | $3,021,293 |
| 2027 | 59 | 400,177 | 30,234 | 430,411 | - | - | - | $400,177 | $30,234 | $430,411 | 0.85% | 7 | 0.9425 | 405,651 | $3,426,943 |
| 2028 | 60 | 410,889 | 31,136 | 442,025 | - | - | - | $410,889 | $31,136 | $442,025 | 0.85% | 8 | 0.9345 | 413,085 | $3,840,028 |
| 2029 | 61 | 421,887 | 32,066 | 453,953 | - | - | - | $421,887 | $32,066 | $453,953 | 0.85% | 9 | 0.9267 | 420,657 | $4,260,685 |
| 2030 | 62 | 433,180 | 33,024 | 466,204 | - | - | - | $433,180 | $33,024 | $466,204 | 0.85% | 10 | 0.9188 | 428,368 | $4,689,053 |
| 2031 | 63 | 444,774 | 34,011 | 478,785 | - | - | - | $444,774 | $34,011 | $478,785 | 0.85% | 11 | 0.9111 | 436,220 | $5,125,273 |
| 2032 | 64 | 456,680 | 35,028 | 491,708 | - | - | - | $456,680 | $35,028 | $491,708 | 0.85% | 12 | 0.9034 | 444,218 | $5,569,491 |
| 2033 | 65 | 468,904 | 36,076 | 504,980 | - | - | - | $468,904 | $36,076 | $504,980 | 0.85% | 13 | 0.8958 | 452,363 | $6,021,855 |
| 2034 | 66 | 481,455 | 37,156 | 518,611 | - | - | - | $481,455 | $37,156 | $518,611 | 0.85% | 14 | 0.8883 | 460,658 | $6,482,513 |
| 2035 | 67 | 494,342 | 38,269 | 532,611 | - | - | - | $494,342 | $38,269 | $532,611 | 0.85% | 15 | 0.8808 | 469,107 | $6,951,620 |
| 2036 | 68 | 32,683 | 3,768 | 36,451 | - | - | - | $32,683 | $3,768 | $36,451 | 0.85% | 16 | 0.8733 | 31,834 | $6,983,454 |
| Total | | $7,205,001 | $546,217 | $7,751,218 | $285,029 | $19,148 | $304,177 | $6,919,972 | $527,069 | $7,447,041 | | | | $6,983,454 [5] | |

| | |
|---|---|
| Back Pay: Past (2018 - 2020) | $736,146 |
| Front Pay: Future (2021 - 2036) | 6,247,308 |
| | $6,983,454 |

Notes:
[1] See Expert Report of Bruce R. Jonas, Exhibit A.
[2] Discount rate based on Expert Report of Bruce R. Jonas, page 5., paragraph 2.E.
[3] Discount factor = 1 / (1 + Discount Rate)^Discount Period (years)
[4] Present Value = (Total Nominal Loss) x (Discount Factor)
[5] See Expert Report of Bruce R. Jonas, Exhibit A.  Note total does not match, due to rounding.

Confidential – Attorney's Eyes Only

**Analysis of Lost Wages, Bonuses and Fringe Benefits**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Exhibit 4**
**Lisa Menninger, Plaintiff, v. PPD Development, L.P**

*Exhibit 4 - Salary, bonus and benefit losses suffered by Dr. Lisa Menninger, corrected for appropriate discount rate [1]*

| | | Expected Wages, Bonus and Benefits | | | less: Actual / Mitigation | | | equals: Nominal Losses | | | | Present Value Calculus | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Year | Age | Wages & Bonus | Benefits | Total | Wages & Bonus | Benefits | Total | Wages & Bonus | Benefits | Total [2] | Discount Rate | Discount Period (years) [3] | Discount Factor [4] | Present Value | Cumulative |
| 2018 | 50 | $312,200 | $23,092 | $335,292 | $285,029 | $19,148 | $304,177 | $27,171 | $3,944 | $31,115 | | | | $31,115 | |
| 2019 | 51 | 323,949 | 23,840 | 347,789 | - | - | - | $323,949 | $23,840 | $347,789 | | | | 347,789 | |
| 2020 | 52 | 332,621 | 24,621 | 357,242 | - | - | - | $332,621 | $24,621 | $357,242 | | | | 357,242 | $736,146 |
| 2021 | 53 | 341,524 | 25,353 | 366,877 | - | - | - | $341,524 | $25,353 | $366,877 | 0.10% | 1 | 0.9990 | 366,510 | $1,102,656 |
| 2022 | 54 | 350,665 | 26,107 | 376,772 | - | - | - | $350,665 | $26,107 | $376,772 | 0.13% | 2 | 0.9974 | 375,794 | $1,478,451 |
| 2023 | 55 | 360,052 | 26,884 | 386,936 | - | - | - | $360,052 | $26,884 | $386,936 | 0.17% | 3 | 0.9949 | 384,969 | $1,863,420 |
| 2024 | 56 | 369,689 | 27,684 | 397,373 | - | - | - | $369,689 | $27,684 | $397,373 | 0.27% | 4 | 0.9895 | 393,189 | $2,256,609 |
| 2025 | 57 | 379,585 | 28,509 | 408,094 | - | - | - | $379,585 | $28,509 | $408,094 | 0.36% | 5 | 0.9822 | 400,827 | $2,657,436 |
| 2026 | 58 | 389,745 | 29,359 | 419,104 | - | - | - | $389,745 | $29,359 | $419,104 | 0.51% | 6 | 0.9702 | 406,627 | $3,064,062 |
| 2027 | 59 | 400,177 | 30,234 | 430,411 | - | - | - | $400,177 | $30,234 | $430,411 | 0.65% | 7 | 0.9557 | 411,327 | $3,475,389 |
| 2028 | 60 | 410,889 | 31,136 | 442,025 | - | - | - | $410,889 | $31,136 | $442,025 | 0.74% | 8 | 0.9425 | 416,597 | $3,891,986 |
| 2029 | 61 | 421,887 | 32,066 | 453,953 | - | - | - | $421,887 | $32,066 | $453,953 | 0.84% | 9 | 0.9278 | 421,158 | $4,313,144 |
| 2030 | 62 | 433,180 | 33,024 | 466,204 | - | - | - | $433,180 | $33,024 | $466,204 | 0.93% | 10 | 0.9116 | 424,985 | $4,738,128 |
| 2031 | 63 | 444,774 | 34,011 | 478,785 | - | - | - | $444,774 | $34,011 | $478,785 | 0.98% | 11 | 0.8981 | 429,989 | $5,168,117 |
| 2032 | 64 | 456,680 | 35,028 | 491,708 | - | - | - | $456,680 | $35,028 | $491,708 | 1.03% | 12 | 0.8839 | 434,607 | $5,602,724 |
| 2033 | 65 | 468,904 | 36,076 | 504,980 | - | - | - | $468,904 | $36,076 | $504,980 | 1.09% | 13 | 0.8690 | 438,825 | $6,041,549 |
| 2034 | 66 | 481,455 | 37,156 | 518,611 | - | - | - | $481,455 | $37,156 | $518,611 | 1.14% | 14 | 0.8535 | 442,630 | $6,484,178 |
| 2035 | 67 | 494,342 | 38,269 | 532,611 | - | - | - | $494,342 | $38,269 | $532,611 | 1.19% | 15 | 0.8374 | 446,012 | $6,930,190 |
| 2036 | 68 | 32,683 | 3,768 | 36,451 | - | - | - | $32,683 | $3,768 | $36,451 | 1.24% | 16 | 0.8208 | 29,918 | $6,960,108 |
| Total | | $7,205,001 | $546,217 | $7,751,218 | $285,029 | $19,148 | $304,177 | $6,919,972 | $527,069 | $7,447,041 | | | | $6,960,108 | |

Notes:
[1]   See Expert Report of Bruce R. Jonas, Exhibit A.
[2]   Discount rate based on observed Treasury Rate yields as of 12/31/2020.  See Exhibit 10.
[3]   Discount factor = 1 / (1 + Discount Rate)^Discount Period (years)
[4]   Present Value = (Total Nominal Loss) x (Discount Factor)

| | |
|---|---|
| Back Pay: Past (2018 - 2020) | $736,146 |
| Front Pay: Future (2021 - 2036) | 6,223,962 |
| | $6,960,108 |

**Analysis of Lost Wages, Bonuses and Fringe Benefits**
**Lisa Menninger, Plaintiff, v. PPD Development, L.P**

**Exhibit 5**

*Exhibit 5 - Salary, bonus and benefit losses suffered by Dr. Lisa Menninger*

|  | Year | Age | Expected Wages, Bonus and Benefits | | | | less: Actual / Mitigation | | | | equals: Nominal Losses | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  | Wages & Bonus | Benefits | Total | | Wages & Bonus | Benefits | Total | | Wages & Bonus | Benefits | Total |
|  | 2018 | 50 | $312,200 | $23,092 | $335,292 | | $285,029 | $19,148 | $304,177 | | $27,171 | $3,944 | $31,115 |
|  | 2019 | 51 | 323,949 | 23,840 | 347,789 | | - | - | - | | $323,949 | $23,840 | $347,789 |
| [1] | 2020 | 52 | 332,621 | 24,621 | 357,242 | | - | - | - | | $332,621 | $24,621 | $357,242 |
|  | Total |  | $968,770 | $71,553 | $1,040,323 | | $285,029 | $19,148 | $304,177 | | $683,741 | $52,405 | $736,146 |

Notes:

[1] On December 21, 2020 Martin J. Kelly, M.D., Associate Professor of Psychiatry of the Harvard Medical School stated his written professional opinion that
    Dr. Lisa Menninger, the Complainant, is fully capable of returning to her profession if she "were motivated to do so," thus mitigating all future damages claimed.

Confidential – Attorney's Eyes Only

**Analysis of Lost Wages, Bonuses and Fringe Benefits**
**Lisa Menninger, Plaintiff, v. PPD Development, L.P**

**Exhibit 6**

*Exhibit 6 - Jonas Exhibit B - Salary, bonus and benefit losses suffered by Dr. Lisa Menninger [1]*

| Year | Age | Wages & Bonus | Benefits | Total | Actual / Mitigation Wages & Bonus | Benefits | Total | Wages & Bonus | Benefits | Total [2] | Present Value Calculus Discount Rate | Discount Period (years) [3] | Discount Factor [4] | Present Value | Cumulative |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2018 | 50 | $312,200 | $23,092 | $335,292 | $285,029 | $19,148 | $304,177 | $27,171 | $3,944 | $31,115 | | | | $31,115 | |
| 2019 | 51 | 323,949 | 23,840 | 347,789 | 85,573 | - | 85,573 | 238,376 | $23,840 | $262,216 | | | | 262,216 | |
| 2020 | 52 | 332,621 | 24,621 | 357,242 | 29,945 | - | 29,945 | 302,676 | $24,621 | $327,297 | | | | 327,297 | $620,628 |
| 2021 | 53 | 341,524 | 25,353 | 366,877 | 30,610 | - | 30,610 | $310,914 | $25,353 | $336,267 | 0.85% | 1 | 0.9916 | 333,433 | $954,061 |
| 2022 | 54 | 350,665 | 26,107 | 376,772 | 31,290 | - | 31,290 | $319,375 | $26,107 | $345,482 | 0.85% | 2 | 0.9832 | 339,683 | $1,293,744 |
| 2023 | 55 | 360,052 | 26,884 | 386,936 | 31,985 | - | 31,985 | $328,067 | $26,884 | $354,951 | 0.85% | 3 | 0.9749 | 346,051 | $1,639,795 |
| 2024 | 56 | 369,689 | 27,684 | 397,373 | 32,695 | - | 32,695 | $336,994 | $27,684 | $364,678 | 0.85% | 4 | 0.9667 | 352,538 | $1,992,333 |
| 2025 | 57 | 379,585 | 28,509 | 408,094 | 33,421 | - | 33,421 | $346,164 | $28,509 | $374,673 | 0.85% | 5 | 0.9586 | 359,148 | $2,351,481 |
| 2026 | 58 | 389,745 | 29,359 | 419,104 | 34,163 | - | 34,163 | $355,582 | $29,359 | $384,941 | 0.85% | 6 | 0.9505 | 365,880 | $2,717,361 |
| 2027 | 59 | 400,177 | 30,234 | 430,411 | 34,922 | - | 34,922 | $365,255 | $30,234 | $395,489 | 0.85% | 7 | 0.9425 | 372,738 | $3,090,098 |
| 2028 | 60 | 410,889 | 31,136 | 442,025 | 35,698 | - | 35,698 | $375,191 | $31,136 | $406,327 | 0.85% | 8 | 0.9345 | 379,724 | $3,469,823 |
| 2029 | 61 | 421,887 | 32,066 | 453,953 | 36,491 | - | 36,491 | $385,396 | $32,066 | $417,462 | 0.85% | 9 | 0.9267 | 386,842 | $3,856,665 |
| 2030 | 62 | 433,180 | 33,024 | 466,204 | 37,301 | - | 37,301 | $395,879 | $33,024 | $428,903 | 0.85% | 10 | 0.9188 | 394,094 | $4,250,759 |
| 2031 | 63 | 444,774 | 34,011 | 478,785 | 38,130 | - | 38,130 | $406,644 | $34,011 | $440,655 | 0.85% | 11 | 0.9111 | 401,480 | $4,652,239 |
| 2032 | 64 | 456,680 | 35,028 | 491,708 | 38,977 | - | 38,977 | $417,703 | $35,028 | $452,731 | 0.85% | 12 | 0.9034 | 409,006 | $5,061,245 |
| 2033 | 65 | 468,904 | 36,076 | 504,980 | 39,842 | - | 39,842 | $429,062 | $36,076 | $465,138 | 0.85% | 13 | 0.8958 | 416,673 | $5,477,917 |
| 2034 | 66 | 481,455 | 37,156 | 518,611 | 40,727 | - | 40,727 | $440,728 | $37,156 | $477,884 | 0.85% | 14 | 0.8883 | 424,483 | $5,902,400 |
| 2035 | 67 | 494,342 | 38,269 | 532,611 | 27,754 | - | 27,754 | $466,588 | $38,269 | $504,857 | 0.85% | 15 | 0.8808 | 444,662 | $6,347,062 |
| 2036 | 68 | 32,683 | 3,768 | 36,451 | - | - | - | $32,683 | $3,768 | $36,451 | 0.85% | 16 | 0.8733 | 31,834 | $6,378,896 |
| Total | | $7,205,001 | $546,217 | $7,751,218 | $924,553 | $19,148 | $943,701 | $6,280,448 | $527,069 | $6,807,517 | | | | $6,378,896 [5] | |

| | |
|---|---|
| Back Pay: Past (2018 - 2020) | $620,628 |
| Front Pay: Future (2021 - 2036) | 5,758,268 |
| | $6,378,896 |

Notes:
[1]  See Expert Report of Bruce R. Jonas, Exhibit B
[2]  Discount rate based on Expert Report of Bruce R. Jonas, page 5., paragraph 2.E.
[3]  Discount factor = 1 / (1 + Discount Rate)^Discount Period (years)
[4]  Present Value = (Total Nominal Loss) x (Discount Factor)
[5]  See Expert Report of Bruce R. Jonas, Exhibit B.

Confidential – Attorney's Eyes Only

**Analysis of Lost Wages, Bonuses and Fringe Benefits**
**Lisa Menninger, Plaintiff, v. PPD Development, L.P**

**Exhibit 7**

*Exhibit 7 - Salary, bonus and benefit losses suffered by Dr. Lisa Menninger, corrected for appropriate discount rate [1]*

| Year | Age | Wages & Bonus | Benefits | Total | Actual / Mitigation | | | Wages & Bonus | Benefits | Total [2] | Present Value Calculus | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Wages & Bonus | Benefits | Total | | | | Discount Rate | Discount Period (years) [3] | Discount Factor [4] | Present Value | Cumulative |
| 2018 | 50 | $312,200 | $23,092 | $335,292 | $285,029 | $19,148 | $304,177 | $27,171 | $3,944 | $31,115 | | | | $31,115 | |
| 2019 | 51 | 323,949 | 23,840 | 347,789 | 85,573 | - | 85,573 | 238,376 | 23,840 | 262,216 | | | | 262,216 | |
| 2020 | 52 | 332,621 | 24,621 | 357,242 | 29,945 | - | 29,945 | 302,676 | 24,621 | 327,297 | | | | 327,297 | $620,628 |
| 2021 | 53 | 341,524 | 25,353 | 366,877 | 30,610 | - | 30,610 | 310,914 | 25,353 | 336,267 | 0.10% | 1 | 0.9990 | 335,931 | $956,559 |
| 2022 | 54 | 350,665 | 26,107 | 376,772 | 31,290 | - | 31,290 | 319,375 | 26,107 | 345,482 | 0.13% | 2 | 0.9974 | 344,585 | $1,301,145 |
| 2023 | 55 | 360,052 | 26,884 | 386,936 | 31,985 | - | 31,985 | 328,067 | 26,884 | 354,951 | 0.17% | 3 | 0.9949 | 353,147 | $1,654,291 |
| 2024 | 56 | 369,689 | 27,684 | 397,373 | 32,695 | - | 32,695 | 336,994 | 27,684 | 364,678 | 0.27% | 4 | 0.9895 | 360,838 | $2,015,129 |
| 2025 | 57 | 379,585 | 28,509 | 408,094 | 33,421 | - | 33,421 | 346,164 | 28,509 | 374,673 | 0.36% | 5 | 0.9822 | 368,001 | $2,383,130 |
| 2026 | 58 | 389,745 | 29,359 | 419,104 | 34,163 | - | 34,163 | 355,582 | 29,359 | 384,941 | 0.51% | 6 | 0.9702 | 373,481 | $2,756,611 |
| 2027 | 59 | 400,177 | 30,234 | 430,411 | 34,922 | - | 34,922 | 365,255 | 30,234 | 395,489 | 0.65% | 7 | 0.9557 | 377,953 | $3,134,564 |
| 2028 | 60 | 410,889 | 31,136 | 442,025 | 35,698 | - | 35,698 | 375,191 | 31,136 | 406,327 | 0.74% | 8 | 0.9425 | 382,953 | $3,517,517 |
| 2029 | 61 | 421,887 | 32,066 | 453,953 | 36,491 | - | 36,491 | 385,396 | 32,066 | 417,462 | 0.84% | 9 | 0.9278 | 387,303 | $3,904,820 |
| 2030 | 62 | 433,180 | 33,024 | 466,204 | 37,301 | - | 37,301 | 395,879 | 33,024 | 428,903 | 0.93% | 10 | 0.9116 | 390,982 | $4,295,801 |
| 2031 | 63 | 444,774 | 34,011 | 478,785 | 38,130 | - | 38,130 | 406,644 | 34,011 | 440,655 | 0.98% | 11 | 0.8981 | 395,745 | $4,691,546 |
| 2032 | 64 | 456,680 | 35,028 | 491,708 | 38,977 | - | 38,977 | 417,703 | 35,028 | 452,731 | 1.03% | 12 | 0.8839 | 400,156 | $5,091,702 |
| 2033 | 65 | 468,904 | 36,076 | 504,980 | 39,842 | - | 39,842 | 429,062 | 36,076 | 465,138 | 1.09% | 13 | 0.8690 | 404,202 | $5,495,905 |
| 2034 | 66 | 481,455 | 37,156 | 518,611 | 40,727 | - | 40,727 | 440,728 | 37,156 | 477,884 | 1.14% | 14 | 0.8535 | 407,870 | $5,903,774 |
| 2035 | 67 | 494,342 | 38,269 | 532,611 | 27,754 | - | 27,754 | 466,588 | 38,269 | 504,857 | 1.19% | 15 | 0.8374 | 422,770 | $6,326,545 |
| 2036 | 68 | 32,683 | 3,768 | 36,451 | - | - | - | 32,683 | 3,768 | 36,451 | 1.24% | 16 | 0.8208 | 29,918 | $6,356,463 |
| Total | | $7,205,001 | $546,217 | $7,751,218 | $924,553 | $19,148 | $943,701 | $6,280,448 | $527,069 | $6,807,517 | | | | $6,356,463 | |

Notes:
[1]   See Expert Report of Bruce R. Jonas, Exhibit B
[2]   Discount rate based on observed Treasury Rate yields as of 12/31/2020.  See Exhibit 10.
[3]   Discount factor = 1 / (1 + Discount Rate)^Discount Period (years)
[4]   Present Value = (Total Nominal Loss) x (Discount Factor)

| | |
|---|---|
| Back Pay: Past (2018 - 2020) | $620,628 |
| Front Pay: Future (2021 - 2036) | 5,735,835 |
| | $6,356,463 |

Confidential – Attorney's Eyes Only

**Analysis of Lost Wages, Bonuses and Fringe Benefits**
**Lisa Menninger, Plaintiff, v. PPD Development, L.P**                                                                                                  **Exhibit 8**

*Exhibit 8 - Salary, bonus and benefit losses suffered by Dr. Lisa Menninger*

| | Year | Age | Wages & Bonus | Benefits | Total | Actual / Mitigation | | | Wages & Bonus | Benefits | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Wages & Bonus | Benefits | Total | | | |
| | 2018 | 50 | $312,200 | $23,092 | $335,292 | $285,029 | $19,148 | $304,177 | $27,171 | $3,944 | $31,115 |
| | 2019 | 51 | 323,949 | 23,840 | 347,789 | 85,573 | - | 85,573 | $238,376 | $23,840 | $262,216 |
| [1] | 2020 | 52 | 332,621 | 24,621 | 357,242 | 29,945 | - | 29,945 | $302,676 | $24,621 | $327,297 |
| | Total | | $968,770 | $71,553 | $1,040,323 | $400,547 | $19,148 | $419,695 | $568,223 | $52,405 | $620,628 |

Notes:

[1] On December 21, 2020 Martin J. Kelly, M.D., Associate Professor of Psychiatry of the Harvard Medical School stated his written professional opinion that Dr. Lisa Menninger, the Complainant, is fully capable of returning to her profession if she "were motivated to do so," thus mitigating all future damages claimed.

Confidential – Attorney's Eyes Only

**Analysis of Lost Wages, Bonuses and Fringe Benefits**
**Lisa Menninger, Plaintiff, v. PPD Development, L.P**

**Exhibit 9**

*Exhibit 9 - Calculation of Incremental Base Earnings, Wage Inflation, Bonuses and Losses*

| | | | |
|---|---|---|---|
| [1] | 2016 base salary | [A] | 257,500 |
| [1] | 2016 base salary increase | [B] | 2,575 |
| | % change in annual salary in 2016 | [C] = [B]/[A] | 1.0% |
| | Base salary effective 11/01/2016 | [D] = [A]+[B] | 260,075 |
| [1] | 2017 base salary increase | [E] | 5,462 |
| | % change in annual salary in 2017 | [F] = [E]/[D] | 2.1% |
| [1] | Base salary effective 04/01/2017 | [G] = [D]+[E] | 265,537 |
| [1] | 2018 base salary increase | [H] | 5,045 |
| | % change in annual salary in 2018 | [I] = [H]/[G] | 1.9% |
| [1] | Base salary effective 04/01/18 | [J]=[G]+[H] | 270,582 |
| | Average Percent Change | [K]=average([C],[F],[I]) | 1.7% |
| | **CAGR 11/01/16 - 04/01/18** | **[L]=average([F],[I])** | **2.8%** |

**Calculation of Bonuses in Relation to Base Earnings**

| | | | |
|---|---|---|---|
| [1] | Bonus of 04/01/17 | [M] | 53,273 |
| | Bonus as percent of 2017 base salary | [N]=[M]/[G] | 20.1% |
| [1] | Bonus of 04/01/18 | [O] | 44,343 |
| | Bonus as percent of 2018 base salary | [P]=[O]/[J] | 16.4% |
| | **Average Bonus to Base Salary Percentage** | **[Q]=average([N],[P])** | **18.2%** |

**Calculation of salary, bonus and benefit losses suffered by Dr. Lisa Menninger**

| **For the period** | 06/04/18 - 12/31/18 | 01/01/19 - 12/31/19 | 01/01/20 - 12/20/20 | Total |
|---|---|---|---|---|
| [2] Base salary | $270,582 | $278,269 | $286,175 | $835,026 |
| [3] Bonus | 49,314 | 50,715 | 52,156 | 152,185 |
| [4] Benefit | 23,672 | 24,345 | 25,036 | 73,054 |
| **Total** | 343,568 | 353,329 | 363,368 | 1,060,265 |
| [5] less: mitigation offsets | 304,177 | 85,573 | 29,945 | 419,695 |
| **Total loss, 06/04/18 - 12/20/20** | **$39,391** | **$267,756** | **$333,423** | **$640,570** |

[1] See MENNINGER_SUPP000233-5
[2] Base salary growth year over year, based on average trend for 2017-2018.  See [L] above.
[3] Annual bonus based on average bonus-to-base salary percentage for 2017-2018.  See [Q] above.
[4] Benefit calculation based on Expert Report of Bruce R. Jonas, Exhibit A.
[5] Receipts of Social Security Disability Income payments and long-term disability payments under PPD provided plan.

Confidential – Attorney's Eyes Only

**Analysis of Lost Wages, Bonuses and Fringe Benefits**                                                      **Exhibit 10**
**Lisa Menninger, Plaintiff, v. PPD Development, L.P**

*Exhibit 10 - Determination of risk free rates of return at various maturities based on U.S. Treasury Securities*

| Maturity | 12/31/2020 [1] |
|----------|----------------|
| 1 Yr     | 0.10%          |
| 2 Yr     | 0.13%          |
| 3 Yr     | 0.17%          |
| 4 Yr     | 0.27%          |
| 5 Yr     | 0.36%          |
| 6 Yr     | 0.51%  [2]     |
| 7 Yr     | 0.65%          |
| 8 Yr     | 0.74%          |
| 9 Yr     | 0.84%          |
| 10 Yr    | 0.93%          |
| 11 Yr    | 0.98%          |
| 12 Yr    | 1.03%          |
| 13 Yr    | 1.09%          |
| 14 Yr    | 1.14%          |
| 15 Yr    | 1.19%          |
| 16 Yr    | 1.24%          |
| 20 Yr    | 1.45%          |

[1]   https://www.treasury.gov/resource-center/data-chart-center/interest-rates/pages/TextView.aspx?data=yieldYear&year=2020

[2]   Year 6, 8, 9 and 11 - 16 interpolated for increasing maturity risk premium.