UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA MENNINGER,<br><br>          Plaintiff,<br><br>v.<br><br>PPD DEVELOPMENT, L.P.,<br><br>          Defendant. | Civil Action No.  1:19-CV-11441-LTS |

**MEMORANDUM IN SUPPORT OF DEFENDANT PPD DEVELOPMENT, L.P.'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE SUPPORTING CLAIMS THAT THE COURT DISMISSED ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

By accompanying Motion, Defendant PPD Development, L.P. ("PPD") has moved *in limine* to exclude from the evidence admitted at trial any evidence supporting claims that the Court dismissed in its Order on PPD's Motion for Summary Judgment (ECF Doc. No. 81) (the "Order"). Specifically, in the Order the Court awarded summary judgment to PPD on the following claims asserted by Plaintiff: (1) that PPD failed in its duty to engage in the interactive process; (2) that PPD discriminated against Plaintiff by implementing a plan to remove her from her position and then by terminating her employment in 2019; and (3) that PPD retaliated against Plaintiff for reporting that she had a disability by lowering her performance rating for 2017. In light of the Court's Order, those claims are no longer in the case, and evidence that is relevant only to one or more of those claims must be excluded. In addition, to the extent that evidence relevant to the dismissed claims may be relevant to other issues in the case, the prejudicial effect of such evidence far outweighs whatever probative value it might have, and the evidence should therefore be excluded.

## Background

A. <u>Plaintiff's employment with PPD, her requests for accommodation, and PPD's efforts to engage in the interactive process.</u>

On August 31, 2015, PPD hired Plaintiff as the Executive Director of its Global Central Labs, based in Highland Heights, Kentucky. In April 2017, Plaintiff's supervisor, Hacene Mekerri, told Plaintiff that he wanted her to be more involved than she had been in two important aspects of her job: client meetings and influencing business development. In addition, on December 20, 2017—during a meeting with Plaintiff to discuss her performance and PPD's expectations for 2018—Mr. Mekerri again encouraged Plaintiff to focus on being more involved in client meetings and in various aspects of business development, including increased social interactions and presentations. As part of PPD's annual executive talent assessment, completed on December 20, 2017, Mr. Mekerri rated Plaintiff's performance as "fully effective," but also noted that while her business performance had been "solid," there was a "risk of falling behind due to lack of leadership capability."

On January 11, 2018, Plaintiff sent an email to Mr. Mekerri in which she disclosed, for the first time, that she suffered from "generalized anxiety disorder that includes social anxiety disorder and panic attacks." Mr. Mekerri connected Plaintiff with Chad St. John, an employee in PPD's Human Resources department, who provided Plaintiff with accommodation request forms. On January 31, 2018, Plaintiff's psychiatrist, Dr. Marianna Kessimian, submitted to PPD an accommodation request form noting that "[a]ny change to [Plaintiff's] role that increase the need for public speaking and/or social interactions will increase her anxiety and worsen her somatic symptoms, which would make it substantially more difficult, if not impossible, for [Plaintiff] to perform her job."

On February 6, 2018, Mr. Mekerri emailed Plaintiff and Mr. St. John to describe his specific expectations of Plaintiff with respect to her involvement in client meetings and business development that he had referred to during the December 20, 2017 meeting:

> (1) senior leadership team presentations, Town Hall meetings, and meetings with the Chief Operating Officer and Executive Vice President (bi-weekly, monthly, and/or quarterly), (2) client bid defenses, issue resolution calls, meetings at Highland Heights and/or client meetings in-person (at client site) or via phone (once a month at minimum per client), (3) technical sales presentations (internal and external) (monthly, quarterly, and as-needed), (4) meals and social interactions while at client visits (expected 60-80% of the time to build business relationships), and (5) travel (up to 30%).

On February 14, 2018, Dr. Kessimian sent her requested accommodations to Mr. St. John and Mr. Mekerri:

> For senior leadership team presentations, Town Hall meetings, and meetings with the Chief Operating Officer and Executive Vice President, Dr. Kessimian requested: [Plaintiff will be] "responsible for all slides/handouts/ presentation material with necessary information but will require a reader to present to the group, or can pre-record the audio/video and it can be played at the meeting available for questions via email after the meeting."  For client bid defenses, issue resolution calls, and meetings at Highland Heights, Dr. Kessimian requested: [Plaintiff will be] "available via email/ text/ remote video conferencing for a representative of the client, 1-2 person audience maximum … If it is a site meeting, surrogate or reader with all necessary information / real time access to [Plaintiff] will be available."  For client site meetings, Dr. Kessimian requested: [Plaintiff] "would like a surrogate to attend, but [Plaintiff] will be responsible for all problem solving/ ideas for resolution if emailed/ communicated to [Plaintiff] a few days before anticipated visit."  For technical sales presentations (internal and external), Dr. Kessimian requested: [for Plaintiff to be] "excused from sales presentations but again [Plaintiff] will provide any necessary data information for the reader/ surrogate to have at their disposal."  For meals and social interactions while at client visits, Dr. Kessimian requested: "[a] surrogate, as this is not [Plaintiff's] strength/ skill set and her disability will flare with significant impairment.  [Plaintiff] is able to build business relationship in a more 'behind the scenes' fashion and would like [to] brainstorm other potential avenues where she can add value as

> she does understand this is an important part of the business."
> Finally, for travel, Dr. Kessimian inexplicably requested that
> Plaintiff be allowed to travel to PPD's Belgium laboratory, versus
> its laboratories in the United States (which included the Global
> Central Labs home-base in Highland Heights, Kentucky).

On February 26, 2018, Mr. St. John emailed Plaintiff to let her know that the Company would provide accommodations with respect to two of the five categories. He explained that the other tasks – which constituted sub-categories of specific expectations falling under the umbrella categories of client-facing meetings and sales presentations – were central to Plaintiff's role and critical to the needs of the business. At Mr. Mekerri's request, Mr. St. John scheduled a meeting for February 28, 2018, to discuss Plaintiff's requests and PPD's responses. *See id*. at ¶¶42-43.

After their meeting, Plaintiff emailed Mr. St. John and Mr. Mekerri to thank them for agreeing to provide some of the accommodations that she had requested, and to ask for more information regarding the other categories of tasks for which PPD could not provide accommodations. On March 12, 2018, Mr. St. John explained the reasons why the Company could not provide some of the accommodations Plaintiff sought. He referenced specific tasks falling within the categories of client-facing meetings and sales presentations – i.e., business development meetings, client dinners, and bid defenses – and noted their importance to the business. The Company was open to "brainstorm[ing] other potential avenues where [Plaintiff] could add value" as Dr. Kessimian had suggested, but it was not possible to do away with these core job requirements. Mr. St. John asked Plaintiff to review her job description with Dr. Kessimian to see if there might be other accommodations that would allow her to perform these essential functions.

On March 24, 2018, Plaintiff emailed Mr. St. John, explaining that although "certain types of tasks" were "challenging due to [her] disability," she was "capable of performing all of [her] responsibilities with or without accommodation." Plaintiff noted that she had met with Mr.

Mekerri the week before, and it did not appear that there would be any "activities or events in the near future that would implicate [her] disability" – therefore, she suggested that they "table this discussion until a particular task arises." She further explained that "[d]ealing with these issues in context … might … help us all engage in a more meaningful dialogue."

On April 3, 2018, Mr. St. John assured Plaintiff that the Company was committed to an open dialogue, and that he would continue to review any accommodation requests as she raised them. He asked Plaintiff to let him know if she had any additional accommodation requests. At no time thereafter did Plaintiff ask for any additional or different accommodation(s).

On June 2, 2018, Plaintiff went out on unannounced, unplanned leave (with pay covering the majority of the leave). She remained out of work for the next eight months, at which time PPD needed to find a permanent replacement. Accordingly, the Company terminated Plaintiff's employment effective February 1, 2019.

      B.      <u>Plaintiff's lawsuit, PPD's Motion for Summary Judgment, and the Court's Order on PPD's Motion.</u>

On June 28, 2019, Plaintiff initiated this action by filing her Complaint and Demand for Jury Trial. *See* ECF Doc. No. 1. In her Complaint, Plaintiff alleges that PPD violated the Americans with Disabilities Act (the "ADA") and Chapter 151B of the Massachusetts General Laws ("Chapter 151B") by failing to engage in an interactive process to identify reasonable accommodations of her disability, by discriminating against her on the basis of her disability, and by retaliating against her for reporting to PPD that she had a disability. *See* Complaint (ECF Doc. No. 1) at ¶¶ 16-71. On March 24, 2021, PPD filed a Motion for Summary Judgment. *See* ECF Doc. No. 43. In her Opposition to PPD's Motion, Plaintiff argued that a jury could find (1) that PPD had failed to engage in the interactive process, (2) that PPD had discriminated against her by implementing a "deliberate plan" to remove her from her position, and (3) that PPD had

retaliated against Plaintiff for seeking accommodations by lowering her performance rating for 2017. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (ECF Doc. No. 65) at 12-14, 17, 19-20. In support of the interactive process and "deliberate plan" claims, Plaintiff pointed to "internal communications" that she claimed show that PPD had "no intention" engaging her in a good faith interactive process and instead was trying to "coerce [her] to quit." *See id.* at 13-14, 19-20.

On March 22, 2022, the Court issued its Order on PPD's Motion for Summary Judgment. *See* ECF Doc. No. 81 (the "Order"). In the Order, the Court rejected all three of those arguments and awarded summary judgment to PPD on Plaintiff's claims that the Company had failed in its obligation to engage in the interactive process, that PPD had discriminated against Plaintiff by implementing a plan to remove her from her position, and that PPD had retaliated against Plaintiff by lowering her 2017 performance rating immediately after she informed PPD of her disability. *See* Order at 12-13, 15-16, & 17. In particular, with respect to Plaintiff's interactive process claim, the Court held that "[n]o reasonable jury could conclude that PPD failed to engage in the interactive process." *See id.* at 13. Similarly, in ruling on Plaintiff's disability discrimination claim, the Court held that "no reasonably jury could find" that the internal communications Plaintiff relied on as "allegedly showing that PPD was trying to force her out affected the terms and conditions of her employment," and thus qualified as an adverse action. See *id.* at 15. The Court further held that a reasonable jury could not find that PPD's termination of Plaintiff's employment, "nearly eight months after she took a medical leave, and where she showed 'no sign of intending to return to work,' . . . was discharge under the pretext of performance issues." *See id.*

Finally, in ruling on Plaintiff's retaliation claim, the Court held that PPD had completed its 2017 performance rating of Plaintiff before she informed anyone at PPD of her medical condition. *See* Order at 17. Thus, the Court held that even if the 2017 performance rating was an adverse action, Plaintiff "is unable to demonstrate that there was a causal connection between her protected conduct and this allegedly adverse action." *See id.*

## Argument

In the Order, the Court correctly held based on the undisputed material facts that that no reasonable jury could find for Plaintiff on her claims against PPD for failure to engage in the interactive process, for discriminating against her by implementing a "deliberate plan" to remove her and ultimately terminating her employment, and for retaliating against her by issuing a lower rating of her 2017 performance, and it therefore awarded summary judgment to PPD on all of those claims. *See* Order at 12-13, 15-17. Accordingly, evidence offered by Plaintiff that is relevant only to suggest that PPD failed to engage in the interactive process, that it discriminated against her by implementing a plan to remove her or by terminating her employment, or that it retaliated against her via the 2017 performance rating is irrelevant to any issue properly before the jury, and is therefore inadmissible at trial. *See* Order at 12-13; Fed. R. Evid. 401; *see, e.g.*, *Haagensen v. Pennsylvania State Police*, Civil Action No. 08-727, 2010 WL 3852371, at *2 (W.D. Pa. Sept. 27, 2010) (granting defendants' motion *in limine* to exclude evidence relating to claims that the court had dismissed); *Ramirez v. United Parcel Serv.*, No. 06-1042, 2010 WL 1994800, at *1-2 (D.N.J. May 17, 2010) (granting defendant's motion *in limine* to prevent plaintiff from introducing evidence regarding previously dismissed claims); *Dawn L. v. Greater Johnstown Sch. Dist.*, Civil Action No. 3:06-19, 2008 WL 2620170, at *6 (W.D. Pa. July 2, 2008) (holding that evidence relevant only to plaintiff's dismissed First Amendment claims was inadmissible); *see also Boyer v. City of Philadelphia*, No. CV 13-6495, 2019 WL 920200, at

*10-11 (E.D. Pa. Feb. 25, 2019 (excluding testimony that was "not relevant to either of plaintiff's remaining claims"); *Asanjarani v. City of N.Y.*, No. 09 Civ. 7493(JCF), 2011 WL 6811027, at *1 (S.D.N.Y. Dec. 27, 2011) (observing that "evidence relating exclusively to claims previously dismissed is generally inadmissible"). In particular, any argument or suggestion by Plaintiff's counsel that PPD failed in its obligation to engage in the interactive process, discriminated against Plaintiff by terminating her employment, or retaliated against her via the 2017 performance review is improper and should be precluded. *See, e.g.*, *Asanjarani*, 2011 WL 6811027, at *1 (holding that because the court had ruled on defendant's motion for summary judgment that plaintiff's demotion was not motivated by discrimination, "at trial, the plaintiff may not suggest that his demotion was the product of discrimination").

Likewise, the internal PPD communications that Plaintiff relied on for its argument at the summary judgment stage that PPD did not intend to engage in the interactive process and had implemented a "deliberate plan" to remove Plaintiff from her position with the Company is clearly inadmissible with respect to Plaintiff's interactive process and disability discrimination claims. *See, e.g.*, *Asanjarani*, 2011 WL 6811027, at *2 (holding that because the court had held on defendant's motion for summary judgment that a letter warning plaintiff that he was at risk of being laid off did not constitute a constructive discharge and was not motivated by discrimination, evidence concerning the letter "is irrelevant and will not be admitted"). To the extent that those communications may be relevant to one or more of Plaintiff's other claims, moreover, they should be excluded from the evidence because whatever probative value they might have on those issues is substantially outweighed by the danger of unfair prejudice and confusion of the issues. *See* Fed. R. Evid. 403. An extended evidentiary presentation consisting of communications among PPD employees about Plaintiff's potential departure from the

Company, which the Court has held did not constitute an adverse employment action or a failure to accommodate, would fundamentally distract from the issues to be tried. Such evidence could also confuse the jury into believing that the internal communications are somehow relevant to whether PPD failed to reasonably accommodate Plaintiff's disability or discriminated against her on the basis of her disability. Accordingly, because the evidence has no probative value but, if admitted, would cause unfair prejudice to PPD and confuse the jury, it should be excluded.

## Conclusion

For all of the foregoing reasons, PPD respectfully requests that the Court issue an order granting this Motion, and excluding from the evidence to be admitted a trial any evidence supporting those of Plaintiff's claims that the Court dismissed in its Order on PPD's Motion for Summary Judgment; i.e., (1) that PPD failed in its duty to engage in the interactive process (2) that PPD discriminated against Plaintiff by implementing a plan to remove her from her position and then by terminating her employment in 2019, and (3) that PPD retaliated against Plaintiff for reporting that she had a disability by lowering her performance rating for 2017.

    PPD DEVELOPMENT, L.P.

    By its attorneys,

    */s/ Patrick M. Curran, Jr.*
    Rachel Reingold Mandel (BBO #660495)
    Patrick M. Curran, Jr. (BBO #659322)
    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
    One Boston Place, Suite 3500
    Boston, MA 02108
    Telephone: (617) 994-5700
    Facsimile:  (617) 994-5701
    rachel.mandel@ogletree.com
    patrick.curran@ogletree.com

Dated: March 10, 2023

## CERTIFICATE OF SERVICE

      I hereby certify that on March 10, 2023 the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                    */s/ Patrick M. Curran, Jr.*
                                    Patrick M. Curran, Jr.

23370737.1