UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA MENNINGER,<br><br>    Plaintiff,<br><br>    v.<br><br>PPD DEVELOPMENT, L.P.,<br><br>    Defendant. | Civil Action No: 1:19-CV-11441-LTS |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE DEFENDANT'S USE OF "VOLUNTARY SELF-IDENTIFICATION OF DISABILITY" FORM**

Defendant should be precluded from using Dr. Menninger's response to the "Voluntary Self-Identification of Disability" form[1] that Defendant sent her in 2015 at the time of her hire as evidence against her at trial. As set forth below, federal law prohibits Defendant from using the form in this manner, its contents are not relevant to this dispute and, in any event, the admission of this document into evidence would be confusing to the jury and unduly prejudicial to Dr. Menninger.

**I.      Federal Regulations Bar the Use of the Form in this Way.**

Federal regulations bar the use of this form in such a way because the form "may be used **only in accordance with this Part.**" 41. C.F.R. § 60-741.42(e) (emphasis added). The "Part" is Part 60-741 of the regulations of the Department of Labor, which requires government contractors to "take affirmative action to employ . . . qualified individuals with disabilities." see 41 C.F.R. § 60-741.1(a). The exclusivity language of § 60-741.42(e) bars PPD from using the form for any

---

[1] See **Exhibit 1** hereto (PPD_MENNINGER 000414-417).

other purpose beyond the scope of the Part. To oppose a disabled employee's claims at trial is a purpose outside that scope. Indeed, these same regulations emphasize that the employer must comply with its obligations to employees with known disabilities regardless of what might occur relative to the voluntary form:

> Nothing in this section shall relieve the contractor of its obligation to take affirmative action with respect to those applicants or employees of whose disability the contractor has knowledge.

41 C.F.R. § 60-741.42(f). PPD's attempt to achieve relief from its obligations is barred by subsection (f).

The regulations have exclusivity language because purpose of the form is <u>solely</u> to generate statistics to be used for government contractors' affirmative action efforts. <u>See</u> Section 503 Regulations Frequently Asked Questions, U.S. Dep't of Labor, Office of Federal Contract Compliance Programs (hereinafter "DOL FAQ") (Question 7) https://www.dol.gov/agencies/ofccp/faqs/section-503#Q9 ("OFCCP added this requirement so that contractors can track the number of individuals with disabilities who apply for jobs and use this information to assess the effectiveness of their outreach and recruitment efforts.").

Defendant's intended use of Dr. Menninger's response to this form as evidence that she was not disabled is not only barred by federal regulations as just described, but is a twisted perversion of the form's exclusive *affirmative action* purposes. In fact, the Department of Labor requires federal contractors to send new invitations to voluntarily disclose disability status to employees every five years, precisely because it recognizes that many employees do not feel comfortable self-identifying as disabled during hiring or early in their employment:

> Through the invitation and reminder to employees to self-identify, contractors can capture data on employees who become disabled while employed, **as well as those with existing disabilities who may feel more comfortable self-identifying once they have been employed for some time**.

DOL FAQ, supra n. 2, at Question 9 (emphasis added); see 41 C.F.R. § 60-742.42(c). Further, both the federal regulations and the text of the form itself emphasize that it is entirely voluntary. See 41 C.F.R. § 60-741.42(d) ("The contractor may not compel or coerce an individual to self-identify as an individual with a disability.").

As the facts of this case illustrate, employees who disclose their disability to their employers do so at a risk of discriminatory treatment and retaliation, which can cost them their jobs or even their careers. The government has recognized those realities by ensuring that completion of these forms is strictly voluntary. This Court should not permit PPD to use a voluntary disclosure of disability form for a purpose diametrically opposed to the exclusive purpose for which it may be used.

## II.     The Form is Not Relevant

Independently of the above, the "Voluntary Self-Identification of Disability" form should be excluded under Fed. R. Evid. 401 because it is not relevant, that is, it does not have any "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Specifically, the form does not make it any more or less probable that Dr. Menninger qualifies as "disabled" under the applicable definitions of disability and handicap under the Americans with Disabilities Act and Mass. Gen. Laws, Chapter 151B.

That is because the test for whether an employee is "disabled" or "handicapped" under both federal and Massachusetts law is objective. The sole inquiry (for claims of actual disability, as opposed to "regarded as" or "record of" claims) is whether the employee had an impairment that substantially limited one or more of her major life activities. 29 C.F.R. § 1630.2(g)(1)(i); see generally MCAD Guidelines, Employment Discrimination on the Basis of Handicap (and sources cited), https://www.mass.gov/doc/mcad-guidelines-on-disability-discrimination-in-employment/download. The fact that an employee previously indicated she did not have a

disability does not have any bearing on whether, objectively, she had an "impairment" that "substantially limited" one or more of her "major life activities." Further, to the extent Defendant seeks to attack Dr. Menninger's credibility with this form, the logic of that approach fails because Dr. Menninger was not under any obligation to answer the form in any particular way, or at all.

To emphasize, the definitions of "disabled" and "handicapped" are extremely broad under the ADA and Chapter 151B. Congress specifically amended the ADA in 2008 to broaden the definitions of disability, to disapprove of and reverse prior Supreme Court precedent that had construed the definition of "disabled" narrowly, and to ensure that the "primary object of attention in cases brought under the ADA" would be "**whether entities covered under the ADA have complied with their obligations**," not whether the employee qualified as "disabled." See ADA Amendments Act of 2008 § 2(b)(5), Pub. L. No. 110–325, 122 Stat. 3553 (September 25, 2008); see also Mancini v. City of Providence by & through Lombardi, 909 F.3d 32, 40 (1st Cir. 2018). That the employee self-identified as not disabled on some past occasion has no bearing on the objective inquiry called for by the statutes.[2]

### III.     The Exhibit Should be Excluded Under Fed. R. Evid. 403.

Further, Defendant should be barred from using the form pursuant to Fed. R. Evid. 403 because any probative value the form conceivably could have (it has none) is vastly outweighed by the dangers of confusion to the jury and undue prejudice.

If PPD is allowed to offer the form against Dr. Menninger the jury will be confused as to what its proper inquiry is when determining if Dr. Menninger was "disabled" or "handicapped." There is a substantial likelihood that in such an event the jury would introduce improper

---

[2] Moreover, as noted below the fact that the definition of disability is so broad would tend to explain why many reasonable employees throughout the United States may answer "no" on this form despite actually qualifying as disabled.

4

considerations of consistency or credibility into its analysis that would effectively heighten the bar for how an employee qualifies as disabled. This would be contrary to the emphatically broad definitions of disability that Congress and the Massachusetts Legislature have authorized. The jury might also incorrectly believe that Dr. Menninger's response on the form somehow absolves Defendant of its obligation to accommodate Dr. Menninger's disability when she subsequently disclosed it.

Finally, this Court must consider the drastic implications to public policy of allowing PPD's intended use of this form at trial. Many thousands of employees and persons applying for employment across the United States fill out these "voluntary self-identification of disability" forms every year, and large numbers of such persons with disabilities indicate that they do <u>not</u> have a disability on such forms even though they do, in fact, have impairments that substantially limit major life activities as those terms are defined under the <u>extremely broad</u> definitions of the ADAAA. As a study funded by the Department of Labor has noted,[3] employees may have any number of reasons for not disclosing their disabilities—many do not want to risk facing discrimination or retaliation; many do not wish to be perceived as disabled; others feel that the disability has no impact on their job; others simply act out of desire for privacy.

Defendant's position would imply that employees filling out these forms, far from doing so free from any threat of adverse consequences, actually do so under the pains and penalties of, essentially, **declaring themselves outside the protection of the disability discrimination laws** if they answer the form "incorrectly," even though the form says the answer will not be used against them "in any way." If an employee's answer to the form can be used to remove her from the protection of the law, that would mean employees and job applicants across the nation should

---

[3] E.A.R.N., "Engaging Employees to Measure Success: Innovative Approaches to Encouraging Self-Identification of Disability," https://www.nasa.gov/sites/default/files/atoms/files/encouraging-self-id-of-disability_tagged.pdf

urgently be advised to stop answering the form. This would of course undermine the Department of Labor's goal of collecting statistics for affirmative action purposes. For all of these reasons Defendant's intended use of this form is not consistent with the ADA or Chapter 151B and is offensive to the basic interests of fairness and justice.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that this Motion be allowed.

Respectfully submitted,
Lisa Menninger,
By her attorneys,


/s/   Hampton M. Watson
Patrick J. Hannon (BBO #664958)
Hampton M. Watson (BBO #705983)
Hartley Michon Robb, LLP
155 Seaport Boulevard, 2nd Floor
Boston, MA 02210
phannon@hmrhlaw.com
hwatson@hmrhlaw.com
(617) 723-8000
Attorneys for Plaintiff Lisa Menninger

Date: March 10, 2023

## CERTIFICATE OF SERVICE

I, Hampton M. Watson, certify that on March 10, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Defendant by electronically serving its counsel of record.

/s/ *Hampton M. Watson*
Hampton M. Watson
