UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA MENNINGER, | |
| Plaintiff, | |
| v. | Civil Action No: 1:19-cv-11441-LTS |
| PPD DEVELOPMENT, L.P., | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER
MOTION *IN LIMINE* PURSUANT TO FED. R. CIV. P. 37(C)(1) TO PRECLUDE
DEFENDANT'S MEDICAL EXPERT FROM TESTIFYING ON MATTERS NOT
<u>DISCLOSED IN ORIGINAL EXPERT REPORT</u>**

Defendant's medical expert, Dr. Martin J. Kelly, M.D., first produced an expert report on December 21, 2020 ("Original Report") (**<u>Exhibit 1</u>** hereto). On February 9, 2023, Dr. Kelly produced a supplemental expert report ("Supplemental Report") (**<u>Exhibit 2</u>** hereto) that indicates he is improperly seeking to offer <u>new</u> opinions about Dr. Menninger during the time period covered by his Original Report—that is, prior to December 21, 2020—that he did not disclose in his Original Report. These improper new opinions violate the requirement in Fed. R. Civ. P. 26(a)(2)(B)(i) for expert reports to contain "a <u>complete</u> statement of <u>all</u> opinions the witness will express and the basis and reasons for them" (emphasis added). Rule 37(c)(1) requires that such new opinions by Dr. Kelly not properly disclosed in his Original Report, in derogation of Rule 26(a), be excluded from the trial.

**I.      <u>Background.</u>**

Dr. Kelly's produced his Original Report on December 21, 2020. In advance of that report he was provided with hundreds of pages of Dr. Menninger's medical records stretching back years, including records of Dr. Menninger's treatment for Social Anxiety Disorder dating back as early

as 2011, and extensive treatment records by Dr. Menninger's health care providers from January 2018 through the latter part of 2020. Original Report at 1. He was also provided with the expert report of Dr. Menninger's medical expert; various other documents produced during discovery in this matter; and "various legal documents including answers to interrogatories." Id. Dr. Kelly also conducted a psychiatric interview of Dr. Menninger on December 9, 2020. Id.

The Original Report discloses essentially three opinions: (i) that "it is unlikely" that Dr. Menninger has Social Anxiety Disorder; (ii) that Dr. Menninger did not develop Major Depressive Disorder; and (iii) that Dr. Menninger "does not have or has had any mental disease or disorder that would prevent her from functioning at the levels that she had in the past, if she were motivated to do so." Original Report at 5–6.

In Dr. Kelly's Supplemental Report dated February 9, 2023, he offers new opinions that go well beyond the scope of his Original Report. For example, Dr. Kelly newly discloses the following opinion that Dr. Menninger in fact has been "controlling" her medical providers and treatment the entire time since "**the beginning in 2017**" (emphasis added):

> Overall, in my opinion, the pattern from the beginning in 2017 to the present reflects she is very much in control of her presentation and does not appreciate the larger psychosocial and realistic perspectives of others, including the company. Though she has the capacity for concrete appreciation of circumstances, it is at the expense of a broader social context. She controls and dictates many of the elements seen in the case, albeit quietly. In effect, she often convinces providers to adopt her views about her diagnoses, medication regime and other parameters. Her prescribers regularly follow her directives about the frequency, increases/decreases, resumptions and discontinuation of medications. In effect, she is controlling the treatment, including psychopharmacology and other parameters. The records show that she has been on essentially the same antianxiety and antidepressant medication regime despite any obvious significant benefit. Ordinarily this would occasion mental health providers to change the medications, and/or consider alternative non-medication treatment strategies; also reconsidering the diagnoses.

Supplemental Report at 2. This opinion is nowhere to be found in Dr. Kelly's Original Report. It goes well beyond the scope of the Original Report's analysis of Dr. Menninger's claimed

impairments and ability to work, and veers into uncharted personal judgments attacking Dr. Menninger's integrity and veracity. Again, to emphasize, the Original Report was dated December 21, 2020, yet the above opinion offers new views about the entire period dating to what Dr. Kelly calls "the beginning in 2017."[1]

Many of Dr. Kelly's observations are also vague and ambiguous. For example, Dr. Kelly does not say what he means by "dictates many of the elements seen in the case."[2] To the extent this means something to the effect that Dr. Menninger is malingering, that is a profound departure from the Original Report, which conceded that Dr. Menninger was sincerely "shocked, surprised and very distressed" about PPD's failure to extend her reasonable accommodations, and did not dispute that Dr. Menninger at least had some "anxiety states" in certain situations even if Dr. Kelly's view was that it was "unlikely" her anxiety rose to the level of Social Anxiety Disorder. Original Report at 5–6. Further, Dr. Kelly testified at his February 10, 2021 deposition that he did not believe Dr. Menninger was "faking it." **Exhibit 3** hereto, Kelly Depo. 45:10–14.

Dr. Kelly's new opinions consequently present a serious risk of unfair surprise and improper advancing of new and previously undisclosed theories at trial.

## II.    Rule 37(c)(1) Requires Exclusion of Any New Opinions by Dr. Kelly Not Disclosed in His Original Report that Pertain to the Time Period of His Original Report.

Expert reports must set out "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added). "The purpose of a 'detailed and complete' expert report as contemplated by Rule 26(a), Fed. R. Civ. P. 26

---

[1] This is an odd phrase. Dr. Menninger's Social Anxiety Disorder has been a lifelong condition and Dr. Kelly reviewed records of her treatment dating well before 2017.

[2] Similarly, it is not clear what Dr. Kelly means by the "psychosocial and realistic perspectives of others, including the company." Companies do not have psychosocial perspectives.

advisory committee's note [to 1993 amendments], is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial." Ortiz-Lopez v. Sociedad Española de Auxílio Mutuo Y Beneficiéncia de Puerto Rico, 248 F.3d 29, 35 (1st Cir. 2001). Rule 26(a) seeks "to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent." Poulis-Minott v. Smith, 388 F.3d 354, 358 (1st Cir. 2004) (quotation omitted). Rule 37(c)(1), meanwhile, is intended to provide an incentive for this full disclosure by putting "teeth" into Rule 26(a). Ortiz-Lopez, 248 F.3d at 35. Exclusion under Rule 37(c)(1) in these circumstances is "self executing" and is an "automatic sanction." LaMarca v. United States, 31 F. Supp. 2d 110, 122 (E.D.N.Y. 1998).

Expert testimony cannot be used to offer new theories at trial that were not previously disclosed. Macaulay v. Anas, 321 F.3d 45, 52 (1st Cir. 2003) (District Court properly precluded expert testimony that introduced new theory of liability only disclosed very shortly before trial); see also Means v. Letcher, 51 F. App'x 281, 283 (10th Cir. 2002) (finding "obvious violation of Rule 26" where expert, whose expert report discussed patient's diagnoses, later testified at trial extensively about the treatment of the patient by her provider, a topic not covered by his report).

To be sure, Rule 26(e) permits and indeed sometimes requires supplementation of prior disclosures. However, as the District of Colorado has observed, while it is proper to offer supplementations "based on information that was not available at the time of the initial disclosure," supplemental reports are not an opportunity to introduce new opinions or rationales that could previously have been disclosed, as that would fundamentally undermine Rule 26(a):

> A supplemental expert report that states additional opinions or rationales or seeks to "strengthen" or "deepen" opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c). Beller, 221 F.R.D. at 695; see Keener, 181 F.R.D. at 641–42; Minebea Co., Ltd. v. Papst, 231 F.R.D. 3, 6 (D.D.C.2005). "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary

reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given." Beller, 221 F.R.D. at 695. This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a).

Cook v. Rockwell Int'l Corp., 580 F. Supp. 2d 1071, 1169 (D. Colo. 2006).

Here, Dr. Kelly's should be precluded from offering any new opinions about Dr. Menninger and her psychiatric condition and treatment, covering the time period of his Original Report, that were not properly disclosed in his Original Report. Dr. Kelly's new views, including those quoted above, pose a serious risk of unfair surprise at trial. That is particularly the case to the extent Dr. Kelly (1) previously merely disagreed with Dr. Menninger's health care providers and medical expert about her diagnoses, but (2) now purports to believe that Dr. Menninger is (a) "controlling" her treatment and care and somehow overpowering the will, independent judgment, and expertise of her health care providers and further, that Dr. Menninger somehow is (b) "dictat[ing] many of the elements seen in the case." Plaintiff does not even know what the latter phrase means, which underscores the heightened danger of unfair surprise at trial. The Federal Rules, including Rule 26(a), are intended to "make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." Thibault v. Square D Co., 960 F.2d 239, 244 (1st Cir. 1992). To allow Dr. Kelly to give new opinions about the time period covered by his Original Report would be to allow Defendant unfairly to introduce new theories at trial which have not been properly disclosed or examined in expert discovery.

To be clear, exclusion under Rule 37(c)(1) is both the automatic remedy and the proper remedy. Defendant has abused the requirements of Rule 26(a) by treating Dr. Kelly's supplemental report as an opportunity to add new opinions and views that could previously have been expressed. See Cook, 580 F. Supp. 2d at 1169. The Court should not reward Defendant's abuse of Rule 26(a)

by forcing Dr. Menninger to incur expense or delay—rather, the automatic remedy of exclusion under Rule 37(c)(1) is both appropriate and just.

Plaintiff does not object to Dr. Kelly testifying about views disclosed in his Supplemental Report that are legitimately based on new evidence that was provided to him after the date of his Original Report. Pursuant to Rule 37(c)(1), however, Dr. Kelly must be precluded from offering any new views about the time period addressed by his Original Report that he did not disclose in his Original Report. He was required to disclose "all" such opinions in the Original Report.

## CONCLUSION

Accordingly, Plaintiff respectfully requests that this Motion be allowed.

Respectfully submitted,

/s/ Hampton M. Watson
Patrick J. Hannon (BBO #664958)
Hampton M. Watson (BBO #705983)
Hartley Michon Robb Hannon LLP
155 Seaport Boulevard, 2nd Floor
Boston, MA 02210
phannon@hmrhlaw.com
hwatson@hmrhlaw.com
P: (617) 723-8000
Attorneys for Plaintiff

Date: March 10, 2023

## CERTIFICATE OF SERVICE

I, Hampton M. Watson, certify that on March 10, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Defendant by electronically serving its counsel of record.

/s/ Hampton M. Watson
Hampton M. Watson

6