# EXHIBIT 1





**Martin J. Kelly, M.D.**
ASSOCIATE PROFESSOR OF PSYCHIATRY

HARVARD MEDICAL
SCHOOL

BRIGHAM AND
WOMEN'S HOSPITAL

December 21, 2020

Rachel Reingold Mandel, Esq
Alex Shaw, Esq
Ogletree, Deakins, Nash, Smoak, & Stewart
1 Boston Place, Suite 3500
Boston, MA 02108

RE:  Lisa Menninger v.  PPD Development, L.P.

Dear Attorneys Mandel and Shaw:

At your request I have conducted a psychiatric consultation concerning Dr.  Lisa
Menninger and that she suffers from certain psychiatric conditions as a result of the
actions of her employer, PPD Development, LP, including failure to provide
reasonable accommodation for Social Anxiety Disorder and as a consequence Major
Depressive Disorder.

The consultation has included extended psychiatric interview on December 9 of Dr.
Menninger conducted via Zoom as well as a review of the following documents:

1.  The deposition of Lisa Menninger dated March 5, 2020.
2.  Expert report of Paul Summergrad, MD--October 22, 2020.
3.  Review of records of Marianna Kessimian M.D.
4.  Review of the records of Dr. Alicia Burbano.
5.  Review of Lisa Menninger's Accommodation Requirements of PPD.
6.  Review of the records of Dr. Michael Everson.
7.  Review of various legal documents including answers to interrogatories.
8.  Review of PPD statement and exhibits.
9.  Review of the Social Security Administration application by Lisa Menninger.
10.  Review of documents from Unum Insurance Company.
11. Job Description Executive Director of Global Laboratories, PPD

Lisa Menninger is a 52-year-old (DOB: 08/27/68) married pathologist who is suing a
former employer, PPD Development, claiming that she was illegally denied
reasonable accommodations for a mental health condition, specifically Social Anxiety
Disorder (Social Phobia).  She presented a report from a psychiatrist specifying the
required accommodations in late January 2018. After consideration by the vice
president of the company to whom she reported and human resources at the company,

RE:  Lisa Menninger v.  PPD Development, L.P.
December 21, 2020
Page 2 of 7

determined that though they could accommodate some of the requirements, several others were incompatible with essential duties of her position. [See Job Description above]

In late February 2018 she was offered a severance package or continuing for a time as a temporary consultant. She declined to accept these offers. For the next several months, she continued to work remotely from Massachusetts for the Kentucky based company. In June 2018, she asserts that she developed a Major Depressive Disorder and went out on medical disability. Both conditions are subjects of her litigation against the company.

## BACKGROUND

Lisa Menninger M.D. is a pathologist who was hired by commercial medical laboratory, PPD Development L.P. (PPD), headquartered in Highland Heights, Kentucky as Executive Director of Global Central Labs in the late summer 2015.  In addition to the headquarters facility in Kentucky, she was also to be responsible for laboratories in Belgium, China and Singapore. At the time she was hired she did not disclose any potentially disabling conditions and did not mention any mental health conditions that might interfere with her ability to perform her responsibilities.

In mid -2016-2017, after about 18 months working on the job in Kentucky, she became concerned about her daughter's treatment at a local school and began discussions about the possibility of working remotely with Hacene Mekerri (Hacene), the vice president to whom she reported. He was open to considering the option as she pursued alternative schooling for her daughter.

In early 2017, she found a private school in Providence RI for her daughter and in the summer of 2017, bought a house on Providence/Massachusetts border.  Throughout that fall she mostly worked remotely, though on two occasions briefly returned to Kentucky, the company headquarters, staying a few days for meetings contractually required by customers of the company. These meeting were without incident or problems by her. She also apparently had an uneventful visit in December to the laboratory in Belgium for a similarly contractual meeting.

In mid-December, Hacene was conducting her review by telephone and had solicited input from people with whom she worked in company. The input was mostly positive though certain questions and company plans going forward were discussed.

After the telephone conversation with Hacene in mid-December, Dr. Menninger began investigating the concept of accommodations for psychiatric conditions. She concluded that she had Social Anxiety Disorder/Social Phobia and that she was entitled to disability accommodations.

In early January she had hired a lawyer and had several conversations via telephone with Hacene that she secretly recorded. For the first time, possible accommodations

RE:  Lisa Menninger v.  PPD Development, L.P.
December 21, 2020
Page 3 of 7

by the company for anxiety were raised. On January 22, 2018, she consulted a psychiatrist in Providence, Dr. Marianna Kessimian. On this first visit, a highly specified accommodation plan was formulated and sent by Dr. Kessimian to PPD on January 30.

By February 2nd, an in-person meeting had been scheduled for February 28th in Kentucky with Hacene and human resource officials of the company to discuss the accommodations she and her doctor felt were necessary.

At that meeting, she was informed that though they could accommodate some of her requests, other requests were essentially incompatible with the leadership duties as Executive Director of the Global Laboratories. Her requirements in effect included that she not be required to attend face-to-face meetings with laboratory staff, clients/customers or technical sales presentations   and only provide her input remotely via emails, telephone availability or through "surrogates" or "readers". They offered her an exit financial package or a possible role as a temporary consultant.  She refused the offers and requested that they continue to discuss her continuing in her position. She was very upset, surprised and tearful at their decision.

She was continued to work remotely for the next several months. In June she went on psychiatric disability which continued until at least February 2019 when her employment ended. She continued to live in the Providence area and to see Dr. Kessimian through December 2018, when she relocated to New Mexico. In March 2019 she began seeing a psychiatrist in New Mexico and had nine visits either directly or virtually until July 31, 2020. A variety of medications were prescribed by both doctors without any significant decrease in her complaints. In the spring 2020 she moved to Oregon where members of her family live.

Available personal history available in the records reviewed included her educational background.  She received undergraduate education at five different colleges and eventually went to medical school at Saba University School of Medicine on Saba Island in the Caribbean. After completing medical school, she worked as a pathologist initially in a hospital health system and later at an independent clinical lab.  She is married and has a daughter who is now approximately 12. It appears that her husband had not been gainfully employed for several years and has been primarily involved in childcare and supporting their daughter.

She had seen a psychiatrist in April 2011 who diagnosed GAD [Generalized Anxiety Disorder] and Social Anxiety and prescribed Valium as needed for public speaking situations. There was a brief (18 minute) follow-up in November 2012, 18  months later. Her third and last visit was in July 2015.

At that visit he noted "*she has been using the Valium PRN [as needed]. She has a lot of stress at work. She will move for a new job. She has been off the Celexa about one year or more. She does not use the Valium much - except for presentations*". He did

RE: Lisa Menninger v. PPD Development, L.P.
December 21, 2020
Page 4 of 7

not suggest or recommend any workplace accommodations.

She officially began at PPD on August 31, 2015. There is no evidence in the records reviewed that at any point earlier in her life in undergraduate education, medical school, residency or prior employment that she required any substantial accommodations for a psychiatric disability.

**Psychiatric interview:**

The interview was conducted via Zoom and lasted approximately two hours and 20 minutes. It began with a review of the circumstances and conditions of the evaluation. Dr. Menninger was informed that it was an independent medical evaluation taking place at the request of attorneys for her former employer she was suing. She was also informed that no doctor-patient relationship existed between us and thus no confidentiality or privilege covered our discussion and that elements might come out in reports, depositions, or trial testimony should that occur. It was mentioned that if there were any areas that she did not wish to talk about or that her attorney had advised her not to discuss, they would be respected. In my opinion she had a reasonable understanding of the nature of the psychiatric interview prior to participating.

She appeared somewhat older than her stated age and was dressed in very casual clothing - a fleece over a plain T-shirt. Her graying hair was roughly pulled back away from her face. She was encouraged to provide her history in a narrative fashion rather than in the style of a deposition or interrogation which for the most part she did. She tended to be overinclusive of details and related them in a rather flat and matter-of-fact tone. There was a very limited range of motion displayed during the interview. There was no observable evidence of anxiety nor did she complain of it during the session. The overall sense was one of discouragement and resignation about her current situation.

Her formal cognitive functions were intact including an above average intelligence, good fund of information, excellent memory for historical details and good capacity for attention and concentration. Her capacity to sequence her thoughts and logically follow cognitive trends was intact. She displayed no evidence of bizarre or unusual ideas or hallucinations or delusions. There was, however, a tendency towards somewhat concrete thinking and a difficulty with insight and the capacity to see broader perspectives and to see the viewpoints of others.

RE:  Lisa Menninger v.  PPD Development, L.P.
December 21, 2020
Page 5 of 7

## OPINION:

Dr. Menninger is claiming that she suffers from a significant psychiatric disorder, specifically Social Anxiety Disorder/Social Phobia and in addition also a Major Depressive Disorder.  She asserts that she developed the Major Depressive Disorder several months after the company informed her that the accommodations she said she now required were incompatible with the leadership position of Executive Director of laboratories.  It appears that she is now claiming that she is totally and permanently disabled because of the inappropriate and compensable decisions of the company.

These two conditions will be addressed separately.

### Social Anxiety Disorder (Social Phobia):

Social Anxiety Disorder (Social Phobia) is a recognized mental health disorder. However, it is important to note throughout Lisa Menninger's educational and professional career there has been no evidence that this disorder *substantially* limited any of her major life activities including her functioning as student, employee or medical professional.  Rather, her claim arises under the circumstance of a discussion her professional activities with the company vice president to whom she reported a few months after she started working remotely in Massachusetts for the Kentucky based company.

The accommodation issue has originated from her own research into anxiety disorders in December 2017. Subsequently she hired a lawyer and began secretly recording telephone conversations with her boss. The accommodation requirements were generated after a single appointment with a psychiatrist and promptly sent to the company in late January 2018.

It is my view that it is unlikely that she has Social Anxiety Disorder (Social Phobia). Significantly, though she may have had some anxiety states in certain speaking presentations as many individuals do, they did not rise to the level that qualifies for this specific psychiatric diagnosis, namely a *substantial disturbance in a major area of life activities, e.g. work.*  Notwithstanding, even if one were to accept that she did have a Social Anxiety Disorder, it never generated a request for, or required, any accommodations prior to 2018. Notably, she did not claim that she had any problem with the essential job functions at PPD prior to January 2018, two and a half years after she was hired.

Also, her emotion distress/symptoms after February 2018 are not those Social Anxiety Disorder (Social Phobia) for which she wanted accommodations.

RE: Lisa Menninger v. PPD Development, L.P.
December 21, 2020
Page 6 of 7

**Major Depressive Disorder:**

With regard to the claim of Major Depressive Disorder, it is my view that that diagnosis also is not warranted. Though it is very clear that she was very surprised, depressed and distressed by the company's personnel decision with regard to accommodations, this is quite understandable and obviously in reaction to their assessment that the accommodations she required were incompatible with the position of Executive Director of Global Central Labs at PPD.

The term Major Depressive Disorder can be confusing. The term "Major" is *not for the magnitude* of the individual's self-perceived distress to a life event but rather the diagnostic term generally reserved for a discrete biologically based psychiatric condition stemming from dysregulation of the chemicals that control mood. As such it tends to have genetic components, i.e., tends to run in families. It typically comes on in early adulthood and characteristically there are subsequently recurrent depressive episodes throughout adulthood. The dysregulations of the chemicals that control mood are very often effectively treated with other chemicals, namely antidepressant medications. In this case there is no evidence in the records that Lisa Menninger had any prior depressive episodes or a discrete depressive disorder prior to age 50. Thus, though it is understandable that she was very distressed or "*depressed* "at the company assessment, that is not a true mental disease or a so-called Major Depressive Disorder. Though she had been initially prescribed antidepressant medications in January 2018 by Dr. Kessimian and later by others, there has never been any obvious clinical improvement.

In summary, on the basis of the psychiatric interview and records reviewed, it is my view that it is unlikely that Dr. Lisa Menninger had Social Anxiety Disorder (Social Phobia) or, if she did, its impact was relatively minor and was not reflected in any significant or obvious disruptions in her work, school or professional *functioning* prior to her employment at PPD. Critically, there was also no evidence of this condition had substantially impaired her work performance in the first two and half years at PPD.

Relative to the issue of Major Depressive Disorder, it is clear that Dr. Menninger was shocked, surprised and very distressed with the company's conclusion that the accommodations she was requiring were incompatible with the nature of the job of Executive Director of Global Laboratories. This, however, is best understood as such her emotional reaction to their business decision, a reality life event, not a disease, and not the condition ordinarily referred as Major Depressive Disorder. Also, it should not be regarded as a worsening of the condition of Social Anxiety Disorder (Social Phobia).

Finally, with regard to the question of whether she is permanently and totally disabled, it is my opinion that she does not have or has had any mental disease or disorder that would prevent her from functioning at the levels that she had in the past, if she were motivated to do so. Even if one were to accept that she has Social Anxiety

RE:  Lisa Menninger v.  PPD Development, L.P.
December 21, 2020
Page 7 of 7

Disorder, she had been able to carry out the duties at the company. It was only after she requested substantial changes in her responsibilities that they were faced with making relevant personnel decisions.

Thank you for requesting my opinion in this matter.

Sincerely,

Martin J. Kelly, M.D.

NB: This opinion is of course focused on the specific conditions claimed by Dr. Menninger and her expert. Some elements of her history and self-reports as well as clinical observations during the interview in my mind raise the possibility of a condition in the spectrum of developmental issues.

1

# MARTIN J. KELLY, M.D.

**Boylston Consultation Center**
**1051 Beacon Street**
**Suite 203 B**
**Brookline, MA 02446**

**Brigham and Women's Hospital**
**Department of Psychiatry**
**75 Francis Street**
**Boston, MA 02115**

| | |
|---|---|
| **Home Address:** | **321 Hammond Pond Pkwy, Chestnut Hill, MA  02467** |
| **Date of Birth:** | **December 23, 1939** |
| **Place of Birth:** | **Boston, Massachusetts** |

## EDUCATION AND TRAINING

**Education:**

| | | |
|---|---|---|
| **1961** | **B.S. Biology** | **Boston College** |
| **1965** | **M.D.** | **Tufts University School of Medicine** |

## POSTDOCTORAL TRAINING:

**Internships and Residencies:**

| | | |
|---|---|---|
| **1965-66** | **Intern** | **St. Elizabeth's Hospital, Boston** |
| **1966-68** | **Resident in Psychiatry** | **Massachusetts Mental Health Center, Boston** |
| **1968-69** | **Chief Resident in Psychiatry** | **Massachusetts Mental Health Center, Boston** |

## LICENSURE AND CERTIFICATION:

| | | |
|---|---|---|
| **1966** | **Massachusetts Medical Licensure** | **Registration No. 29423** |
| **1972** | **American Board of Psychiatry and Neurology, in Psychiatry** | |
| **1974** | **Qualified Forensic Psychiatrist,  Commonwealth of Massachusetts** | |
| **1994-2004** | **American Board of Psychiatry and Neurology, Added Qualifications in Forensic Psychiatry** | |
| **1996** | **Coast Guard License - Master Near Coastal Auxiliary and Sail Vessels 100 Gross Tons, U.S.** | |

**National Provider Identifier**      **No.  1255322426**

## PROFESSIONAL APPOINTMENTS

*Academic Appointments:*

| | | |
|---|---|---|
| **1966-69** | **Teaching Fellow in Psychiatry** | **Harvard Medical School** |
| **1969-70** | **Instructor in Psychiatry** | **Tufts University School of Medicine** |
| **1970** | **Clinical Instructor in Psychiatry** | **Harvard Medical School** |
| **1970-73** | **Instructor in Psychiatry** | **Peter Bent Brigham Hospital, Harvard Medical School** |
| **1973-80** | **Assistant Professor of Psychiatry** | **Peter Bent Brigham Hospital, Harvard Medical School** |
| **1980-82** | **Assistant Professor of Psychiatry** | **Brigham & Women's Hospital, Harvard Medical School** |
| **1982-** | **Associate Professor of Psychiatry** | **Harvard Medical School** |

*Hospital Appointments:*

| | | |
|---|---|---|
| **1969-70** | **Senior Psychiatrist** | **Adolescent Unit, Boston State Hospital** |
| **1970-73** | **Senior Associate in Medicine (Psychiatry)** | **Peter Bent Brigham Hospital** |
| **1973-80** | **Physician, Department of Medicine** | **Peter Bent Brigham Hospital** |
| **1980-1999** | **Senior Physician, Department of Medicine** | **Brigham and Women's Hospital** |
| **1970-** | **Psychiatrist, Department of Psychiatry** | **Brigham and Women's Hospital** |
| **1976-77** | **Active Staff** | **Dana-Farber Cancer Institute** |
| **1977-2007** | **Consulting Staff** | **Dana-Farber Cancer Institute** |

## OTHER PROFESSIONAL POSITIONS, MAJOR VISITING APPOINTMENTS AND RELEVANT COMMUNITY SERVICE:

| | | |
|---|---|---|
| **1972-82** | **Lecturer, Graduate School of Social Work** | **Boston College** |

| 1975-85 | Lecturer in Psychiatry | Boston University School of Medicine |
|---|---|---|
| 1978 | Visiting Lecturer, Consultation-Liaison Psychiatry | George Washington University School of Medicine |
| 2006 | Lecturer | Northeastern University School of Law |

## CONSULTANT TO:

Board of Registration in Medicine, Division of Youth Services, Department of Public Welfare, Commonwealth of Massachusetts

Massachusetts Board of Bar Overseers

District Attorneys' Offices in Barnstable, Berkshire, Bristol, Essex, Franklin Hampden, Hampshire, Middlesex, Norfolk, Plymouth, and Suffolk Counties

Massachusetts Defenders Committee and Committee for Public Counsel Services

Boston Adoption Bureau

Federal and Superior Courts in Massachusetts

U.S. Attorney Offices in Massachusetts, New Hampshire, Virginia, New York, Connecticut, and Rhode Island

Massachusetts Federal Defenders Committee

Joint Underwriters Association/Promutual Medical Malpractice Group

Risk Management Foundation of the Harvard Medical Institutions

Attorney General, Commonwealth of Massachusetts

## AWARDS AND HONORS:

1986   Fellow, American Psychiatric Association

1995   Nominee, Mentorship Award, Harvard Medical School

2001   Life Fellow, American Psychiatric Association

2003   Distinguished Life Fellow, American Psychiatric Association

2007    Lifetime Achievement Award, Department of Psychiatry, Harvard Medical School and Brigham and Women's Hospital

## SERVICE ASSIGNMENTS

Principal Hospital/Health Care System Service Responsibilities:

| 1970-73 | Assistant Director, Division of Psychiatry | Peter Bent Brigham Hospital |
| 1971-72 | Director, Drug Abuse Consultation Unit, Division of Psychiatry | Peter Bent Brigham Hospital |
| 1973-80 | Associate Director, Division of Psychiatry | Peter Bent Brigham Hospital |
| 1980-89 | Associate Director, Division of Psychiatry | Brigham and Women's Hospital |
| 1980-87 | Psychiatrist, Acute Rehabilitation Service | Brigham and Women's Hospital |
| 1989-90 | Acting Director, Division of Psychiatry | Brigham and Women's Hospital |

## MAJOR COMMITTEE ASSIGNMENTS:

National and Regional

| 1971-73 | Coordinating Committee on Drug Abuse | City of Boston |
| 1980-82 | Governor's Special Commission on Probate and Family Court Procedures Relating to Divorce, Child Custody, and Family Violence - Subcommittee on Mediation | Commonwealth of Massachusetts |
| 1983-86 | Homelessness Project, Advisory Committee | Massachusetts Association for Mental Health |
| 1991-1999 | Task Force on Medicaid Fraud and Abuse | Attorney General's Office Commonwealth of Massachusetts |

Harvard Medical School

| 1977-92 | Committee on Core Clinical Clerkships and Electives | Department of Psychiatry |
| 1977-79 | Subcommittee of the Committee on Admissions, Member | |
| | Subcommittee of the Committee on | |

- 4 -

**1979-85**        **Admissions, Chairman**

## MAJOR COMMITTEE ASSIGNMENTS:

**Harvard Medical School (continued)**

| | | |
|---|---|---|
| **1979-85** | **Committee on Admissions, Member** | |
| **1985-87** | **Psychiatry Clerkship Committee, Chairman** | **New Pathway Project** |
| **1985-87** | **Experiences in Patient Care Committee, Member** | **New Pathway Project** |
| **1986-92** | **Planning Committee, Member** | **Psychopathology & Introduction to Clinical Psychiatry** |
| **1991-94** | **Committee on Planning, Member** | **Harvard Longwood Residency Training Program** |
| **1992-94** | **Training Committee, Member** | **Harvard Longwood Residency Training Program** |
| **1992-2003** | **Curriculum Committee, Member** | **Harvard Longwood Residency Training Program** |
| **1993-2007** | **Social Systems in Psychiatry Committee** | **Harvard Longwood Residency Training Program** |

**Brigham and Women's Hospital**

| | |
|---|---|
| **1974-80** | **Human Subjects Committee** |
| **1980-92** | **Employee Assistance Committee** |
| **1980-92** | **Major Trauma Committee** |
| **1980-87** | **Acute Rehabilitation Unit Steering Committee** |
| **1989-2007** | **Heart Transplant Program** |
| **1990-1996** | **Lung Transplantation Program** |
| **1995-2002** | **Ventures Committee, Department of Psychiatry** |

6

## MAJOR ADMINISTRATIVE RESPONSIBILITIES:

| | | |
|---|---|---|
| **1970-73** | **Assistant Director in the Division of Psychiatry, Department of Medicine** | **Peter Bent Brigham Hospital** |
| **1973-80** | **Associate Director in the Division of Psychiatry, Department of Medicine** | **Peter Bent Brigham Hospital** |
| **1980-89** | **Associate Director of Division of Psychiatry, Department of Medicine** | **Brigham and Women's Hospital** |
| **1989-90** | **Acting Director in the Division of Psychiatry, Department of Medicine** | **Brigham and Women's Hospital** |
| **1992-** | **Principal, Boylston Consultation Center** | **Brookline, Massachusetts** |

## PROFESSIONAL SOCIETY INVOLVEMENT:

**Memberships, Offices and Committee Assignments in Professional Societies:**

### American Psychiatric Association

| | |
|---|---|
| **1968-** | **Member** |
| **1986** | **Fellow** |
| **2001** | **Life Fellow** |
| **2003** | **Distinguished Life Fellow** |

### Massachusetts Psychiatric Society

| | |
|---|---|
| **1968-** | **Member** |
| **1974-77** | **Private Practice Committee, Chairman** |
| **1975-92** | **Committee of Psychiatric Residency Training Directors** |
| **1975-78** | **Insurance Committee** |
| **1979-92** | **Legislative Committee** |
| **1979-85** | **Councilor** |
| **1990-2000** | **Society Representative to Massachusetts Medical Society** |
| **1994-2003** | **Ethics Committee** |
| **1997-2003** | **Ethics Committee, Chairman** |

7

**Memberships, Offices and Committee Assignments in Professional Societies (continued):**

**Massachusetts Medical Society**

| | |
|---|---|
| **1969-** | **Member** |
| **1976-77** | **Section of Psychiatry and Neurology, Secretary** |
| **1977-79** | **Section of Psychiatry and Neurology, Vice Chairman** |
| **1978-85** | **Legislative Committee** |
| **1979-92** | **Blue Cross Blue Shield Liaison Committee** |
| **1980-84** | **Section of Psychiatry, Chairman** |
| **1980-90** | **Interspecialty Committee, Representative for Psychiatry** |
| **1984-90** | **Councilor for Psychiatry** |
| **1990-1991** | **Consultant in Psychiatry Interspecialty Committee** |
| **1991-2000** | **Interspecialty Committee, Psychiatry, Member-at-large,** |
| **1991-1995** | **Councilor Representing Psychiatry** |
| **1995-2000** | **Delegate Representing Psychiatry** |
| **1997-2000** | **Compassionate Care Committee** |

**Massachusetts Association for Mental Health**

| | |
|---|---|
| **1976-** | **Member** |
| **1976-85** | **Professional Advisory Committee** |
| **1980-85** | **Professional Advisory Committee, Chairman** |
| **1983-86** | **Advisory Committee for Homeless Project, Member** |
| **1980-** | **Board of Directors** |

**American Psychosomatic Society**

| | |
|---|---|
| **1972-** | **Member** |

8

**Memberships, Offices and Committee Assignments in Professional Societies (continued):**

**American Association of General Hospital Psychiatrists**

    **1979-1990    Member**

**Association of General Psychiatrists**

    **1987-1995    Member**

**Royal Society of Medicine, London**

    **1988-92      Associate**

**American Academy of Psychiatry and the Law**

    **1989-       Member**

**Boston Society of Neurology and Psychiatry**

    **1989-       Member**


**Professional Journals Peer Reviewer**

**New England Journal of Medicine**

**General Hospital Psychiatry**

**Psychosomatic Medicine**

**Journal of Neuropsychiatry and Clinical Neurosciences**

9

**Bibliography**

**Original Reports**

1.    Kelly MJ.  Comprehensive long term treatment of a schizophrenic adolescent.
      Psychiatric Opinion  1970;7:36-41.

2.    Schiff LF, Kelly MJ, Kris AO.  Participatory consultation:  enhancing a
      comprehensive treatment service for adolescents.  Mass J Mental Health  1971;11:36-
      42.

3.    Reich, P, Kelly MJ.  Suicide attempts by hospitalized medical and surgical patients.
      N Engl J Med  1976;294:298-301.

4.    Brown HN, Kelly MJ.  Stages of bone marrow transplantation: a psychiatric
      perspective.  Psychosom Med  1976;38:439-46.

5 .   Reich P, Lazarus JM, Kelly MJ, Rogers MP.  Factitious feculent urine in an adolescent
      boy.  JAMA  1977;238:420-21.

6.    Weinberger DR, Kelly MJ.  Catatonia and malignant syndrome: a possible
      complication of neuroleptic administration.  J. Nerv Ment Dis  1977;165:263-68.

7.    Schlauch RW, Reich P, Kelly MJ.  Leaving the hospital against medical advice.  N Eng
      J Med 1980;300:22-24.

8.    Altman JH, Reich P, Kelly MJ, Rogers MP.  Patients who read their hospital charts.
      N Engl J Med  1980;302:169-71.

9.    Rogers MP. Reich P, Kelly MJ, Liang MH.  Psychiatric consultation among
      hospitalized arthritis patients.  Gen Hosp Psychiat  1980;2:89-94.

10.   Chinman, C, Kelly, MJ, Borus, J.  Teaching Residents the Reality of Current Mental
      Health Care.  Harvard Rev Psychiatry  2002;10:56-58


**Reviews**

1.    Kelly MJ.  Who me--a sexist?  Editorial.  N Engl J Med  1973;288:317-18.

2.    Kelly MJ.  Book Review.  Croog SH, Levine S.  The heart patient recovers (social and
      psychological factors).  New York:  Human Sciences Press, 1977.  Psychosom Med
      1978; 40:641-42.

3.    Kelly MJ.  Antianxiety drugs: benzodiazepines.  Hospital Formulary  979;14:227-28.

10

4.  Kelly MJ.  Book Review.  Schneider J.  Stress, loss and grief:  understanding their origins and growth potential.  Baltimore:  University Park Press, 1984.  N Engl J Med 1984;311:545.

5.  Kelly MJ.  Book Review.  Greben S.  Loves labor:  twenty-five years of experience in the practice of psychotherapy.  New York:  Schocken Books, 1984.  N Engl J Med 311:1645-46.

6.  Kelly MJ.  Book Review. Derogatis LR, Wise TV. Anxiety and depressive disorders in the medical patient. Washington, D.C. American Psychiatric Press, 1989. N Engl J Med  320:1089-90.

7.  Kelly MJ.  Book Review.  Brown GW, Harris TO.  Life events and illness.  New York:Guilford Press,  1989.  N Engl J  Med 1990;322:276.

8.  Kelly MJ.  Book Review.  Andersen AE.  Males with eating disorders.  New York:Brunner/Mazel, 1990.  N Engl J Med  1991;324:202.

9.  Kelly MJ. Strategies for Diagnosing and Treating Depression. Boston:Brigham and Women's Hospital, 1991; Medical Update 3:8:1-5.

10.  Kelly MJ.  Suicide assessment in the emergency department.  Boston: Risk Management Foundation of the Harvard Medical Institutions, 1993; Forum 14:6:5-6.

11.  Kelly, MJ.  Book Review. Toward an Integrated Medicine: Classics from Psychosomatic
Medicine 1959-1979.  Washington, D. C. American Psychiatric Press, Inc.  1995.

## Books

1.  Reich P, Kelly MJ.  Introduction to the mental disorders.  In:  Wintrobe MM, et al, eds.  Harrison's Principles of  Internal Medicine, 7th ed.  New York: McGraw-Hill, 1974:1871-75.

2.  Reich P, Kelly MJ.  The neuroses.  In: Wintrobe MM, et al,   eds.  Harrison's Principles of Internal Medicine, 7th ed.  New York: McGraw-Hill, 1974:1875-85.

3.  Reich P, Kelly MJ.  Introduction to the mental disorders.   In: Thorn GW, et al, eds.  Harrison's Principles of Internal Medicine, 8th Edition.  New York: McGraw-Hill, 1977:  1944-48.

4.  Reich P, Kelly MJ.  The neuroses.  In: Thorn GW, et al, eds.  Harrison's Principles of Internal Medicine, 8th ed.  New York:  McGraw-Hill, 1977:1948-55.

11

5.   **Kelly MJ, Reich P.  Psychiatric Preparation of the Surgical Patient.  In: Vandam LD, ed.  To make the patient ready for anesthesia: medical care of the surgical patient.  Reading, Mass:  Addison-Wesley, 1980:218-35.**

6.   **Kelly MJ, Reich P.  Psychiatric Preparation of the Surgical Patient.  In: Vandam LD, ed.  To make the patient ready for anesthesia: medical care of the surgical patient.  Reading, Mass: Addison-Wesley, 1984:224-41.**

7.   **Kelly, MJ.  Psychosis and depression.  In: Braunwald E and Rose BD.  Intensive review of Internal Medicine.  Boston, Mass:  Harvard Medical School, 1993:470-75.**

8.   **Kelly MJ, Rogers MP.  Neuropsychiatric Aspects of Systemic Lupus Erythematosus.  In: Stoudemire A and Fogel BS.  Medical- Psychiatric Practice.  Washington, D.C.: American Psychiatric Press, 1995:183-214.**

9.   **Rogers MP, Kelly MJ.  Psychiatric aspects of systemic lupus.  In: Schur, PH ed. The clinical management of systemic lupus erythematosus, 2nd ed.  Philadelphia: Lippincott- aven Publishers, 1996:155-73.**

10.   **Kelly MJ, Mufson MJ, Rogers MP.  Medical Settings and Suicide.  In: Jacobs DG ed.  Guide to Suicide Assessment and Intervention, 1st ed.  San Francisco: Jossey-Blass Publishers, 1999:491-519.**

1/8/2021

**Martin J. Kelly, M.D.**

**Case List:  2016 – 2019**

**Testimony at Trial, Deposition and Hearing**

# Martin J. Kelly, M.D. -- 2016 Case List Summary

## Testimony at trial, Hearing and Deposition

| CASE TESTIMONY | COURT | RETAIND BY |
|---|---|---|
| Comm v. R. Concepcion | Suffolk Superior | District Attorney |
| Comm. v. C. James | R.I. Superior Newport | District Attorney |
| Re: K Campbell | US District Court Hearing | Defendant |
| Re: J. Potter | West Roxbury District Court Hearing | District Attorney |
| P. Glenn v. Stewart et al | Hampden Superior Ct. Deposition | Defendant |
| U.S. v. W. Knaggs | US District Ct. Springfield Hearing | US Attorney |
| Comm v. G. Batista | Essex Superior | District Attorney |
| Comm. v. C. Jackson | Suffolk Superior Court | District Attorney |

# Martin J. Kelly, M.D. -- 2017 Case List Summary

| **CASE TESTIMONY** | **COURT** | **RETAIND BY** |
|---|---|---|
| Comm. v. John Reddy | Salem District | District Attorney |
| R.I. v. C. Lepore | R.I. Superior Warwick | R.I. AttorneyGen |
| U.S. v. D. Wright | US District Court Boston | U.S. Attorney |
| R.I. v. D. Allison | R.I. Superior Ct. Providence | R.I. Attorney Gen |
| Comm. v. A. Loya | Cape and Islands Superior | District Attorney |
| Comm. v. M. Purpura | Suffolk Superior Court | District Attorney |

# Martin J. Kelly, M.D. -- 2018 Case List Summary

| CASE TESTIMONY | COURT | RETAIND BY |
|---|---|---|
| Comm. v. Yvonne Lewis | Suffolk Superior Boston | Defendant |
| Comm. v. Leanor Flores | Suffolk Superior Boston | District Attorney |
| Comm v. M. Rodriques | Essex District Salem | District Attorney |
| Comm. v. Chr. Fratantonio | Cape and Islands Barnstable | District Attorney |

# Martin J. Kelly, M.D. -- 2019 Case List Summary

## Testimony at trial, Hearing and Deposition

| CASE | COURT | Retained by | TESTIMONY |
|------|-------|-------------|-----------|
| Comm. v. Juan Manana-Rodriques | Essex  Superior | Prosecution | Trial |
| Comm v. Wilson-Lopez | Essex Superior | Prosecution | Hearing |
| Scott Bergantino. v. Cranston RI | R.I .Superior | Defendant | Deposition |

To whom it may concern:


My fee is $600 per hour for all Forensic professional activities including trial testimony, depositions, examinations, conferences and reports.


Martin J Kelly M.D.