UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA MENNINGER,<br><br>    Plaintiff,<br><br>    v.<br><br>PPD DEVELOPMENT, L.P.,<br><br>    Defendants. | Civil Action No: 1:19-CV-11441-LTS |

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

LISA MENNINGER

By her attorneys,

*/s/ Patrick J. Hannon*
Patrick J. Hannon (BBO #664958)
Hampton M. Watson (BBO #705983)
Hartley Michon Robb Hannon LLP
155 Seaport Boulevard, 2nd Floor
Boston, MA 02210
phannon@hmrhlaw.com
hwatson@hmrhlaw.com
(617) 723-8000
Attorneys for Plaintiff

**DISCRIMINATION**

**INSTRUCTION NO. 1.**

To succeed on her claim for disability discrimination, Dr. Menninger must prove by a preponderance of the evidence that:

<u>First</u>, she suffered from a "disability" within the meaning of federal and state anti-discrimination laws;

<u>Second</u>, she possessed the requisite skill, experience, education, and other job-related requirements for her position, and was able to perform the position's essential functions either with or without reasonable accommodation;

<u>Third</u>, that PPD either (i) failed to reasonably accommodate her disability or (ii) engaged in actions that adversely affected Dr. Menninger, in whole or in part, because of her disability.[1]

**INSTRUCTION NO. 2.**

For purposes of her discrimination claim, Dr. Menninger suffered from a "disability" if any of the following are true: (1) she suffered from a "physical or mental impairment" that "substantially limited" one or more of her "major life activities," (2) she had a record of such an impairment, or (3) she was regarded by PPD as having such an impairment.[2]

**INSTRUCTION NO. 3.**

A "physical or mental impairment" is:

(i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or

(ii) Any mental or psychological disorder, such as an intellectual disability (formerly termed "mental retardation"), organic brain syndrome, emotional or mental illness, and specific learning disabilities.[3]

**INSTRUCTION NO. 4.**

The term "major life activity" includes, but is not limited to:

---

[1] <u>Echevarria v. AstraZeneca Pharm. LP</u>, 856 F.3d 119, 126 (1st Cir. 2017).

[2] 29 C.F.R. § 1630.2(g).

[3] 29 C.F.R. § 1630.2(h).

  (i)  Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working; and

  (ii)  The operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions. The operation of a major bodily function includes the operation of an individual organ within a body system.[4]

**INSTRUCTION NO. 5.**

The requirement that a disability "substantially limit" a major life activity is not intended to be a demanding standard, and the phrase should be construed broadly in favor of expansive coverage. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Further, the determination of whether an impairment substantially limits a major life activity must be made without regard to the ameliorative effects of mitigating measures. An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.[5]

**INSTRUCTION NO. 6.**

The non-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with following a particular treatment regime, may be considered when determining whether an individual's impairment substantially limits a major life activity.[6]

**INSTRUCTION NO. 7.**

In determining whether an individual has a disability, the focus is on how a major life activity is substantially limited, and not on what outcome an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write or learn compared to most people in the general population.[7]

**INSTRUCTION NO. 8.**

The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the

---

[4] 29 C.F.R. § 1630.2(i).

[5] 29 C.F.R. §§ 1630.2(j)(1).

[6] 29 C.F.R. § 1630.2(j)(4)(ii).

[7] 29 C.F.R. § 1630.2(j)(4)(iii).

marginal, that is, non-essential functions of the position.[8] "Essential functions" are those that must necessarily be performed by the individual in order to accomplish the principal objectives of the job.[9]

**INSTRUCTION NO. 9.**

A job function may be considered essential for any of several reasons, including but not limited to the following:

>(i) The function may be essential because the reason the position exists is to perform that function;

>(ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or

>(iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.[10]

**INSTRUCTION NO. 10.**

In determining whether a particular function is essential, the evidence you may consider includes the following:

>(i) The employer's judgment as to which functions are essential;

>(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

>(iii) The amount of time spent on the job performing the function;

>(iv) The consequences of not requiring the incumbent to perform the function;

>(v) The terms of a collective bargaining agreement;

>(vi) The work experience of past incumbents in the job; and/or

>(vii) The current work experience of incumbents in similar jobs.[11]

---

[8] 29 C.F.R. § 1630.2(n)(1).

[9] Cargill v. Harvard Univ., 60 Mass. App. Ct. 585, 594 (2004).

[10] 29 C.F.R. § 1630.2(n)(2).

[11] 29 C.F.R. § 1630.2(n)(3).

**INSTRUCTION NO. 11.**

It is PPD's burden to prove which of Dr. Menninger's job functions, if any, were "essential."[12]

**INSTRUCTION NO. 12.**

Absent "undue hardship," the law requires employers such as PPD to make "reasonable accommodations" to the known physical or mental limitations of an otherwise "qualified individual" with a disability who is an applicant or employee. A "qualified individual" is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.[13]

**INSTRUCTION NO. 13.**

A "reasonable accommodation" is any adjustment or modification to a job (or the way a job is done), employment practice, or work environment that makes it possible for a person with a disability to perform the essential functions of the position involved and to enjoy equal terms, conditions and benefits of employment.[14] A reasonable accommodation may include:

(i) Making existing facilities used by employees readily accessible to and equally usable by individuals with disabilities;

(ii) Modifying work schedules;

(iii) Modifying when and how an essential job function is performed;

(iv) Reassigning marginal or non-essential job functions;

(v) Job restructuring;

(vi) Part-time or modified work schedules;

(vii) Reassignment to a vacant position;

(viii) Acquisition or modifications of equipment or devices;

(ix) Appropriate adjustment or modifications of examinations, training materials, or policies;

(x) The provision of qualified readers or interpreters;

---

[12] <u>Ward v. Massachusetts Health Rsch. Inst., Inc.</u>, 209 F.3d 29, 35 (1st Cir. 2000) (employer always bears the burden to prove a function was essential due to its superior access to information).

[13] 29 C.F.R. § 1630.2(o).

[14] <u>Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination</u>, 441 Mass. 632, 648 (2004).

  (xi) and other similar accommodations for individuals with disabilities.[15]

**INSTRUCTION NO. 14.**

A "qualified individual" is entitled to a reasonable accommodation even if they are able to perform the essential functions of their job without it.[16] The law requires an accommodation in such circumstances in order to alleviate the added stress, difficulties and other disadvantages that a disabled employee may suffer in performing their work.[17]

**INSTRUCTION NO. 15.**

If you find that Dr. Menninger was entitled to a reasonable accommodation and PPD failed to provide it, it is PPD's burden to show that such accommodation would have imposed an "undue hardship."[18]

**INSTRUCTION NO. 16.**

An accommodation imposes "undue hardship" on an employer if it causes significant difficulty or expense. In determining whether an accommodation would impose an undue hardship, factors to be considered include:

  (i) The nature and net cost of the accommodation needed under this part, taking into consideration the availability of tax credits and deductions, and/or outside funding;

  (ii) The overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation, the number of persons employed at such facility, and the effect on expenses and resources;

  (iii) The overall financial resources of the covered entity, the overall size of the business of the covered entity with respect to the number of its employees, and the number, type and location of its facilities;

---

[15] 29 C.F.R. § 1630.2(o); MCAD Guidelines: Employment Discrimination on the Basis of Handicap, https://www.mass.gov/doc/mcad-guidelines-on-disability-discrimination-in-employment/download; cf. Dahill v. Police Dep't of Bos., 434 Mass. 233, 239, 748 N.E.2d 956, 961 (2001) ("The guidelines [on employment discrimination on the basis of handicap] represent the MCAD's interpretation of G.L. c. 151B, and are entitled to substantial deference, even though they do not carry the force of law.")

[16] Bell v. O'Reilly Auto Enterprises, LLC, 972 F.3d 21, 24 (1st Cir. 2020) ("An employee who can, with some difficulty, perform the essential functions of his job without accommodation remains eligible to request and receive a reasonable accommodation.").

[17] Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination, 441 Mass. 632, 648 (2004).

[18] Enica v. Principi, 544 F.3d 328, 339 (1st Cir. 2008).

(iv) The type of operation or operations of the covered entity, including the composition, structure and functions of the workforce of such entity, and the geographic separateness and administrative or fiscal relationship of the facility or facilities in question to the covered entity; and

(v) The impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business.[19]

**INSTRUCTION NO. 17.**

To find that PPD engaged in actions that adversely affected Dr. Menninger, in whole or in part, because of her disability, you must find that such actions materially changed the conditions of her employment. For example, assignment of more difficult job responsibilities could meet this standard. Likewise, an employee may meet this standard by showing that her employer intentionally assigned new job duties to target her known disability, such as by selecting tasks that would be more difficult due to the disability.[20]

**INSTRUCTION NO. 18.**

This analysis requires consideration of all the surrounding circumstances, as well as the context in which events took place. For example, a schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-aged children.[21]

---

[19] 29 C.F.R. § 1630.2(p).

[20] See Summary Judgment Order.

[21] See Summary Judgment Order.

## RETALIATION

**INSTRUCTION NO. 19.**

A claim for retaliation is separate and distinct from a claim for retaliation. Accordingly, Dr. Menninger does not need to succeed on her discrimination claim in order to prove retaliation.[22]

**INSTRUCTION NO. 20.**

In order to recover for retaliation, Dr. Menninger must prove by a preponderance of the evidence that (1) she engaged in conduct that is protected under the anti-discrimination laws, (2) she suffered a materially adverse action, and (3) the materially adverse action is causally linked to the protected conduct.[23]

**INSTRUCTION NO. 21.**

An employee's request for accommodation constitutes protected conduct as a matter of law.[24] This is true even if the employee does not meet the statutory definition of "disability" or is otherwise not entitled to any accommodation, so long as the employee makes their request in good faith.

**INSTRUCTION NO. 22.**

With respect to showing an "adverse action," Dr. Menninger's burden under her retaliation claim is different than under her claim for discrimination. To be actionable as retaliation, an adverse action does not need to "relate to the terms and conditions of employment." Instead, Dr. Menninger need only prove that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from engaging in protected activity.[25]

---

[22] Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 405 (2016) (noting that a claim for retaliation is a separate and distinct from a claim of discrimination and may succeed even if the discrimination claim fails, provided "the claimant can prove that [she] reasonably and in good faith believed that the [employer] was engaged in wrongful discrimination" (internal quotations omitted)); Poon v. Mass. Inst. of Tech., 74 Mass. App. Ct. 185, 200 (2009).

[23] See Summary Judgment Order; Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

[24] Incutto v. Newton Pub. Sch., No. CV 16-12385-LTS, 2019 WL 1490132, at *4 (D. Mass. Apr. 4, 2019) (Sorokin, J.); Gauthier v. Sunhealth Specialty Servs., Inc., 555 F. Supp. 2d 227, 244 (D. Mass. 2008).

[25] See Summary Judgment Order; Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

**INSTRUCTION NO. 23.**

Material adversity is judged from the standpoint of a reasonable person in the employee's position—meaning a person suffering from the same disabilities as Dr. Menninger, if you find that she suffered from any.[26]

**INSTRUCTION NO. 24.**

Actions such as suggesting that an employee should resign, excluding them from activities normally within the scope of their responsibilities, and conducting a "sham investigation" into complaints of workplace misconduct all could—under appropriate circumstances—constitute materially adverse actions.[27]

**INSTRUCTION NO. 25.**

In determining whether PPD subjected Dr. Menninger to a materially adverse action, you should consider the evidence cumulatively. That is, you should consider whether PPD's cumulative actions in response to her protected request for accommodation might well have dissuaded a reasonable person with her disabilities from requesting an accommodation.[28]

**INSTRUCTION NO. 26.**

You are permitted to infer a causal link from the timing and sequence of events. This inference may be drawn if adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity, or where adverse actions follow close on the heels of protected activity. In other words, close proximity in time between Dr. Menninger's protected activity and the adverse actions by PPD would permit an inference of the causal link necessary for a finding of retaliation.[29]

**INSTRUCTION NO. 27.**

You may also infer a causal link from evidence that a pattern of discriminatory or retaliatory conduct began soon after the protected activity and only culminated later in actual adverse action.[30]

---

[26] Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69 (2006).

[27] See Summary Judgment Order.

[28] Fox v. Town of Framingham, No. 14-CV-10337-LTS, 2016 WL 4771057, at *7–8 (D. Mass. Sept. 13, 2016) (Sorokin, J.).

[29] Psy-Ed Corp. v. Klein, 459 Mass. 697, 711 (2011) ("rapid succession" of events supported inference of causal connection between protected conduct and adverse action); Pardo v. Gen. Hosp. Corp., 446 Mass. 1, 19-20 (2006); Mole v. Univ. of Mass., 442 Mass. 582, 592 (2004); Poon v. Mass. Inst. of Tech., 74 Mass. App. Ct. 185, 200 (2009) (substantial interim between alleged retaliation and protected conduct can break causal connection).

[30] Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 407 (2016); Mole v. Univ. of Massachusetts, 442 Mass. 582, 596 (2004) ("a series of retaliatory measures

## **DAMAGES**

**INSTRUCTION NO. 28.**

If Dr. Menninger has proven to you that PPD unlawfully discriminated or retaliated against her, or both, then you must decide the amount of damages, if any, that will fairly compensate Dr. Menninger. The purpose of an award of compensatory damages is to make the plaintiff whole for all the losses that she has suffered because of the defendant's unlawful discrimination or retaliation. Except where I instruct you otherwise, the plaintiff bears the burden of proof on damages. [31]

**INSTRUCTION NO. 29.**

A person is entitled to recover damages for any aggravation of a pre-existing condition or disability resulting from an injury. This is true even if the person's condition or disability made him more susceptible to the possibility of ill-effects than a normally healthy person would have been, and even if a normally healthy person would not have suffered any substantial injury.

It is settled that, where an injury arising from a cause which entails liability on the defendant combines with a pre-existing condition to bring about greater harm to the plaintiff than would have resulted from the injury alone, the defendant may be liable for all the consequences. If the injury causes or contributes to cause the development of a pre-existing disease, the person liable for the injury is liable also for the resulting aggravation. The wrongdoer may be held responsible for the harmful results of the combined effects of his wrongful act and the preexisting condition.

A defendant cannot be heard to complain that the injury would have been less or even non-existent in a stronger or healthier person. For example if a defendant negligently ran into a truck containing eggs, breaking the eggs in the truck, he is liable for all of the broken eggs. He cannot complain that had the truck contained bowling balls that there would have been no damages. The same holds for injuries for a person. The defendant takes the plaintiff as she finds her and is liable for any worsening, aggravation or acceleration of any previously existing condition or for any new injury caused by the defendant's discrimination or retaliation.[32]

**INSTRUCTION NO. 30.**

Uncertainty in the amount of damages does not bar recovery and mathematical precision is not required. However, you must not speculate, conjecture, or guess in awarding damages. The award is acceptable as long as it is based on just and reasonable inferences from the evidence.

---

starting shortly after the protected activity can justify the inference that a particular action in that series, although occurring a considerable time later, is still motivated by retaliation").

[31] Mass CPJI § 5.3.1 Damages – Generally.

[32] Frevermuth v. Lufty, 376 Mass. 612 (1978); Wallace v. Ludwig, 292 Mass. 251 (1935); Walker v. Nickerson, 291 Mass. 522, 197 N.E. 451 (1936).

**INSTRUCTION NO. 31.**

If you find that PPD unlawfully discriminated against Dr. Menninger, unlawfully retaliated against Dr. Menninger, or both, then you may award damages in the following four areas:

1. back pay,

2. front pay,

3. emotional distress, and

4. punitive damages.

I will explain each to you.[33]

**INSTRUCTION NO. 32.**

First, the plaintiff is entitled to back pay, which is the amount of the Dr. Menninger's lost earnings from the date of the adverse employment action until today. This includes all lost salary, bonuses, equity or stock-related compensation, and the value of employment benefits that would have accumulated but for PPD's discriminatory or retaliatory conduct.[34]

In this case, you may award back pay if you find that PPD's discriminatory or retaliatory conduct caused Dr. Menninger to be unable to work.[35]

---

[33] G.L. c. 151B, § 9; Stonehill Coll. v. MCAD, 441 Mass. 549 (2004) (comparing judicial proceeding for damages to MCAD proceeding); Conway v. Electro Switch Corp., 402 Mass. 385, 388 (1988).

[34] Beaupre v. Cliff Smith & Assocs., 50 Mass. App. Ct. 480, 496 n.25 (2000).

[35] Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368, 384 (1st Cir. 2004) ("several courts have held that an employee who is unable to work due to a disability is not precluded from receiving back pay when the employer "caused" the disability. . . . We now extend that holding to Title VII; an employee who cannot mitigate damages because of the unlawful actions of the employer can still receive back pay. . . . This rule is merely a logical corollary of the principle that the victims of discrimination should be restored, "so far as possible ... to a position where they would have been were it not for the unlawful discrimination." Albemarle, 422 U.S. at 421, 95 S.Ct. 2362. If the employer's unlawful conduct caused the employee's inability to mitigate damages, then the employer should be liable for the resulting consequences."); Blockel v. J.C. Penney Co., 337 F.3d 17, 27 (1st Cir. 2003) (applying Massachusetts law) ("The Massachusetts discrimination statute provides for actual damages, and the statute is to be construed liberally. Mass. Gen. Laws ch. 151B, § 9. Compensatory damages may include those that make 'the aggrieved party whole, ... including those which are the natural and probable consequences ... of the illegal conduct.' Conway v. Electro Switch Corp., 402 Mass. 385, 523 N.E.2d 255, 257 (1988) (internal quotations omitted). When an employee's total disability is caused by an employer's failure to reasonably accommodate her, the loss of employment can be an element of special damages that the jury may consider in fashioning a remedy for the failure to accommodate. See, e.g., Langon v. Dep't of

11

**INSTRUCTION NO 33.**

Second, Dr. Menninger is entitled to front pay, which is the amount of damages resulting from the loss of future earnings and benefits that is attributable to PPD's misconduct. You cannot speculate in awarding front pay; rather, the determination of the amount of the award must be proven with reasonable certainty. You should make reasonable estimates based on the evidence concerning the amount of future earnings, including salary, bonuses, equity or stock-related compensation, and the value of benefits that Dr. Menninger would have received but for PPD's unlawful discrimination or retaliation.

In determining front pay, you should consider and weigh the following factors:

    1. the amount of earnings, including salary and benefits, that Dr. Menninger probably would have received between now and her projected retirement date or date of future employment;

    2. Dr. Menninger's probable date of retirement or date of future employment;

    3. the amount of earnings that Dr. Menninger probably will receive from another employer until her retirement;

    4. the availability of other employment opportunities; and

    5. the possibility of inflation and wage increases in the future.[36]

If you award damages to Dr. Menninger for losses she will suffer in the future, keep in mind that a plaintiff cannot be awarded damages that overcompensate the losses that she suffered because of the defendant's conduct.

In order to avoid overpaying Dr. Menninger, you must consider that the amount of money you give her today for future losses can be put in the bank, where it can earn interest. So, in making an award for future damages, you must determine the amount of money that, if invested today at a

---

Health & Human Servs., 959 F.2d 1053, 1061–62 (D.C.Cir.1992). In this case, the jury could have found that Blockel's total disability resulted from J.C. Penney's violation of its statutory duties. Given such a finding, Blockel was entitled to the pay she would have received but for J.C. Penney's mistreatment."); Lathem v. Dep't of Child. & Youth Servs., 172 F.3d 786, 794 (11th Cir. 1999) ("The district court, after reviewing all the evidence, specifically found that DCYS's conduct caused Lathem's disability and that this disability precluded her from obtaining other employment. Accordingly, we hold that a Title VII claimant is entitled to an award of back pay where the defendant's discriminatory conduct caused the disability.")

[36] Selmark Assocs. v. Ehrlich, 467 Mass. 525, 545 n.36 (2014); Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 102–03 (2009); Conway v. Electro Switch Corp., 402 Mass. 385, 388–89 (1988); Ventresco v. Liberty Mut. Ins. Co., 55 Mass. App. Ct. 201, 210 (2002); Handrahan v. Red Roof Inns, Inc., 48 Mass. App. Ct. 901, 902 (1999).

reasonable rate of interest, would in the future provide Dr. Menninger with the amount of money that you calculated she will lose in the future as a result of PPD's conduct.[37]

**INSTRUCTION NO. 34.**

Normally, the plaintiff has a duty to limit or "mitigate" her damages by seeking other comparable employment. A comparable job is one that offers similar compensation, long-term benefits, opportunities for promotion, job responsibilities, working conditions, and status.

However, if you find that Dr. Menninger was unable to mitigate her damages because PPD's discriminatory and/or retaliatory conduct caused her to be unable to perform comparable work, then so long as you find that to be the case, Dr. Menninger does not have a mitigation duty and you should not reduce her recovery.[38]

If, and only if, you find that at some point in time Dr. Menninger was or will be able to perform "comparable work," then it is still PPD's burden to prove to you that Dr. Menninger failed in her duty to mitigate damages by seeking other comparable employment. PPD meets this burden only if it has proved to you that:

    1. one or more discoverable opportunities for comparable employment were available in a location at least as convenient as the place of former employment;

    2. Dr. Menninger unreasonably made no attempt to apply for any such job; and

    3. it was reasonably likely that Dr. Menninger would have obtained one of those comparable jobs.[39]

The duty of mitigation does not require a plaintiff to go into another line of work, accept a demotion, or take a demeaning position.[40]

If PPD has proven the three elements of mitigation that I have just read to you, then you should reduce any back pay award to Dr. Menninger by the amount that PPD has proven that she could have earned in wages and benefits at the comparable job.

---

[37] Conway v. Electro Switch Corp., 402 Mass. 385, 388–89 & n.3 (1988).

[38] Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368, 384 (1st Cir. 2004); Blockel v. J.C. Penney Co., 337 F.3d 17, 27 (1st Cir. 2003); Durham Life Ins. Co. v. Evans, 166 F.3d 139, 157 (3d Cir. 1999) ("Significantly, the court found that her decline was caused by Durham's actions against her, which ultimately led her to take disability leave from Paul Revere. Because Durham's conduct affirmatively impaired her ability to mitigate her damages, it would be inequitable to reduce her back pay award in this case.").

[39] Sheriff of Suffolk County v. Jail Officers & Employees, 465 Mass. 584, 592 (2013); Black v. Sch. Comm. of Malden, 369 Mass. 657, 662–63 (1976); Buckley Nursing Home, Inc. v. MCAD, 20 Mass. App. Ct. 172, 185 (1985).

[40] Sherriff of Suffolk Cty. v. Jail Officers and Employees of Suffolk Cty., 465 Mass. 584, 593 (2013).

**INSTRUCTION NO. 35.**

If you award back pay and/or front pay damages to Dr. Menninger, then you may consider whether to reduce her recovery by the amount of money she received from so-called "collateral sources" such as short- or long-term disability insurance, unemployment insurance, and Social Security Disability benefits.

Generally, under a principle called the "collateral source rule," a wrongdoer's liability to an injured person is not to be reduced by the amount of compensation received by the injured person pursuant from collateral sources such as insurance, unemployment, or Social Security benefits.[41] Applying the collateral source rule means that the plaintiff may receive a double-recovery. However, the collateral source rule reasons that the wrongdoer has an obligation to make good for all of the damage that it causes, and reducing the plaintiff's recovery would allow the wrongdoer to escape full responsibility for its actions, thus, any "windfall" should go to the plaintiff.

Generally, the collateral source rule should apply, meaning the plaintiff's recovery is not reduced, unless you find that there are countervailing circumstances that would make it unjust to apply the collateral source rule.[42]

Based upon those considerations, you must decide whether or not to make a deduction from Dr. Menninger's back-pay and/or front pay award for amounts she received from collateral sources.

---

[41] Buckley Nursing Home, Inc. v. Massachusetts Comm'n Against Discrimination, 20 Mass. App. Ct. 172, 183–184 (1985); accord Sch. Comm. of Norton v. Massachusetts Comm'n Against Discrimination, 63 Mass. App. Ct. 839, 849, 830 N.E.2d 1090, 1100 (2005)

[42] Schillace v. Enos Home Oxygen Therapy, Inc., No. 12-NEM-01742, 2017 WL 1787485 (M.C.A.D. Full Commission Apr. 21, 2017). See Ayanna v. Dechert LLP, 840 F. Supp. 2d 453, 456 (D. Mass. 2012) ("the MCAD's interpretation of its governing statute is entitled to substantial deference but does not carry the force of law.") (citing Global NAPs, Inc. v. Awiszus, 457 Mass. 489, 496–497, 930 N.E.2d 1262 (2010); Bynes v. Sch. Comm. of Bos., 411 Mass. 264, 269, 581 N.E.2d 1019 (1991); Leach v. Comm'r of Ma. Rehabilitation Comm'n, 63 Mass.App.Ct. 563, 827 N.E.2d 745 (2005).)

**INSTRUCTION NO. 36.**

Third, if you find that Dr. Menninger has been discriminated against, retaliated against, or both, you may also award her reasonable damages for her physical and emotional distress. Physical and emotional distress includes pain, discomfort, indignity, depression, fear, anxiety, or humiliation suffered as a result of the discrimination, the retaliation, or both. Although uncertainty in the amount of damages does not bar recovery and mathematical precision is not required, you must not speculate, conjecture, or guess in awarding damages.[43]

To recover for her physical and emotional distress Dr. Menninger may, but is not required to present evidence of physical injury or physical manifestation of her distress. Nor is she required to show that she sought psychiatric consultation.[44]

Some factors that you should consider include, but are not limited to:

    1. the nature and character of the alleged harm;

    2. the severity of the harm;

    3. the length of time Dr. Menninger has suffered and reasonably expects to suffer; and

    4. whether Dr. Menninger has attempted to mitigate the harm (for example, by counseling or by taking medication).[45]

In addition, Dr. Menninger must show a sufficient causal connection between the PPD's unlawful acts and her emotional distress.[46]

You may award Dr. Menninger damages for her emotional distress even if you do not award back pay or front pay.[47]

---

[43] Stonehill Coll. v. MCAD, 441 Mass. 549, 575–76 (2004); Buckley Nursing Home, Inc. v. MCAD, 20 Mass. App. Ct. 172, 182 (1985).

[44] Stonehill Coll. v. MCAD, 441 Mass. 549, 576 (2004).

[45] Stonehill Coll. v. MCAD, 441 Mass. 549, 576 (2004) (declaring these factors in context of MCAD award); Massasoit Indus. Corp. v. MCAD, 91 Mass. App. Ct. 208, 214–15 (2017); Smith v. Bell Atl., 63 Mass. App. Ct. 702, 710 (2005) (applying those factors to jury award, citing Stonehill as "instructive"); see also Restatement (Second) of Torts §§ 905, cmt. i, 912, 917 (1979).

[46] Stonehill Coll. v. MCAD, 441 Mass. 549, 576 (2004).

[47] See, e.g., Mcfail v. Sylvania Lighting Services, No. 04-BEM-01224, 2011 WL 7650244, at *4 (M.C.A.D. Full Commission Mar. 19, 2011); see also Borne v. Haverhill Golf & Country Club, Inc., 58 Mass. App. Ct. 306, 319 (2003) ("The injury which underlay the compensatory damages was emotional distress, a form of injury held in several cases to be recoverable for violation of antidiscrimination laws.") (public accommodations case).

**INSTRUCTION NO. 37.**

Lastly, if you find that PPD has intentionally discriminated or retaliated against Dr. Menninger, or both, you may consider whether punitive damages are warranted. Punitive damages are different from compensatory damages. Unlike compensatory damages, which compensate the victim for the harm she has suffered, the purpose of punitive damages is to punish the defendant for conduct that is outrageous because of the defendant's evil motive or reckless indifference to the rights of others.[48] You may award punitive damages even absent compensatory damages.[49]

To find that punitive damages should be awarded, you must find that more than intentional discrimination or retaliation occurred. Punitive damages may be awarded only where the defendant's conduct is outrageous or egregious.[50]

In determining the amount of a punitive damage award, if any, you should consider:

> 1. the egregious or outrageous character or nature of PPD's conduct;
>
> 2. PPD's wealth, in order to determine what amount of money is needed to punish PPD's conduct and to deter any future acts of discrimination or retaliation;
>
> 3. the actual harm suffered by Dr. Menninger;
>
> 4. the magnitude of any potential harm to other victims if similar future behavior is not deterred;
>
> 5. whether there was a conscious or purposeful effort to demean or diminish the class of which Dr. Menninger is a part (or if there was a conscious or purposeful effort to demean or diminish Dr. Menninger because she was a member of that class);
>
> 6. whether PPD was aware that the discriminatory or retaliatory conduct would likely cause serious harm, or recklessly disregarded the likelihood that serious harm would arise;
>
> 7. PPD's conduct after learning that the initial conduct would likely cause harm; and
>
> 8. the duration of the wrongful conduct and any concealment of that conduct by PPD.[51]

If you do award punitive damages, you should fix the amount by using calm discretion and sound reason.

---

[48] Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 106–11 (2009); see also Tryon v. Massachusetts Bay Transportation Auth., 98 Mass. App. Ct. 673, 685–88 (2020).

[49] Bain v. City of Springfield, 424 Mass. 758, 767 (1997);

[50] Haddad, 455 Mass. at 110.

[51] Haddad, 455 Mass. at 110–11; Charles v. Leo, 96 Mass. App. Ct. 326, 347 (2019).