UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA MENNINGER,<br><br>                Plaintiff,<br><br>v.<br><br>PPD DEVELOPMENT, L.P.,<br><br>                Defendant. | Civil Action No.  1:19-CV-11441-LTS |

**DEFENDANT PPD DEVELOPMENT, L.P.'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE DEFENDANT'S USE OF "VOLUNTARY SELF-IDENTIFICATION" FORM**

There is no reason to exclude from the evidence at trial Dr. Menninger's response on the "Voluntary Self-Identification of Disability" form that she submitted to PPD in 2015 (the "Form"). Indeed, in her Motion *in Limine* to exclude the response, Dr. Menninger does not cite a single case in which a court has granted a motion to exclude such a response, and our research on the issue did not identify any case in which a court has done so. *See* Plaintiff's Memorandum of Law in Support of Plaintiff's Motion in Limine to Preclude Defendant's Use of "Voluntary Self-Identification of Disability" Form (ECF Doc. No. 115) ("Mem.") at 1-6. On the contrary, at least one federal district court has held that a plaintiff's response on a Voluntary Self-Identification of Disability form was admissible, rejecting the plaintiff's motion to exclude it, and several others have considered an individual's response on their self-identification form as relevant evidence on issues presented in the cases before them. *See Saunders v. New Horizons Computer Learning Ctr.*, No. 99 Civ. 9532 (AGS), 2002 WL 1067823, at *2 (S.D.N.Y. May 29, 2002), *aff'd*, 68 F. App'x 224 (2nd Cir. 2003); *see also Kamel v. Anderson Post Acute, LLC*, No. 1:22:cv-01115-

JMS-MPB, 2023 WL 413348, at *2 (S.D. Ind. Jan. 25, 2023) (considering plaintiff's response on the Voluntary Self-Identification of Disability form on the question whether defendant was aware of plaintiff's claimed disability); *Walls v. Graphic Packaging Corp.*, No. 1:20-cv-44, 2021 WL 3417897, at *6 (W.D. Mich. May 24, 2021) (considering plaintiff's response on the Voluntary Self-Identification of Disability form on the question whether plaintiff was disabled).

Notwithstanding the absence of any case law to support her position, Dr. Menninger offers three reasons why her response on the Voluntary Self-Identification of Disability form should be excluded: (1) "[f]ederal regulations bar" admitting the form as evidence at trial (Mem. at 1-3); (2) Dr. Menninger's response on the form "is not relevant" (Mem. at 3-4); and (3) the probative value of Dr. Menninger's response is "vastly outweighed by the dangers of confusion to the jury and undue prejudice" (Mem. at 4-6). Those arguments are entirely without merit, as we explain below.

**I.    Federal regulations do not require that Dr. Menninger's response on the Form be excluded from the evidence at trial.**

The regulation that, according to Dr. Menninger, requires the Court to exclude her response provides as follows:

> The contractor shall keep all information on self-identification confidential, and shall maintain it in a data analysis file (rather than in the medical files of individual employees). See § 60-741.23(d). The contractor shall provide self-identification information to OFCCP upon request. Self-identification information may be used only in accordance with this part.

41 C.F.R. § 60-741.42(e); *see* Mem. at 1-2. Dr. Menninger reads the last sentence of the regulation to mean that self-identification information can be used only for a purpose that is within the scope of Part 60-741 of the U.S. Department of Labor's ("DOL") regulations. *See* Mem. at 1-2 (arguing that Section 60-741.42(e) "bars PPD from using the form for any other purpose beyond the scope of the Part"). But that is not what the regulation says. Indeed, it says

nothing about the "purpose[s]" of Part 60-741, much less that the information can be used only for those purposes. Rather, it says that the information "may be used only *in accordance with* this part." 41 C.F.R § 60-741.42(e) (emphasis added). "In accordance with" does not mean "for the purposes of"; rather, it means "in conformity with" the requirements of. *See, e.g.*, *Mowrer v. U.S. Dep't of Transportation*, Civil Action No. 12-1158 (BAH), 2019 WL 4418747, at *6 (D.D.C. Sept. 16, 2019); *see also Eshel v. Commissioner of Internal Revenue Serv.*, 142 T.C. 197, 218 n.10 (U.S. Tax Ct. 2014) (declining "to hold that 'in accordance with' means 'in a manner that accomplishes the specific purpose of'"), *rev'd on other grounds*, 831 F.3d 512 (D.C. Cir. 2016); Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/in%20accordance%20with (accessed March 12, 2023) (defining "in accordance with" to mean "in a way that agrees with or follows (something, such as a rule or request)"). Nothing in Part 60-741 states that documents or information provided in connection with its provisions are inadmissible in court, or may not be used as evidence in a legal proceeding. Accordingly, Section 60-741.42(e) does not require the Court to exclude Dr. Menninger's response on her Voluntary Self-Identification of Disability form from the evidence in this case.

Dr. Menninger also asserts that the purpose of the Voluntary Self-Identification of Disability form "is solely to generate statistics to be used for government contractors' affirmative action efforts." *See* Mem. at 2 (emphasis in original). In support of that assertion, Dr. Menninger relies entirely on the DOL's response, on its website, to a "Frequently Asked Question" concerning the Section 503 regulations. *See id.* (citing Section 503 Regulations Frequently Asked Questions, U.S. Dep't of Labor, Office of Federal Contract Compliance Programs (Question 7) (https://www.dol.gov/agencies/ofccp/faqs/section-503#Q9 ) ("DOL FAQ

Response")). But the DOL did not say in its response to the Question that Dr. Menninger refers to (or to any other Question) that the purpose of the form is "<u>solely</u>" to generate statistics to be used for government contractors' affirmative action efforts, and it did not state or even suggest that the data or statistics generated via the forms may not be used for other purposes. *Compare* Mem. at 2 (emphasis in original) *with* DOL FAQ Response. Rather, it merely stated that the requirement was added "so that contractors can track the number of individuals with disabilities who apply for jobs and use this information to assess the effectiveness of their outreach and recruitment efforts." Nothing in the DOL's Response precludes the data or responses from being used for other purposes.

Finally, Dr. Menninger argues that admitting her Form as evidence at trial would somehow be inconsistent with the DOL's purposes in requiring federal contractors to invite employees to voluntarily disclose their disability status. *See* Mem. at 2-3. The rationale for that argument is not entirely clear, but it appears to be premised on the idea that admitting Dr. Menninger's Form would have the effect of penalizing her for stating on it that she was not disabled—when in fact, according to Dr. Menninger, she was disabled—and that such an effect would undermine the DOL's purpose in promulgating the requirement. *See id.* But as Dr. Menninger herself argues, the DOL's purpose in requiring federal contractors to invite employees to disclose their disability status appears to have been to gather information that will allow contractors to track the number of employees with disabilities who apply for jobs, and thus to assess the effectiveness of their outreach and recruiting efforts. *See* Mem. at 2 (citing the DOL FAQ Response). Dr. Menninger fails to explain how that or any other potential DOL purpose could or would be served by encouraging employees to submit inaccurate information. Indeed, it seems clear that the submission of inaccurate information undermines the purpose expressed in

the DOL response. Further, as Dr. Menninger acknowledges, although federal contractors are required to provide the Self-Identification of Disability forms to their employees, the employees are not required to complete and return them—the forms are, as their name indicates, entirely "Voluntary." Thus, an employee who has a disability but does not wish to disclose it to her employer is not required to submit an inaccurate form; rather, she need merely decline to submit one. Dr. Menninger, for whatever reason, voluntarily chose to submit a form stating that she was not disabled. *See* Mem., Exh. 1. Nothing in the DOL's regulations, or in its expressed purpose for seeking to gather data by means of Voluntary Self-Identification of Disability forms, requires excluding Dr. Menninger's Form from the evidence in this proceeding.

**II.    Dr. Menninger's response on the Form is highly relevant to the issues that the jury must decide in this case.**

Dr. Menninger argues that her response on the Form is not relevant because it "does not make it any more or less probable that [she] qualifies as 'disabled' under the applicable definitions of disability and handicap under the Americans with Disabilities Act and Mass. Gen. Laws, Chapter 151B." *See* Mem. at 3. But she offers no case law or other authority for the proposition that an individual's statement that she is or was not disabled is irrelevant to the question whether she qualifies as disabled under the ADA. *See id.* at 3-4. As noted above, at least one federal court has considered an employee's response on a Voluntary Self-Identification of Disability form as relevant to the question of whether the employee was in fact disabled, and other courts have considered employee statements regarding their non-disabled status as relevant to the question whether they were disabled. *See Walls*, 2021 WL 3417897, at *6; *see, e.g.*, *Holt v. Roadway Package Sys., Inc.*, 506 F. Supp. 2d 194, 207 (W.D.N.Y. 2007); *see generally U.S. v. Litvak*, 808 F.3d 160, 180 (2d Cir. 2015) ("'[T]he definition of relevance under Fed.R.Evid. 401

is very broad.'") (quoting *United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014)).

Dr. Menninger's response on the Form is also relevant to other issues in the case. For example, it is relevant to the question whether PPD knew of Dr. Menninger's alleged disability before January 2018, and to buttress PPD's argument to the jury that it had no such knowledge. *See, e.g.*, *Kamel*, 2023 WL 413348, at *2 (considering plaintiff's response on the Voluntary Self-Identification of Disability form as relevant to the question whether defendant was aware of plaintiff's claimed disability). Dr. Menninger's response is also relevant to her credibility, which in turn is highly relevant to multiple issues that the jury must decide in this case. Indeed, since Dr. Menninger's claims that she was disabled while employed by PPD and is totally disabled now such that she is unable to work at all depend primarily on her own account and description of her state of mind, feelings, and condition, her credibility is crucial, and her prior statement that she was not disabled at a time that she now claims that she was disabled is clearly relevant.[1]

In sum, Dr. Menninger's voluntary statement on the Form is relevant and probative on several issues before the jury in this case, and it should therefore be admitted at trial.

**III.     The Form is not subject to exclusion under Rule 403.**

Dr. Menninger argues that the Form should be excluded under Rule 403 because it will confuse the jury as to "what its proper inquiry is" when determining whether she was disabled. Mem. at 4. As noted above, however, Dr. Menninger has failed to show that her statement on the Form that she was not disabled is irrelevant to the question whether she was disabled, much less

---

[1] Dr. Menninger's argument that her response on the Form is not relevant to her credibility because she "was not under any obligation to answer the form in any particular way, or at all" makes no sense. *See* Mem. at 4. Dr. Menninger provided information on the form that she now claims was false at the time that she provided it. The fact that she did so voluntarily and not under any sort of duress does not in any way detract from the significance of her statement with respect to her credibility. Indeed, the fact that she freely and voluntarily provided information that she now says is false renders the statement even more probative of her credibility than it would be if she had been forced to provide the information.

that her statement would confuse the jury as to what the "proper inquiry is" on that question. Accordingly, Dr. Menninger's argument for excluding the Form based on jury confusion fails.

Dr. Menninger also argues that the Form would "introduce improper considerations of consistency or credibility into" the jury's analysis of whether she was disabled. *See* Mem. at 4-5. But again, as noted above, considerations of consistency and credibility are not improper and, on the contrary, are highly relevant to the issues in this case because the jury's determination of Dr. Menninger's claims to have been disabled during her employment (and to be "totally disabled" now) depend largely on her own account and description of her state of mind, feelings, and condition to her medical providers and others. Thus, to the extent that the Form would raise issues concerning Dr. Menninger's credibility and consistency, the jury's consideration of those issues would not be in any way improper.[2]

Finally, Dr. Menninger warns of the "drastic implications to public policy" of allowing the Form to be introduced at trial. *See* Mem. at 5. Her concern appears to be that if Dr. Menninger's response on the Form is admitted at this trial, other employees will be discouraged from providing responses on their own Self-Identification of Disability forms in the future. That concern is completely unwarranted. As noted above, no court in any published decision has excluded an employee's response on a Voluntary Self-Identification of Disability form, and several have considered such forms as evidence relevant to issues before them. Dr. Menninger has pointed to no evidence that those courts' decisions, or the lack of any published decisions

---

[2] Dr. Menninger also speculates that, if the Form were admitted into evidence, "[t]he jury might . . . incorrectly believe that [her] response on the form somehow absolves Defendant of its obligation to accommodate Dr. Menninger's disability when she subsequently disclosed it." Mem. at 5. Dr. Menninger fails to explain how or why the jury would believe this, and it is far from clear why it would, especially after the Court has instructed the jury regarding the scope of an employer's obligation to accommodate a disability.

holding that such forms are inadmissible, has had any effect on employees' willingness to complete and submit them.

Further, to the extent that the Court's decision on an evidentiary issue in this case will have any effect at all on the behavior of other employees, there is no reason to think that its decision to admit Dr. Menninger's response on the Form would discourage employees generally from responding to their own Voluntary Self-Identification of Disability forms with accurate information. An employee who is not disabled when she submits a form, states as much on the form, later becomes disabled, and reports the disability to her employer has no grounds for concern that her response on the form will have any adverse impact on her disability claim, much less that she has "**declar[ed] [herself] outside the protections of the disability discrimination laws**" by submitting an accurate form. *See* Mem. at 5 (emphasis in original). On the contrary, she can accurately and very credibly explain that she was not disabled when she completed the form, and became disabled later on. The problem for Dr. Menninger is that she now claims that the response that she voluntarily provided on her Form was inaccurate—i.e., she claims that the allegedly disabling medical condition that she reported in January 2018 is one that she had suffered from for years, including when she submitted the Form with her response in 2015. What Dr. Menninger is advocating for, then, is a rule under which employees are free to provide inaccurate information on their Voluntary Self-Identification of Disability forms. It is far from clear what public policy would be served by a rule ensuring that employees may submit inaccurate data without consequence—or what legitimate policy interest would be harmed by a rule that encourages employees to provide accurate data on their voluntary self-identification forms.

**Conclusion**

For all of the foregoing reasons, PPD respectfully requests that the Court deny Dr. Menninger's Motion *in Limine* to Preclude Defendant's Use of "Voluntary Self-Identification of Disability" Form.

        PPD DEVELOPMENT, L.P.

        By its attorneys,

        */s/ Patrick M. Curran, Jr.*
        Rachel Reingold Mandel (BBO #660495)
        Patrick M. Curran, Jr. (BBO #659322)
        OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
        One Boston Place, Suite 3500
        Boston, MA 02108
        Telephone: (617) 994-5700
        Facsimile:  (617) 994-5701
        rachel.mandel@ogletree.com
        patrick.curran@ogletree.com

Dated: March 14, 2023

## **CERTIFICATE OF SERVICE**

    I hereby certify that on March 14, 2023 the within document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                                    */s/ Patrick M. Curran, Jr.*
                                                    Patrick M. Curran, Jr.

23370737.1