TECTEDUNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA MENNINGER,<br><br>    Plaintiff,<br><br>    v.<br><br>PPD DEVELOPMENT, L.P.,<br><br>    Defendants. | Civil Action No: 1:19-CV-11441-LTS |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION IN LIMINE [ECF DOC. NO. 103] REGARDING
DOCUMENTS PRODUCED BY PLAINTIFF ON FEBRUARY 24, 2023**

A few important facts bear mention to set the record straight.

First, the lost equity compensation that Plaintiff suffered due to Defendant's misconduct is not a "previously undisclosed category" of damages. Plaintiff disclosed in her interrogatory answers that she was seeking to recover damages including for "lost salary, bonus, benefits and any other financial benefit she would have been entitled to in connection with her employment with Defendant," including "stock options" and "equity." **Exhibit 1**, attached at No. 10. Plaintiff has never suggested otherwise.

Second, February 2023 was not the first time that Plaintiff produced documents concerning her lost equity. In fact, Plaintiff produced numerous documents concerning her equity losses, and no fewer than thirteen such documents are now on the Parties' *uncontested* exhibit list, which shows that Defendant is well aware of the equity-related losses Plaintiff is claiming and does not contest her right to offer evidence of those losses at trial.[1]

---

[1] P89, P91–P100, P461, and P462. See Joint Pretrial Memorandum [ECF Doc. No. 119].

Third, Plaintiff's damages expert Bruce Jonas did not somehow mislead Defendant into believing that Plaintiff was not claiming equity-based losses. His expert report specifically mentions Plaintiff's claim for "economic losses related to lost stock options and/or other equity grants (the 'Equity Losses')" and explains that those fall outside the scope of his report. See Jonas Report, ECF Doc. No. 114-1 at 29 n.1.[2] Defendant's choice not to have its expert evaluate Plaintiff's equity losses was not induced by Plaintiff or her expert, rather, it was a knowing and voluntary choice by Defendant.

Fourth, Defendant is not somehow confused about the "significance" of the documents implicated by its motion, and indeed that claim is belied by Defendant's own memorandum, which admits the obvious point that the documents disclosed (particularly P101) relate to Plaintiff's recoverable damages.

Fifth, Defendant is not somehow confused about how its own compensation plans work and is not confused or "harmed" by Plaintiff's identification of trial exhibits of which Defendant itself is the source and the author. Defendant raises exaggerated claims of bewilderment, and misrepresents numerous facts in support of its motion, because its motion in limine is merely an attempt to make it more difficult for the jury to understand the scope and value of harm that Defendant caused to Plaintiff by discriminating and retaliating against her.

## BACKGROUND

Since Defendant did not explain the documents implicated by its motion, Plaintiff will do so. The Court's Order Setting Case for Trial [ECF Doc. No. 94] set the deadline to make the pretrial disclosures called for by Fed. R. Civ. P. 26(a)(3) as February 21, 2023. The parties voluntarily

---

[2] Plaintiff does not intend to elicit testimony from Mr. Jonas about her equity losses.

2

agreed between themselves to exchange such production three days later. On February 24, 2023, as part of her pretrial disclosures, Plaintiff produced 17 documents to Defendant that Plaintiff may seek to use at trial. These documents were then identified on Plaintiff's exhibit list and Defendant objected to them. Defendant now seeks to exclude these documents from trial by the instant motion [ECF Doc No. 103].

The 17 documents fall into three categories. First, a single exhibit, P101,[3] is a packet entitled "Equity Incentive Plan" dated August 24, 2017 that Defendant sent to Plaintiff. This packet contains the grant notice and Stock Option Agreement for Plaintiff's 25,660 stock options that were granted to her in 2017. The options are to purchase common shares of "Eagle Holding Company I," the former name of Defendant's parent PPD, Inc. These stock options were not somehow unknown to Defendant: Defendant is well aware of how it compensated Plaintiff during her employment. Exhibit P101 in particular originated from Defendant and contains standard documents from Defendant's own compensation plans of which Defendant sent to Plaintiff and presumably has in its own possession. Further, Defendant was not unaware that Plaintiff sought to recover for these stock options. As noted above, Plaintiff disclosed that in her interrogatory answers, and the stock options referred to by P101 are evidenced by several other documents that Plaintiff designated as trial exhibits <u>without objection</u> from Defendant, including P92, P94, and P100 (produced by Plaintiff during discovery) and P461 and P462 (produced by Defendant during discovery). In preparation for trial, Plaintiff's counsel realized that P101 inadvertently had not been produced, and recognized that Plaintiff might wish to offer it as evidence at trial. Upon so realizing, Plaintiff produced same to Defendant on February 24, 2023.

---

[3] **Exhibit 2** hereto.

The second category is three LinkedIn profiles of employees of Defendant (the "LinkedIn Profiles"). The LinkedIn Profiles tend to show that Defendant has allowed other employees holding the same or similar jobs Plaintiff held to work remotely from out of state, which undermines Defendant's claim that Plaintiff's remote work arrangement was causing problems in 2018. Plaintiff identified these LinkedIn Profiles during her pretrial preparation as documents that she might wish to offer at trial. She accordingly downloaded pdf's of them and timely produced them to Defendant in her February 24, 2023 production.

The third group consists of 13 SEC filings (the "SEC Filings") filed by Defendant's corporate parents, PPD, Inc. and Thermo Fisher Scientific, Inc. ("TMO"). The SEC Filings are:

1. P11 – PPD, Inc. 10-K 2019 (filed 3/5/20), MENNINGER_SUPP00623-809;
2. P12 – PPD, Inc. 10-K 2020 (filed 2/26/21), MENNINGER_SUPP00810-991;
3. P13 – PPD, Inc. DEF 14A 2021 (filed 3/8/21), MENNINGER_SUPP000992-1058;
4. P14 – TMO Form 8 filed 4/16/21, MENNINGER_SUPP001059-65;
5. P15 – Agreement and Plan of Merger – Thermo Fisher Scientific, Powder Acquisition Corp. and PPD, Inc. (4/15/21), MENNINGER_SUPP001066-1162;
6. P16 – PPD, Inc. Form S-1/A filed 1/27/20 (Amendment 2), MENNINGER_SUPP001163-1393;
7. P17 – TMO 10-K (2022) filed 2/23/23, MENNINGER_SUPP001394-1472;
8. P18 – TMO 10-K (2021) filed 2/24/22, MENNINGER_SUPP001473-1565;
9. P19 – Eagle Holding Company I 2017 Equity Incentive Plan, Ex. 10.33 to Registration Statement Form S-1/a (filed 1/16/20), MENNINGER_SUPP001566-81;
10. P20 – PPD, Inc. DEFM14C (filed 5/25/21), MENNINGER_SUPP001582-1736;
11. P21 – PPD, Inc. 2020 Omnibus Incentive Plan, Ex. 10.38 to Registration Statement Form S-1/A, MENNINGER_SUPP001737-63;
12. P22 – TMO DEF 14A 2022 Proxy Statement (filed 4/7/22), MENNINGER_SUPP001764-1859; and
13. P23 – TMO 2013 Stock Incentive Plan, Ex. 10.1 to Form 10-K for 2021, MENNINGER_SUPP001860-78.

Defendant's parent, PPD, Inc. went public on February 6, 2020, and was later acquired by TMO on December 8, 2021. Contrary to Defendant's assertions that "most of" the documents implicated by its motion were in Plaintiff's "possession before she even filed this lawsuit," in fact, most of the SEC Filings did not even exist during the discovery period, nor were they in Plaintiff's

4

"possession" because they are public securities filings equally accessible to the world. All of the SEC Filings were authored by Defendant's parent companies, and none is confusing or surprising to Defendant.

In a nutshell, among other things, the SEC Filings reflect that when TMO acquired PPD, Inc., on December 8, 2021, all common stock in PPD, Inc. held by its shareholders (Plaintiff formerly held 738.389 shares) was exchanged for $47.50 per share, and all stock options of the category that Plaintiff held (the aforementioned 25,660 stock options) were automatically purchased for $47.50 minus the strike price, per share.[4] The SEC Filings also reflect the financial figures such as income and profits that PPD, Inc. and TMO have reported in the last few years, which the jury may use to set the amount of punitive damages if the jury chooses to award such damages.

Notably, the December 8, 2021 acquisition by TMO occurred when Defendant's Motion for Summary Judgment was still pending, and neither party was consequently engaging in discovery at the time. Plaintiff reviewed these documents during her pretrial preparation and determined that she might wish to offer these publicly filed documents as exhibits at trial; thus, she downloaded copies and timely produced them to Defendant along with her Rule 26(a)(3) disclosures.

Defendant has, of course, always been aware of its own SEC filings, how its own compensation plans work, and what consideration its employees holding equity received at the time of the TMO acquisition. Moreover, as further discussed below, neither the existence, contents,

---

[4] Between 2017 and December 8, 2021, the stock options were also impacted by two dividends and a stock split, which are well documented in the SEC Filings, and all of which may be accounted for by simple math. Defendant is well aware of all of these facts, as Defendant itself took these actions and disclosed them in its own securities filings.

nor authenticity of any of the SEC Filings is subject to reasonable dispute. Thus, at a minimum, the existence, contents, and authenticity of all of these SEC Filings (if not the truth of the matters they assert) may be judicially noticed, which renders moot any "objection" by Defendant to their use as exhibits. A number of material adjudicative facts evidenced by these filings, such as the fact that TMO acquired PPD, Inc. on December 8, 2021, are also proper subjects of judicial notice since they are not subject to reasonable dispute. See Fed. R. Evid. 201.

## ARGUMENT

### I. Standard of Review

Defendant claims that the Court should prevent Plaintiff from using the implicated documents at trial under Fed. R. Civ. P. 37(c)(1) on the grounds that Plaintiff had a duty under Rule 26(a) and/or Rule 26(e) to sooner produce documents upon which she might rely at trial.

Rule 26(e) generally requires a party to supplement its prior disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc., 999 F.3d 37, 47 (1st Cir. 2021) (quoting Fed. R. Civ. P. 26(e)(1)(A)). Incomplete or late disclosures may preclude a party from using "that information ... to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Id. (quoting Fed. R. Civ. P. 37(c)(1)).

The first prong, substantially justified, "does not mean 'justified to a high degree,' but only 'justified in substance or in the main-that is, justified to a degree that could satisfy a reasonable person.' "AVX Corp. v. Cabot Corp., 252 F.R.D. 70, 78–79 (D. Mass. 2008) (quoting Sheppard v. River Valley Fitness One, L.P., 428 F.3d 1, 12 (1st Cir. 2005). The second prong, harmlessness, is assessed on a case-by-case basis. Zampierollo, 999 F.3d at 49 (citing González-Rivera v. Centro Médico del Turabo, Inc., 931 F.3d 23, 27 (1st Cir. 2019)).

Importantly, the "severe exclusionary penalty provided for by Rule 37(c)(1)" may not be invoked "in the absence of harm to a party." Cruz-Vázquez v. Mennonite Gen. Hosp., Inc., 613 F.3d 54, 58 n.1 (1st Cir. 2010). And even when there is harm to a party, "[p]reclusion is not strictly required." Zampierollo, 999 F.3d at 47 (quoting Lawes v. CSA Architects & Eng'rs LLP, 963 F.3d 72, 91 (1st Cir. 2020)). Instead, "[w]hen noncompliance occurs, the ordering court should consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation." Id. (quoting Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003)). The factors to be considered in assessing any sanction include: the history of the litigation; the proponent's need for the precluded evidence; the justification (or lack of one) for the late disclosure; the opponent-party's ability to overcome the adverse effects of the late disclosure (surprise and prejudice); and the late disclosure's impact on the district court's docket. Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 78 (1st Cir. 2009).

## II. Plaintiff's Production of P101, a Document Authored by Defendant, Was Harmless.

The timing of Plaintiff's production of the document identified as P101 was harmless for substantially the same reasons the First Circuit identified in Zampierollo, 999 F.3d 37 (1st Cir. 2021). In that case, a plaintiff produced two documents at the same time as his opposition to a summary judgment motion, and the District Court allowed the defendant's motion to strike the documents pursuant to Fed. R. Civ. P. 37(c)(1). Finding that the District Court had applied a "severe exclusionary penalty" absent any harm, the First Circuit reversed.

As Zampierollo illustrates, a disclosure may be harmless where the document was generated by and through the opposite party's own operations and procedures and was within that party's control. Id. at 49. Also, there is no basis to believe a party has been harmed or prejudiced

7

by a non-disclosure when the document not produced is "substantially the same" as another document already in use by the parties. See id.

Here, P101 was authored and generated by Defendant and has presumably always been within Defendant's possession, custody, and control. All that occurred was that Plaintiff inadvertently did not re-produce Defendant's own document back to Defendant. The lack of prejudice to Defendant is underscored, again, by the fact that Plaintiff did disclose, years ago, that she was seeking to recover for her lost equity. Defendant has had years to prepare its defense and is neither surprised nor prejudiced. Further, as noted above, both parties produced documents that evidence Plaintiff's 25,660 stock options and several such documents have already been identified as uncontested trial exhibits. While P101 is not entirely the same as the uncontested trial exhibits, they do share a common baseline of material fact, i.e., that in 2017 Plaintiff was granted 25,660 stock options pursuant to the Eagle Holding Company I 2017 Equity Incentive Plan, half of which were time options and half performance options. That further underscores the absence of any harm.

Even if the Court finds harm, however, the Esposito factors counsel against any exclusionary sanction. The history of this litigation demonstrates that Defendant has been aware for years that Plaintiff seeks to recover for her lost equity; and as explained above Defendant cannot credibly claim to be somehow "surprised." Similarly, Defendant's claim that it was prejudiced in its ability to present stock issues to its expert is simply false. Defendant had P101 within its control because Defendant was its author, and Defendant is not surprised or confused by receiving information that it authored about how its own compensation plans work. Plaintiff produced P101 at the same time as its Rule 26(a)(3) disclosures about a month before trial, not on the "eve" as Defendant claims, and as such there is no impact to the Court's docket, nor can Defendant cannot credibly claim it has not had time to prepare any necessary response to this

8

particular file. Finally, Plaintiff has a legitimate, if minor, need for the evidence represented by P101, primarily because Sections 2.1 and 2.2 of the Stock Option Agreement within this exhibit, at MENNINGER_SUPP000482–83, specify the vesting schedule and vesting terms for the time options and performance options, and those details are not depicted on the parties' uncontested trial exhibits.[5] Without P101 it will be somewhat more difficult to explain the math behind the value Plaintiff would have received for her options on December 8, 2021, had she still been employed, because PPD, Inc. issued certain dividends to stockholders in 2019 that reduced the strike price of certain options that were at the time unvested.[6] Thus, it is helpful to the jury to be able to show with precision how many of Plaintiff's options were at the time unvested. If Plaintiff is not able to use P101, Plaintiff does note that she reserves the right to ask that the Court take judicial notice of the contents of the "Forms of" identical Stock Option Agreements applicable to PPD, Inc.'s named executive officers that have been filed with the SEC; but that exercise will be unnecessary if P101 is not excluded.[7]

Considering the above, even if the Court were to find a sanction warranted, the overwhelming absence of harm counsels for a minor sanction such as informing the jury of the timing of P101's production (a sanction suggested by the advisory committee notes to the 1993 amendments to Rule 37(c)(1)), and not the severe sanction of exclusion.

---

[5] The jury may find the plain English "Q&A" at MENNINGER_SUPP000493 to be helpful as well.

[6] See PPD, Inc. 2020 Form 10-K at 158 (filed February 26, 2021), https://www.sec.gov/ix?doc=/Archives/edgar/data/1793294/000179329421000009/ppdi-20201231.htm.

[7] See, e.g., Exhibit 10.34 to PPD Registration Statement, ("Form of Eagle Stock Option Agreement"), https://www.sec.gov/Archives/edgar/data/1793294/000119312520009021/d816854dex1034.htm.

### III. Plaintiff's Disclosure of the LinkedIn Profiles and the SEC Filings Was Not Untimely at All, and Even if It Were, it Was Both Substantially Justified and Harmless.

Turning to the LinkedIn Profiles and the SEC Filings, the premise of Defendant's Rule 37(c)(1) argument is not correct, as these documents were not produced late. As explained above, Plaintiff determined during her pretrial preparation that she might wish to use these documents at trial. Promptly after identifying them as potential trial exhibits and downloading them Plaintiff produced the documents pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii) and 26(a)(3)(A) ("evidence that it may present at trial") at an appropriate interval, that is, the Court's Rule 26(a)(3) deadline for pretrial disclosures.[8]

Even if the Court were to find these documents were untimely produced, the timing was substantially justified. Beginning with the SEC Filings, to the extent they are used as punitive damages evidence, it is obvious that the most recent filings (such as the 2022 10-K of TMO) would be the ones which the jury would logically use at trial to determine the Defendant's financial worth. It was reasonable for Plaintiff to identify and produce the most recent such documents during pretrial preparation. Regarding common stock and stock options, the full import of the SEC Filings did not become apparent until after the December 8, 2021 TMO acquisition of PPD, Inc., when it became apparent that Plaintiff would have received certain clearly defined consideration for her PPD common stock and stock options had she been continuously employed through that date by Defendant. Moreover, again, on December 8, 2021, Defendant's Motion for Summary Judgment

---

[8] Similarly, viewing the analysis through the lens of the supplemental disclosure obligations of Rule 26(e), there is no untimeliness because Plaintiff did not delay in producing the documents after identifying them as documents she might use to support her claims at trial. Cf. Jama v. City & Cnty. of Denver, 304 F.R.D. 289, 299–300 (D. Colo. 2014) ("The obligation to supplement arises when the disclosing party reasonably should know that its prior discovery responses are incomplete, e.g. because the party has now obtained information it did not previously have.") (citing Robbins & Myers, Inc. v. J.M. Huber Corp., 274 F.R.D. 63, 75 (W.D.N.Y. 2011)).

was still pending, so Plaintiff reasonably did not analyze these filings until later in early 2023 when she was preparing for trial. There was nothing unreasonable about this approach. Finally, Plaintiff identified the LinkedIn profiles as part of her pretrial preparation, and again, there was nothing unreasonable about the timing of when Plaintiff so identified and produced the files. Plaintiff was not under an obligation to produce the SEC Filings or LinkedIn Profiles at some arbitrary earlier date when there was no activity occurring in this case.

Additionally, there is no harm. First, as stated above Defendant (and its corporate parents) are the source and author of all of the SEC Filings. Defendant was well aware of its own compensation plans; of its acquisition and the compensation given to its equity holders in connection with the same; of how and how much it had compensated Plaintiff; of the fact that Plaintiff sought to recover for her equity losses; and of what it (and its corporate parents) itself stated in its public securities filings. The LinkedIn Profiles are simple documents that may easily be reviewed in a couple of minutes. Defendant cannot claim to be prejudiced in its pretrial preparation by either group of documents.

That the SEC Filings may properly be judicially noticed is an additional factor showing harmlessness. Judicial notice may occur "at any stage of the proceeding," including during trial. Fed. R. Evid. 201(d). Even if Dr. Menninger had not disclosed any of the SEC Filings as potential exhibits, and had not produced them, she would still be entitled to request that the Court take judicial notice of the SEC Filings' existence, content, and authenticity at trial. In re Am. Apparel, Inc. S'holder Litig., 855 F. Supp. 2d 1043, 1060–61 (C.D. Cal. 2012) (citing Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1064 n.7 (9th Cir. 2008). Judicial notice circumvents as unnecessary the usual practice of proving facts by admitting evidence. Getty Petroleum Mktg., Inc. v. Cap. Terminal Co., 391 F.3d 312, 321–22 (1st Cir. 2004) (Lipez, J., concurring). As such,

because Plaintiff does not formally need to introduce the SEC Filings as evidence to establish what they say, Defendant has no basis to claim harm from these documents' production or identification as exhibits.

Finally, even if the Court were to find these documents were untimely produced and that same was not substantially justified or harmless, as explained above, there is no basis for a severe sanction of exclusion. The opponent-party (Defendant) is perfectly capable of reviewing these documents within a month before trial to identify their material effect on Plaintiff's damages. The proponent (Plaintiff), meanwhile, has a legitimate need for presenting the documents, particularly to the extent they trace the value of the loss she experienced by not being able to vest her stock options and receive consideration for her common stock and stock options when PPD, Inc. was acquired in December 2021. Furthermore, as explained above the justification for the timing of Plaintiff's disclosures is sensible, as the impact of the SEC Filings on Plaintiff's equity losses did not become apparent until well after the discovery period, when the summary judgment motion was still pending, and there was nothing unreasonable about Plaintiff waiting until closer to trial to review them and identify them as exhibits. Finally, the Court should consider that Defendant has tried to support this motion with numerous misrepresentations of the record, and that Defendant is merely trying to avoid responsibility for the full financial impact of its unlawful conduct on Plaintiff.

## **CONCLUSION**

Defendant's Motion in Limine [ECF Doc. 103] should be denied.

                                         Respectfully submitted,
                                         Lisa Menninger,
                                         By Her Attorneys,

                                         */s/ Hampton M. Watson*
                                         Patrick J. Hannon (BBO #664958)
                                         Hampton M. Watson (BBO #705983)
                                         Hartley Michon Robb, LLP
                                         155 Seaport Boulevard, 2nd Floor
                                         Boston, MA 02210
                                         phannon@hartleymichonrobb.com
                                         hwatson@hartleymichonrobb.com
                                         P: (617) 723-8000
                                         F: (617) 447-2800
                                         Attorneys for Plaintiff Lisa Menninger

Date: March 14, 2023

## CERTIFICATE OF SERVICE

      I, Hampton M. Watson, certify that on March 14, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Defendant by electronically serving its counsel of record.

                                         /s/ *Hampton M. Watson*
                                         Hampton M. Watson