UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA MENNINGER,<br><br>　　Plaintiff,<br><br>　　v.<br><br>PPD DEVELOPMENT, L.P.,<br><br>　　Defendants. | Civil Action No: 1:19-CV-11441-LTS |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
DEFENDANT'S MOTION IN LIMINE [ECF DOC. NO. 101] TO EXCLUDE EVIDENCE
OF THE COMPENSATION PAID TO ANY EMPLOYEE OF DEFENDANT OTHER
THAN PLAINTIFF**

　　Precedent establishes that evidence of the compensation paid to other employees of Defendant may be relevant: assuming Plaintiff lays a logical foundation, such evidence would help to show the amount of Plaintiff's losses. Scarfo v. Cabletron Sys., Inc., 54 F.3d 931, 954 (1st Cir. 1995) (approving use of salary rate of arguably equivalent male employees as proxy for what plaintiff would have earned in the absence of discrimination).

　　This motion *in limine* [ECF Doc. 101] is meritless and should be denied.

**I.　Evidence of Other Employees' Compensation is Relevant to Damages.**

　　The admission of relevant evidence is to be analyzed under a "liberal standard of admissibility." Ferrara & DiMercurio v. St. Paul Mercury Ins. Co., 240 F.3d 1, 6 (1st Cir. 2001). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

evidence." In re Pub. Offering PLE Antitrust Litig., 233 F.R.D. 70, 78 (D. Mass. 2006) (citing Fed. R. Evid. 401) (emphasis added).

As noted above, the First Circuit has approved of the use of evidence of other employees' compensation as a legitimate way to measure a plaintiff's damages. Scarfo, 54 F.3d at 954. Even beyond that, there are many reasons why evidence of the compensation received by other employees of Defendant could help to make it more probable that the value of Plaintiff's losses due to Defendant's misconduct is a certain amount.

A. Background

Plaintiff's job title was Executive Director of Global Central Labs at PPD. She reported to Hacene Mekerri, Vice President of Global Central Labs. Mr. Mekerri reported to Chris Fikry, Executive Vice President for Laboratories.[1] Defendant is producing Dr. Fikry as a witness.[2] Defendant is also producing two other witnesses who were also "Executive Directors": (1) Chris Clendening, who was "Executive Director of Global Project Management and Design," who also reported to Mr. Mekerri,[3] and (2) Brent McKinnon, who was an Executive Director of Quality Assurance for Global Central Labs.[4] Defendant is also producing two Human Resources employees who would naturally have knowledge about the compensation paid to Defendant's employees (including employees who performed Plaintiff's former role after Plaintiff could no longer work): Chad St. John and Deborah Ballweg.

---

[1] See See ECF Doc. 73 (Defendant's Response to Plaintiff's Statement of Additional Material Facts) ¶ 6.
[2] Mr. Mekerri's trial testimony is to be presented by deposition.
[3] See ECF Doc. 73 (Defendant's Response to Plaintiff's Statement of Additional Material Facts) ¶¶ 7, 11, 63.
[4] See ECF Doc. No. 49, McKinnon Aff.. ¶ 2.

Plaintiff's compensation package included salary, bonus, benefits, and equity. Plaintiff's expert witness on damages, Bruce Jonas,[5] computed the value of Plaintiff's lost salary using an annual assumed wage increase of 2.7%, which is based on the average of Plaintiff's past raises. See Jonas Report, ECF Doc. No. 104-1 at 31. He also computed Plaintiff's bonus losses by assuming an annual bonus at the average of Plaintiff's past bonuses. Id. Plaintiff's bonuses were governed by a PPD Employee Incentive Compensation Plan (EICP), under which Defendant awarded bonuses based on a combination of "the Company's success in achieving financial goals and your individual performance."[6]

Plaintiff's damages for lost equity compensation may be divided into three categories. First, as the evidence at trial will show, Plaintiff had shares of common stock in PPD, Inc. (formerly known as "Eagle Holding Company I") that were forcibly purchased by Defendant in May 2019 after the termination of her employment. On December 8, 2021, PPD, Inc. was acquired by Thermo Fisher Scientific, Inc. ("TMO"). According to public SEC filings of PPD, Inc. and TMO, common stockholders of PPD, Inc. would have been paid a greater amount at the time of this acquisition than the amount Plaintiff received for the forced sale of her common stock in 2019. See infra note 8.

Second, Plaintiff had 25,660 stock options in PPD, Inc., granted to her in 2017.[7] These would also have been exchanged, automatically, at the time of the TMO acquisition of PPD, Inc. in December 2021 for a set value disclosed in PPD, Inc. and TMO's public SEC filings.[8]

---

[5] Mr. Jonas also projected the value of Plaintiff's lost benefits.

[6] See attached **Exhibit 1** (PPD_MENNINGER 000459–66 at 460).

[7] For more discussion see Plaintiff's Opposition to Defendant's Motion in Limine [ECF Doc. No. 103] to exclude documents produced on February 24, 2023.

[8] See, e.g., TMO Form 8-K, at Item 1.01, April 15, 2021, https://www.sec.gov/Archives/edgar/data/97745/000095015721000428/form8-k.htm .

Third, assuming she prevails on liability Plaintiff would also be entitled to recover for the lost value of equity that she would have received <u>after</u> the time she stopped working, had she remained employed with Defendant. That would include any grants of equity that may have generally been awarded to executives holding Dr. Menninger's former job or job level (Executive Director) by PPD, Inc., as well as equity that may have been awarded to such employees by TMO after the December 8, 2021 acquisition of PPD, Inc. by TMO. In the case of TMO, any grants Plaintiff would have received before trial would constitute back pay, and grants that would be given after the date of trial form part of her front pay recovery.

B.  <u>The Evidence in Question is Relevant.</u>

Testimony and other evidence at trial about how Defendant has compensated other employees is relevant because such evidence helps prove the value of Plaintiff's losses. For one thing, Plaintiff might seek to show how much she would have been compensated by eliciting testimony about how much other employees arguably equivalent to her have been compensated.[9] Such evidence is not "speculative" if the comparators are arguably equivalent. <u>Scarfo</u>, 54 F.3d at 954. For example, if Plaintiff's replacement or another employee arguably equivalent to Plaintiff received 3.5% raises on average since 2018, Plaintiff would be entitled to argue that her salary increases would have been the same if she had not suffered discrimination and retaliation. In <u>Scarfo</u>, the First Circuit affirmed the use of evidence of compensation of comparators who actually had greater responsibilities than the plaintiff, because the jury could have found the plaintiff might

---

[9] The case law about "comparators" that Defendant cites has nothing to do with the relevance of other employees' compensation to the amount of the plaintiff's damages. Rather, Defendant's case law concerns the standard for how "similarly situated" a comparator employee must be to allow a jury to infer discrimination from the fact that the employer treated the comparator more favorably. To the extent Plaintiff offers evidence of other employees' compensation to prove that she would have been similarly compensated, the comparator employee need only be arguably equivalent. <u>Scarfo v.</u> <u>Cabletron Sys., Inc.</u>, 54 F.3d 931, 954 (1st Cir. 1995).

4

have been given similar responsibilities absent discrimination. Here, indeed, Plaintiff may conceivably be "arguably equivalent" to several employees, including Clendening or McKinnon, who were also Executive Directors (Clendening reported to the same supervisor and had the same job title); or to other employees who replaced her or took over her job responsibilities after she could no longer work; or even conceivably to Mekerri, if the jury finds Plaintiff would have been promoted absent discrimination.

Another broader avenue to relevance exists as well: Plaintiff may elicit evidence about Defendant's compensation practices as to other employees, in order to help explain how her compensation would have worked. Some aspects of Plaintiff's compensation, such as bonuses and equity, may have been governed by the same plan or program terms, or may have been affected in identical ways (such as stock splits) to other employees' compensation. Those other employees need not themselves be comparators—the point is that evidence about how their compensation worked or was treated is relevant to the calculation of Plaintiff's losses if the bonus or stock was governed by the same underlying plan or terms or was treated the same way on a class-wide basis.

For example, while different employees may have been eligible for different amounts of bonus, the fact that Defendant performed well as a business one year and paid bonuses pursuant to the same bonus plan or program (to employees receiving similar subjective evaluations) at a given "target" level would help to show Plaintiff would have been paid at a similar percentage of her own target. Similarly, if all employees' stock options were treated equivalently at the time of a certain event, that would help show what would have happened to Plaintiff's stock options even if she had a different amount of options than others. The evidence may show, in other words, that equity was generally treated the same on a <u>class-wide</u> basis.

None of this evidence is "speculative." Rather, it is relevant. There is no reason why Plaintiff should be prevented from presenting this evidence at trial.

## II. Defendant Fails to Identify Any Unfair Prejudice or Risk of Confusion.

Defendant's Rule 403 argument fails because there is no unfair prejudice or risk of confusion, and even if there was, Defendant cannot show that such unfair prejudice or risk of confusion substantially outweighs the probative value of the evidence Plaintiff may use to prove her damages. See United States v. Soler-Montalvo, 44 F.4th 1, 16 (1st Cir. 2022) ("When conducting the Rule 403 balancing test, courts must heed that the default rule is that relevant evidence will be admitted.")

For one thing, Defendant argues that it would be prejudiced if the jury became aware of Defendant's "deep pockets." This bizarre argument conflates the compensation of *other employees* (the topic of the instant motion) with the "pocket" of *Defendant, the business entity*. Defendant's wealth is not a subject of the instant motion and in any event is admissible for the purpose of determining the amount of punitive damages. Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 110–11 (2009).

There is also nothing "unfair" about proving the amount of Plaintiff's losses by offering evidence of Defendant's compensation practices. This is a case where the Plaintiff alleges that Defendant's unlawful actions caused catastrophic consequences to her earning capacity, which are expected to last through her retirement date. Evidence of Defendant's compensation practices not only clears the very low bar of admissibility to qualify as "relevant," but is important to the trial.

Lastly, Defendant's "confusion" argument falls flat because there is nothing "confusing" about using evidence of Defendant's compensation practices to help demonstrate the value of Plaintiff's losses. If Defendant thinks Plaintiff is drawing an unfair comparison at trial, Defendant

will have an opportunity to explain that to the jury. However, Defendant also overlooks that using evidence of an arguably equivalent employee to show what Plaintiff would have received is not the only conceivable way evidence of other employees' compensation may be relevant. Again, Plaintiff can validly ask questions about Defendant's compensation practices as to other employees, governed by similar plan terms or the like, to help explain or confirm the way Plaintiff's compensation would have been treated.

At bottom, Defendant's motion advances meritless arguments in a desperate attempt to make it harder for Plaintiff to hold Defendant fully responsible for the costs of its actions.

## CONCLUSION

Defendant's Motion in Limine [ECF Doc. 101] should be denied.

Respectfully submitted,
Lisa Menninger,
By Her Attorneys,

*/s/ Hampton M. Watson*
Patrick J. Hannon (BBO #664958)
Hampton M. Watson (BBO #705983)
Hartley Michon Robb, LLP
155 Seaport Boulevard, 2nd Floor
Boston, MA 02210
phannon@hartleymichonrobb.com
hwatson@hartleymichonrobb.com
P: (617) 723-8000
F: (617) 447-2800
Attorneys for Plaintiff Lisa Menninger

Date: March 14, 2023

## CERTIFICATE OF SERVICE

I, Hampton M. Watson, certify that on March 14, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Defendant by electronically serving its counsel of record.

/s/ <i>Hampton M. Watson</i><br>
Hampton M. Watson