UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LISA MENNINGER,<br><br>    Plaintiff,<br><br>    v.<br><br>PPD DEVELOPMENT, L.P.,<br><br>    Defendant. | Civil Action No. 1:19-CV-11441-LTS |

## **AFFIDAVIT OF PATRICK J. HANNON**

I, Patrick J. Hannon, hereby depose and state as follows upon personal knowledge:

1. I am a partner with Hartley Michon Robb Hannon LLP ("HMRH") and counsel for the Plaintiff in this action, Dr. Lisa Menninger.

2. HMRH is a boutique law firm that concentrates in employment law, executive advocacy and litigation. Since 2012, HMRH has been ranked in Chambers USA as a Band 1 law firm in Massachusetts in the field of Labor & Employment: Mainly Plaintiffs Representation.

3. I lead HMRH's trial practice. Following a judicial clerkship with the Honorable Gene Carter of the United States District Court for the District of Maine, I served for four years as a Trial Attorney with the United States Department of Justice. I have been in private practice in Boston since 2010, and with HMRH since 2014. Since joining HMRH, my practice has focused almost exclusively on litigation of employment claims, including claims for discrimination and retaliation. I am an Editor of the Massachusetts Continuing Legal Education Employment Law Handbook, and co-author of the chapter titled "Disability Discrimination."

4. Hampton Watson, an associate at HMRH, also represented Dr. Menninger in this action. Mr. Watson earned his B.A. from Yale University and his J.D. from the Emory University

School of Law, with honors, Order of the Coif. He went on to clerk for the Honorable Justin S. Anand, U.S. Magistrate Judge, in the United States District Court for the Northern District of Georgia from 2017 to 2019 and joined HMRH immediately thereafter. Since joining HMRH, Attorney Watson's practice has focused predominantly on litigation of employment claims, including claims for discrimination and retaliation.

5.     Two other associates at HMRH—Lucia Passanisi and Sujin Han—also performed a relatively small amount of work on this matter. Attorney Passanisi was the original associate assigned to the case and worked on the matter from June 2019 through September 2019, at which time she left HMRH to join Todd and Weld. I understand that Attorney Passanisi subsequently served as second chair in the Gavin v. City of Boston case that was tried before this Court in 2021.

6.     Attorney Han assisted briefly on this matter in the summer of 2020, when additional help was need to respond to Defendant's motion for summary judgment. Attorney Han earned her B.A. from Brandeis University and her J.D. magna cum laude from New England School of Law. During law school, she received the Massachusetts Lawyers Weekly Top Women in Law Leadership Scholarship, was a two-time recipient of the Trustee Academic Scholarship, and a three-time recipient of the New England Scholar Award. Upon graduation, Ms. Han received the Trustee Bradbury Gilbert Award for Excellence in Achievement.

7.     Also assisting on this matter were two law clerks, Ilai Gavish[1] and Maxwell Black, and our firm's paralegal, Marissa Michon. At the time they performed work on this matter, Mr. Gavish was an undergraduate at Harvard University and Mr. Black was a law student at Boston College.

---

[1] Mr. Gavish is identified on the attached time records as "JD" because his billing code was later reassigned to another individual having those initials.

8.      The vast majority of work performed by HMRH is billed on an hourly basis. At the start of each year, HMRH reviews timekeeper rates and adjusts them based upon market conditions. My rate for 2023 is $575 per hour. Mr. Watson's rate is $380 per hour, and law clerks/paralegals are billed at $125 per hour.

9.      Based on my familiarity with the local legal market, I can attest that HMRH's hourly rates are reasonable. Indeed, fee applications submitted in similar cases reflect that HMRH's rates are in-line with rates charged by its competitors. For example, in 2018, a Superior Court judge found that $550 per hour was a reasonable hourly rate for a solo-practitioner representing a plaintiff in a discrimination/retaliation lawsuit. Toussaint v. Brigham & Women's Hosp., No. SUCV20142253B, 2018 WL 4760536, at *2 (Mass. Super. Aug. 21, 2018). Other courts have reached similar results. See Tuli v Brigham & Women's Hosp., Inc., No. 07CV12338-NG, 2009 WL 10693567 at *2 (D. Mass. June 8, 2009); Fronk v. Fowler, No. 02-1216, 2007 WL 1130381, at *1 (Mass. Super. Feb. 23, 2007).

10.     Here, Dr. Meninger initially retained HMRH on an hourly basis in 2018, when my rate was $450 per hour (which was before I had become an equity partner). Although Dr. Menninger's initial engagement agreement permitted HMRH to increase hourly rates on an annual basis, HMRH did not do so and, instead, the parties entered into a mixed contingency agreement whereby HMRH accepted a substantially reduced hourly rate in exchange for a percentage of any eventual recovery.

11.     Attached as **Exhibit A** is a table showing, on an annual basis, the work performed by HMRH in this matter. To calculate a reasonable fee for this work, I have utilized the applicable hourly rate for each timekeeper during each calendar year. Those rates are accurately set forth in the column titled "Hourly Rate."

12. To create Exhibit A, I utilized the true and accurate billing records attached hereto as **Exhibit B**. Although HMRH began representing Dr. Meninger in early 2018, I have excluded all time spent prior to the initial drafting of the MCAD charge, which did not begin until July 2018.

13. The billing records do not reflect time I spent on the matter that, as a matter of billing judgment, I elected not to charge to the client. For example, I typically do not bill clients for all the time that I spend discussing case strategy or logistics with associates. Instead, I exercise judgment as to what value the discussion has provided to the client, and make sure that the cost of mentoring/training associates is not inappropriately shifted to the client.

14. Similarly, I review all associate time entries to ensure that the time being billed to clients is not excessive, duplicative, or otherwise inappropriate. Throughout the course of this matter, I have periodically "written down" associate time that I thought to be excessive. I have sometimes done so by simply reducing the time of an entry (*i.e.,* reducing 2 hours to 1 hour), and other times by categorizing the work as a "no charge" or "NBW"—meaning that the time is reflected on the bill, but the client is not charged for it. In preparing Exhibit A, I have excluded all time that was "written down" in either manner.

15. Also excluded from the Exhibit A calculation are de minimis time entries by my partner Jim Hartley and associate Austin Smith in 2023, which I feel do not merit inclusion in this fee application.

16. In preparing this Affidavit, I have further reviewed the billing records to determine if any additional time should be excluded from Plaintiff's fee application. In doing so, I identified the following entries, which have been subtracted from the calculations set forth in Exhibit A:

| Invoice No. | Entry(ies) | Reason |
|---|---|---|
| 31722 | HW entries on 5/17 for .2 hours and 5/18 for .3 hours | Client inquiry re: unrelated matter. |
| 33356 | HW entries totaling 22.8 hours | Relate to a contemplated motion for reconsideration that was not pursued. |
| 33921 | HW entries totaling 11.1 ours | Relate to contemplated discovery that was not pursued. |

17.    As reflected in Exhibit A, my calculation yields a "lodestar" fee of **$544,477**.

18.    Plaintiff has also incurred the following costs and expenses in connection with this litigation:

    i.    <u>E-discovery vendor</u>. My firm utilized Datamine Discovery to process and store ESI produced in this litigation. Datamine provided an online review platform that allowed my team to search, store, print and otherwise manipulate ESI in a cost-effective and efficient manner. Based on my experience, the utilization of this service provided significant cost-savings by reducing the amount of attorney-time needed to review and utilize ESI. These costs are summarized/documented in **<u>Exhibit C</u>**, and total $5,125.

    ii.    <u>Deposition Transcripts</u>. With the exception of Bruce Jonas and Chris Clendening, all of the witnesses who testified at trial were deposed. Those transcripts were a critical part of preparing for and conducting trial. These costs are summarized/documented in **<u>Exhibit D</u>**, and total $8,637.40.

    iii.    <u>Expert Fees/Costs</u>. Plaintiff retained two experts in this matter, both of whom testified and provided the jury with critical information supporting Plaintiff's claims. In addition, Plaintiff was required to pay the cost of deposing Defendant's expert—which was another

witness whose testimony proved helpful to Plaintiff at trial. These costs are summarized/documented in **Exhibit E**, and total $76,762.22.

      v.      Travel Expenses. Dr. Menninger incurred travel expenses, both with respect to her deposition in 2020 and for trial. Additionally, I incurred expenses for parking during the course of trial, as well as for a one-night hotel stay in the Seaport—when trial preparation left insufficient time for me to travel home. These costs are summarized/documented in **Exhibit F**, and total $7,915.67.

      vi.      Other routine costs. These include the filing fee, courier fees, FedEx charges, copying charges, and mediation fee. These costs are summarized/documented in **Exhibit G**, and total $4,889.16.

19.      Dr. Menninger's total costs/expenses in this litigation total **$103,329.45.**

20.      Based upon my experience, as well as my knowledge of the case, I am of the opinion that the above fees and costs are in all respects fair and reasonable.

Signed under the pains and penalties of perjury on this 13th day of April, 2023.

                                                    */s/ Patrick J. Hannon*

                                                    Patrick J. Hannon