# EXHIBIT A

Chief Judge Ricardo S. Martinez

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| TROY COACHMAN,<br><br>    Plaintiff,<br><br> vs.<br><br>SEATTLE AUTO MANAGEMENT, INC. dba MERCEDES BENZ OF SEATTLE and AL MONJAZEB<br><br>    Defendants. | CASE NO.: 2:17-CV-00187-RSM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR NEW TRIAL, OR IN THE ALTERNATIVE, REMITTITUR**<br><br>**NOTING DATE: NOVEMBER 23, 2018** |

PLAINTIFF'S OPPOSITION TO MOTION
FOR NEW TRIAL OR REMITTITUR
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  (206) 682-6711

I.     INTRODUCTION

Defendants move for a new trial on seven separate grounds. Each is unpersuasive. They argue the jury's findings were against the weight of the evidence; and that they were prejudiced by the Court's erroneous evidentiary and legal rulings and by alleged misconduct of Plaintiff's counsel. Alternatively, Defendants argue for the extraordinary remedy of remittitur. Each of Defendants' arguments is contrary to the law and the facts.

The Court is familiar with the evidence presented during the eight-day trial. In brief, Mr. Coachman was the Finance Director of Mercedes Benz Seattle. He had surgery and lost the use of his vocal chords due to cancer. Thereafter, he spoke using a voice prosthesis that altered the sound of his voice. His doctors released him to return to work. But his employer refused to return him to work or accommodate him, and instead, fired Mr. Coachman over email.

During trial, Defendants claimed that Mr. Coachman rejected an open sales manager position, which, they asserted, was offered to him as a disability accommodation.[1] They claimed that, having rejected the open position and being unable "to communicate clearly" because of his disability, Defendants had to terminate Plaintiff's employment.[2] Each of these claims was thoroughly discredited at trial.[3] Plaintiff presented evidence demonstrating that Defendants failed to engage in the interactive process and failed to offer available reasonable accommodations.[4] And

---

[1] Ex. A (Trial Transcript Excerpts), Tr. Trans. **185:16-21** (Hicks). Declaration of Beth Bloom (11/19/2018) ("Bloom Decl."). All references to Exhibits A, B, C, D, and E are attached to the Bloom Declaration.
[2] Ex. A Tr. Trans. **170:19-23 (Hicks); 13:3-7, 140:22-141:8 (**Monjazeb**)**.
[3] The general manager Jason Graham and Plaintiff both testified credibly that Coachman was never offered a sales manager position. Ex. A, Tr. Trans. **27:6-15, 28:19-22** (Graham); **121:3-16** (Coachman). Further, Plaintiff testified he would have accepted the sales manager position if offered to him. Ex. A, Tr. Trans. **122:11-16, 126:15-22, 172:14-20 (Coachman)**. Plaintiff, his medical providers, friends, family, and subsequent employer all testified credibly that Mr. Coachman was able to communicate clearly as of January 2015. Ex. A, Tr. Trans. **126:2-9** (Coachman); **150:19-151:2** (Repanich); **73:12-25, 74:18-75:8** (Stimson); **104:14-22** (Bunton); **11:9-12:3** (Borgert). General Manager Jason Graham testified that firing Mr. Coachman was never a consideration; he could have found a way to retain Coachman; and did not do so only because Owner Defendant Al Monjazeb directed him not to be involved. Ex. A, Tr. Trans. **6:25-7:22, 28:10-18, 32:12-13, 33:7-16** (Graham).
[4] Ex. A, Tr. Trans. **30:16-18, 31:12-32.13** (Graham) (coffee meeting not part of interactive process), **127:13-128:10**

PLAINTIFF'S OPPOSITION TO MOTION
FOR NEW TRIAL OR REMITTITUR - 1
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  (206) 682-6711

1  beyond that, he presented direct evidence of discrimination[5] and evidence that Defendants would
2  not have fired him but for his voice disability.[6] After he retained a lawyer, Defendants offered him
3  reinstatement to his former position.[7] Plaintiff rejected this offer because he was already working
4  and feared retaliation if he returned.[8] The unanimous jury found these facts established violations
5  of the Americans with Disabilities Act and the Washington Law Against Discrimination. Dkt. 75.

6  Plaintiff lost his long-time job, lost his home, and was seriously emotionally harmed by the
7  conduct of his employer. The jury rightfully allowed him $236,812 for economic damages and
8  $4,697,248 for compensatory damages. Dkt. 75. The jury did justice, nothing more. Defendants
9  have had their day in court. There is no factual or legal basis for a "do over."

## II.  AUTHORITY & ARGUMENT

Courts do not grant new trials unless the verdict "[i]s against the great weight of the evidence, or it is quite clear that the jury has reached a seriously erroneous result." *EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997). "Doubts about the correctness of the verdict are not sufficient grounds for a new trial: the trial court must have a firm conviction that the jury has made a mistake." *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1372 (9th Cir. 1987). "A jury verdict should be set aside only when the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010) (citations omitted). Remittitur is rarely granted. *In re Exxon Valdez*, 270 F.3d

---

(Coachman) (Monjazeb never responded to his request for meeting); **89:6-12, 122:11-16, 125:8-20** (Coachman) (would have accepted transfer, part-time work, medical device, or additional medical leave but employer never offered them), **141:23-142:16, 143:2-21** (Clark) (explaining professional standards used by human resource professionals).
[5] Ex. A, Tr. Trans **9:9-20** (Graham) ("[Mr. Monjazeb] was concerned how we dealt with high line customers, how the customers would feel about it. . . .I know it was a concern how customers would react to it."), **14:6-13** (Capps) ("… [Mr. Monjazeb] was worried about the image that we would portray, that the customers would be uncomfortable hearing an unconventional voice like that.").
[6] Ex. A, Tr. Trans **36:24-38:4** (Monjazeb).
[7] Ex. A, Tr. Trans **84:21-85:6** (Coachman); 131:24-132:10 (Monjazeb).
[8] Ex. A., Tr. Trans. **84:21-85:6** (Coachman).

PLAINTIFF'S OPPOSITION TO MOTION
FOR NEW TRIAL OR REMITTITUR - 2
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  (206) 682-6711

1215, 1247–48 (9th Cir. 2001).

**A. The Clear Weight of the Evidence Supports the Jury's Verdict.**

On a Rule 59 motion for a new trial, the trial court may weigh the evidence and credibility of the witnesses. *See Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990). But the court is "not justified in granting a new trial merely because it might have come to a different result from that reached by the jury." *Id.*

**1. The Weight of the Evidence Established Plaintiff's Request For An Accommodation and ADA Liability (Jury Instruction No. 12).**

Defendants argue that a new trial is appropriate because the jury found Plaintiff requested an accommodation when they claim he did not. Dkt. 104 at 3:5-4:9. This argument fails because it is undisputed that Mr. Coachman requested medical leave for his laryngectomy surgery.[9] Under *Humphrey v. Mem'l Hosps. Ass'n*, Defendants had an ongoing duty to explore alternative accommodations if they believed ending Mr. Coachman's medical leave in January 2015 would be ineffective. 239 F.3d 1128, 1138-39 (9th Cir. 2001)*;* The Court correctly rejected this argument at trial and should do so again here.[10]

**2. The Weight of the Evidence Established Plaintiff Reasonably Refused Defendants' Offer of Reinstatement.**

Defendants next argue that a new trial is appropriate because the jury rejected their affirmative defense of an "unconditional offer of reinstatement." Dkt. 104 at 8:15-9:5. Defendants first argue that Exhibit A-36 supports their claim. But this exhibit was neither offered nor admitted. Dkt. 70. Next, Defendants invite the Court to commit error by usurping a credibility assessment

---

[9] Ex. B, Trial Tr. **104:8-12** (Coachman). *See also* Ex. B, Trial Tr. **64:12-23** (arguing in closing that request for medical leave met necessary elements of Instruction 12).
[10] Moreover, Defendants do not explain why a new trial is the appropriate remedy where they do not attack the jury's findings on the remaining two disparate treatment claims.

PLAINTIFF'S OPPOSITION TO MOTION
FOR NEW TRIAL OR REMITTITUR - 3
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798 (206) 682-6711

made by the jury. Dkt 104 at 9:1-3. When a witness is impeached at trial, credibility is central to the jury's determination, and the court owes "a decent respect for the collective wisdom of the jury." *Landes Const.,* 833 F.2d at 1371. The jury could credit Mr. Coachman's statement that he was already working and "didn't feel safe" to return to his employer.[11] They found his decision to reject the offer (whether unconditional or not) reasonable. Dkt. 74 (Jury Instruction No. 16). The Court should accept the findings of the jury.

### B. The Legal and Evidentiary Rulings of the Court were Correct.

A court may grant a new trial as a result of an erroneous evidentiary ruling, but only if that ruling substantially prejudiced a party. *Ruvalcaba v. City of Los Angeles,* 64 F.3d 1323, 1328 (9th Cir. 1995). Erroneous jury instructions and the failure to give adequate instructions are also bases for a new trial where a party is substantially prejudiced. *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). Defendants cannot meet this standard.

#### 1. The Admission of Plaintiff's Medical Records (Ex. 56) Was Proper.

Defendants claim a new trial is warranted because the Court erred in admitting Attending Physician Statements. Dkt. 104 at 4:10-5:21. Mr. Coachman testified he received the completed forms from his doctor and gave them to his employer.[12] By the time of trial, his doctor was deceased. The Court admitted the records over Defendants' objections.[13] Dkt. 70. Although, the documents contained all indicia of trustworthiness, no records custodian declaration accompanied the exhibit. Dkt. 105-2; Fed. R. Evid. 807. A copy of the missing records custodian declaration establishing the medical records' authenticity accompanies this brief. Ex. D (dated Sept. 18, 2018

---

[11] Ex. B, Tr. Trans. **84:21-85:6** (Coachman).
[12] Ex. C, Tr. Trans. **109:24-114:8** (Coachman).
[13] Ex. C, Trial Tr. **114:9-20**. Defendants moved *in limine* to exclude the medical records. Dkt. 25. The Court denied the motion finding the records admissible as business records and as notice to the employer. Dkt. 44 at 7-8.

PLAINTIFF'S OPPOSITION TO MOTION
FOR NEW TRIAL OR REMITTITUR - 4
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  (206) 682-6711

addressed to Sheryl Willert), Bloom Decl; Fed. R. Evid. 803(6) and 902(11). In addition, Defendants cross-examined two other medical providers, who testified Plaintiff was ready to return to work.[14] This ministerial error is harmless and not a basis for a new trial. *See* Fed. R. Evid. 60(a).

**2. The Court Properly Barred Defendants From Arguing That An Offer of Reinstatement Made After an Unlawful Discharge May Negate Liability.**

Defendants claim they were prejudiced by the Court's ruling precluding them from arguing to the jury that Defendants accommodated Mr. Coachman by offering him reinstatement *after* they fired him because of his disability. Dkt. 104 at 9:6-10:5. This is not the law. An offer of reinstatement does not negate liability. It may toll liability for backpay. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 (1982). This bizarre argument was fully briefed and correctly rejected by the Court during trial. Dkts. 65-66; Ex. C, Trial Tr. **15:21-24** (Court ruling).

The credible evidence at trial established Defendant Monjazeb made the decision to fire Mr. Coachman instead of providing available reasonable accommodations for Mr. Coachman's voice disability.[15] Available accommodations included transfer to another vacant position and continued medical leave.[16] The employer produced no evidence that it would be an undue hardship to provide either accommodation.[17] *See also* Dkt. 74 (Jury Instr. 14-Undue Hardship). These facts established a failure to accommodate as the jury correctly found. See Dkt. 74 (Jury Instr. No. 13-WLAD Failure to Accommodate); Dkt. 75 (verdict).

Mr. Coachman's disability, disparate treatment, and failure to accommodate claims accrued at the time he was fired rather than accommodated. *Kuehn v. Snohomish Cty*, 186 Wn.

---

[14] Ex. C, Tr. Trans. **73:19-25, 75:3-8** (Stimson); **150:19-151:2**, (Repanich) (he was "absolutely" ready to work).
[15] Ex. C, Tr. Tran. **14:12-15:4, 67:3-24** (Monjazeb) (unpaid leave was possible accommodation in January 2015). The employer did not contest that Coachman had a known impairment which substantially limited his ability to perform his job. Dkt. 45-1 ¶¶ 12; 22 (Pre-Trial Order); Dkt. 5 ¶ 5.2 (Answer).
[16] Ex. C, Tr. Tran. **14:12-15:4, 20:18-24, 67:3-24** (Monjazeb); **175:15-19, 186:4-9** (Hicks); **135:18-24, 136:18-20, 137:21-138:5** (Clark).
[17] Ex. C, Tr. Tran. **175:15-19, 186:4-9** (Hicks); **14:12-15:4** (Monjazeb).

PLAINTIFF'S OPPOSITION TO MOTION
FOR NEW TRIAL OR REMITTITUR - 5
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798 (206) 682-6711

App. 1044 (2015); *Humphrey,* 239 F.3d 1136, 1138-39. This fact makes Defendants' reliance on *Wheeler v. Catholic Archdiocese* inapposite. 65 Wn. App. 552, 559-561, 563-564 (1992). *Wheeler* addressed the accrual of liability *after* discharge – an issue not before this Court. *Id.* (challenging not the firing but the failure to notify about post-termination vacancies). Defendants' conduct after discharge is not relevant. No case holds that liability can be reversed by offering a disabled employee reinstatement after wrongful termination.

### C. Plaintiff's Counsel Engaged in No Misconduct. Defendants Had the Opportunity to Object at Trial to Cure Any Claimed Prejudice But Did Not.

The losing party after a jury trial will often claim that conduct of counsel has tainted the verdict. Wright & Miller, 11 Fed. Prac. & Proc. §§ 2805, 2809. Most motions on this ground are denied. *Id.* Whether misconduct of trial counsel has been so egregious as to require a new trial is a decision committed to the broad discretion of the court. *See Landes Const.,* 833 F.2d at 1371-72. However, a new trial should only be granted where the "flavor of misconduct ... sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict." *Settlegoode v. Portland Pub. Schs.*, 371 F.3d 503, 516-17 (9th Cir. 2004). *See also Cooper v. Firestone Tire & Rubber Co.,* 945 F.2d 1103, 1107 (9th Cir. 1991) (declining to grant a motion for a new trial based on alleged misconduct in closing argument).

#### 1. Plaintiff's Counsel Did Not Examine a Witness About Other Complaints Against the Defendants. The Unsolicited Response Was Harmless.

Defendants claim a new trial is appropriate because Plaintiff's counsel engaged in prejudicial misconduct by eliciting testimony about other employee complaints in contravention of the Court's *in limine* order. Dkt. 104 at 5:22-7:11 But, as set forth in the transcript excerpt, this is not what happened. *Id.* at 6:4-21. On redirect, to uncover bias, Mr. Whitehead asked a witness why he had made statements hostile to Plaintiff's interest while employed by Mercedes Benz

PLAINTIFF'S OPPOSITION TO MOTION
FOR NEW TRIAL OR REMITTITUR - 6
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798 (206) 682-6711

1  Seattle. *Id.* Defense counsel had elicited these prior statements on cross-examination. The witness
2  explained he feared reprisal if he did not provide hostile statements helpful to his employer. *Id.* at
3  6:4-12. The witness added, "One of our employees had filed a complaint –." *Id.* Defense counsel
4  immediately objected. The Court sustained the objection. The witness made no further statement.
5  *Id.* At a sidebar, Plaintiff's counsel argued that the employer had opened the door by relying upon
6  unfavorable statements made under duress. Ex. E, Trial Tr. **22:18-23:3** (Whitehead argument).
7  The Court did not permit further inquiry. Ex. E, Trial Tr. **23:4-9** (Court ruling). In the context of
8  an eight-day trial, it can hardly be said that utterance of eight words volunteered by a witness about
9  an unexplored complaint so permeated the trial with prejudice as to support a new trial.

### 2. Plaintiff's Closing Argument Requesting that the Jurors Restore The Dignity That Had Been Taken From Him was Proper.

Defendants claim now that Plaintiff's counsel's argument regarding emotional distress damages was "unequivocally punitive" because counsel improperly sought "disgorgement" rather than damages for the harms suffered. Dkt. 104 at 7-8. But it is the nature of trial to bring vigorous, ethical advocacy to the courtroom. *Settlegoode,* 371 F.3d at 518*; see also Strange v. Les Scwhab Tire Center of Wash., Inc.,* No. C06-0045RSM, 2010 WL 11527268, at *5 (W.D. Wash. Jan. 8, 2010) (some "emotionally charged language" during closing is a "well-accepted" trial tactic). Counsel never urged the jury to punish Defendants. The record does not contain improper argument and certainly none to justify setting aside the judgment of a jury.

Plaintiff's Counsel focused on the evidence of emotional distress and how to fairly value those harms during closing argument. Ex. E, Trial Tr. **57:19-59:3** (urging jurors to consider the evidence of each type of harm and "how bad," "how long," and "how much longer" Mr. Coachman would endure each harm). In one illustration focused on personal indignity, Counsel contrasted the company's discriminatory treatment, offensive statements, and aggressive litigation tactics

PLAINTIFF'S OPPOSITION TO MOTION
FOR NEW TRIAL OR REMITTITUR - 7
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  (206) 682-6711

with Mr. Coachman's dedicated and exceptional service to the company.[18] Counsel suggested $4,240,000 could be a fair value for the loss of personal dignity over the past four years and into the future. *Id.* at **61:18-62:11**. If Defendants believed this argument was improper they did not object, which might have allowed a curative instruction, if the Court believed one was necessary.

The federal courts erect a "high threshold" to claims of improper closing arguments raised for the first time after trial in civil cases. *Hemming v Tidymans's Inc.,* 285 F.3d 1174, 1193 (9th Cir. 2002). In evaluating the likelihood of prejudice, the Court must consider "the totality of circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself," *Hemming*, 285 F.3d at 1193.

There was no call to punish the Defendants and no inflammatory language. *See Zweizig v NW Direct Teleservices, Inc.,* 331 F.Supp.3d 1171, (D. Or. 2019) (finding even direction to jury to "send a message" with its damages award was not punitive). The closing argument was an appeal to fairness.[19] Plaintiff's counsel did not flout the Court's rulings as Defendants suggest but argued as the Court directed.[20] Both parties established that sales numbers and profits were closely tracked by the dealership and by Mr. Coachman and his peers as a stand-in for the sense of pride, accomplishment, and competition they felt in their work.[21] Other witnesses acknowledged Mr.

---

[18] Ex. E, Trial Tr. **60:16-62:14**. Defendants argue that the $1,000,000 annual profit figure was incorrect. But it is the number provided by Defendant Monjazeb in trial. Ex. E, Tr. Trans. **33.13-17**, **75:15-17, 76:17-23** (Monjazeb).

[19] Ex. E, Trial Tr. **57:19-22; 58:10-13; 62:8-18**.

[20] Ex. E, Tr. Trans **57:1-4** (arguing the Defendants' $13 million company could afford any reasonable accommodation). The Court instructed counsel to direct argument about the company's financial condition toward the Defendants' "undue hardship" defense and to avoid reference to the individual Defendant's personal wealth. Ex. E, Tr. Trans. **16:15-17:2**. Counsel did not mention Defendant's personal wealth at any point in closing.

[21] Ex. E, Tr. Trans. **133:23-134:12** (Kindle) (describing dealership work culture in which employee sales numbers were openly followed "like sports' to gauge employee performance and individual contributor success), **8:17-25** (Capps) (acknowledging jealousy at Coachman's high profit level). Defendants made the profits of the finance department and its role as the "financial engine" of the dealership a central theme. *See, e.g.,* Ex. E, Tr. Trans. **111:12-111:22** (D opening argument) (arguing Coachman was "integral" to the profit of the business).

PLAINTIFF'S OPPOSITION TO MOTION  
FOR NEW TRIAL OR REMITTITUR - 8  
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED  
SUBIT & THOMAS LLP  
Suite 1200 Hoge Building, 705 Second Avenue  
Seattle, Washington 98104-1798  (206) 682-6711

Coachman's need, not only to work, but to achieve excellence. This pride contrasted with the sense of shame, betrayal, and personal indignity Mr. Coachman felt when he learned he was "unwanted and "thrown away" after fourteen years of service.[22] In context, the brief reference to Coachman's profit generation was isolated and not prejudicial. *See, e.g., Jadwin v. Cty. Of Kern*, 767 F.Supp.2d 1069, 1083-1087 (E.D. Cal. 2011) (even call to jury to consider employer's size and resources in closing argument not a basis for new trial).

Counsel sought $9.42 million dollars in total compensatory damages while emphasizing that her calculation was merely opinion.[23] The jury returned less than half this amount, allowing a precise figure of $4,697,248 for compensatory damages. Dkt. 75. The jury received proper instruction on calculating an emotional distress award. Dkt. 74 (Jury Instr. 15). The court instructed the jury that the argument of counsel was not evidence, an admonition that the Court must presume the jury followed. *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1270-71 (9th Cir. 2000). Given the strength of the case and the evidence of emotional harm, the verdict suggests, not passion, but careful deliberation and adherence to the Court's instruction.

**D. Remittitur of Non-Economic Damages is Not Appropriate Given the Evidence Establishing Plaintiff's Harms and Losses**

Failing every other argument, Defendants argue that the verdict is just too large. But Courts afford "substantial deference to a jury's finding of the appropriate amount of damages." *In re Exxon Valdez*, 270 F.3d at 1247–48. A district court "*must* uphold the jury's findings unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Id.* (emphasis in original). The Court views the evidence concerning

---

[22] Ex. E, Tr. Trans **159:24-160:6**, **179:10-23** (Costa); **43:11-12, 43:21-25** (Saxton) ("It's an incredible sense of pride for Troy in doing not just a good job, but an exceptional job."); **92:25-93:6, 93:21-94:15** (Matteson) (describing sense of pride in work and betrayal); **130:18-22; 136:8-14** (addressing indignity of being fired over email by owner of a "million dollar company"), **129:20-22** (recalling loss of job was emotional four years later) (Coachman).

[23] Ex. E, Trial Tr. **62:18-63:2** (closing).

PLAINTIFF'S OPPOSITION TO MOTION
FOR NEW TRIAL OR REMITTITUR - 9
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  (206) 682-6711

damages in the light most favorable to the prevailing party. *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1387 (9th Cir. 1987), *amended on other grounds by* 817 F.2d 609 (9th Cir. 1987). The Court *must* uphold the jury's verdict here given the substantial evidence of harm.

At trial, Plaintiff established that he was seriously harmed by Defendants' failure to accommodate his disability and related decision to terminate his employment. He lost his income, his health insurance, his disability benefits, and endured despair and humiliation, causing him to seek counseling.[24] Without disability benefits, Mr. Coachman was unable to provide for himself when his cancer returned in 2015.[25] He then lost his home, which was devastating and isolating for him.[26] The jury correctly concluded that Defendants' unlawful conduct was the proximate cause of each of these harms. Dkt. 75 (Question No. 7) Eight witnesses gave unrebutted testimony about the humiliation, personal indignity, fear, anxiety, and anguish Plaintiff suffered.[27] Add to this the fact that Mr. Coachman was recovering from cancer as these events unfolded, and that returning to work was the driving motivation for his recovery, and there is little wonder why the jury returned a large compensatory damages verdict.

Nevertheless, Defendants seek to undo the jury's verdict as "excessive." They first argue that the jury failed to consider testimony by Plaintiff's oncology social worker about Plaintiff's other life stressors. To the contrary, the jury understood the importance of Ms. Matteson's testimony. Defendants apparently did not. Ms. Matteson testified about Plaintiff's emotional

---

[24] Ex. A, Tr. Trans **138:8-144:8, 144:19-24, 145:12-146:2** (Coachman), **139:20-141:25**, **181:11-25** (Campbell) (not eligible for disability benefits after termination), **171:5-172:11 (**Costa) (returning to work was "all he could talk about" through his cancer recovery. When Coachman lost his job it was crushing because with the cancer, surgery, and loss of his voice, "he had already gone through so much already" and the job loss was "just another blow"); **92:25-93:6; 93:21-94:6, 94:11-15, 95:8-12, 95:21-96:1, 99:1-6, 99:15-25** (Matteson) (stating opinion that firing caused emotional distress), **100:9-16** (Matteson) (other life stressors made Coachman more susceptible to emotional injury from firing), **41:23-43:1**, **48:4-13** (Saxton) (loss of Coachman's job after recovering from multiple bouts of cancer caused him to have a "loss of faith" and was "just turning the knife."), **154:15-155:6** (Repanich).
[25] Ex. A, Tr. Trans **144:19-24; 145:12-146:2** (Coachman).
[26] *Id.*; **177:10-18, 178:7-15** (Costa) (describing pain of moving out of his home and into a mobile home:, "we were packing up his life . . .it was taken away from him"), **52:8-17** (Saxton) (new residence was "not his home.").
[27] *See e.g.,* note 24 *supra.*

PLAINTIFF'S OPPOSITION TO MOTION
FOR NEW TRIAL OR REMITTITUR - 10
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  (206) 682-6711

distress stemming from his termination, his sense of betrayal at his employer, how his firing upended his "meaning and purpose in his life," and how Plaintiff's hard upbringing could make the loss of his job significantly more traumatic.[28] Considering the totality of Ms. Matteson's testimony and the strength of the seven other unrebutted witnesses supporting emotional distress damages, [29] there was ample evidence from which the jury could conclude that Defendants caused Plaintiff serious emotional harm and indignity worthy of significant compensation. The jury could also conclude that Mr. Coachman was especially susceptible to harm. *See* Dkt. 74 (Jury Instr. 18- Particular Susceptibility) (Jury Instr. 17 – Aggravation of Pre-Existing Condition). Plainly put, Defendants hurt Mr. Coachman badly and the jury's verdict was commensurate with his harms.

Defendants other "excessiveness" argument is that damages awarded to Plaintiff were greater than damages awarded in other cases. Dkt. 104 at 10-12. The Court should reject this argument as well. Under Washington law, "it is improper to assess the amount of a verdict based upon comparisons with verdicts in other cases." *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.*, 123 Wn.2d 15, 33-34 (1993).[30] This is because awards in other cases are "rarely dispositive given the fact specific nature of damages claims." *Hendrickson v. Cooper,* 589 F.3d 887, 892 (7th Cir. 2009); *see also Dolenz v. United States,* 443 F.3d 1320, 1322 (10th Cir. 2006) ("it is a difficult and often fruitless task to compare damages in one case with those in another"). This case is based primarily on the WLAD given the size of the verdict and the application of damages caps under the ADA. *See Passantino v. Johnson & Johnson Consumer Prod., Inc.,* 212 F.3d 493, 509 (9th Cir. 2000) (trial court may allocate compensatory damage award to state law claim in light of

---

[28] Ex. A, **92-96, 99-100** (Matteson).

[29] Defendants single out Ms. Matteson's testimony, but do not address the testimony of Brandon Kindle, Sonya Costa, Shirley Bunton, Troy Coachman, Carole Stimson, Marie Repanich, or Kamala Saxton, all of whom testified concerning their first-hand observations of Mr. Coachman's emotional distress damages.

[30] Reliance on state law is appropriate authority on a challenge for excessive verdict when the underlying claim is based, in part, on state law. Wright & Miller, 11 Fed. Prac. & Proc. Civ. § 2802 (3d ed.); *see Browning-Ferris Indus. Of Vermont, Inc. v. Kelco Disposal, Inc*., 492 U.S. 257, 278-79 (1989).

PLAINTIFF'S OPPOSITION TO MOTION
FOR NEW TRIAL OR REMITTITUR - 11
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  (206) 682-6711

statutory caps). The Court should judge the case on its merits rather than comparators. *See Adcox*.

Even assuming *arguendo* other verdicts are somehow relevant, Defendants have set the stage for an unfair comparison. They begin with a straw man argument.[31] There is no set ratio of economic and non-economic damages. If there was a ratio, then the value of emotional harms suffered by a hotel owner would always be greater than the harms of the hotel housekeeper. Happily, this is not the law. Second, Defendants unfairly limit their review of recent verdicts to disability discrimination cases. All individual employment discrimination and retaliation verdicts share the same jury instruction and are equally persuasive. *See* Wash. Pattern Jury Ins. 330.81. A more expansive survey of Washington employment cases finds many compensatory damage recoveries in the multi-million-dollar range. Bloom Decl. ¶ 7 and Exhibit G (Employment Litigation Comparators). Finally, the size of the 10-person jury, their attentive, serious-minded, conscientious efforts, the unanimity of their verdict, and the precision of their exacting award of $4,697,248 for compensatory damages belies the Defendants claim that the award was based on anything other than the substantial evidence of emotional distress. Dkt. 75. The Court should not disturb their verdict simply because Defendants were unhappy with the ultimate result.

**E.  Plaintiff Requests Attorney's Fees and Costs.**

Plaintiff has incurred 54.4 hours of attorney time totaling $24,225 and costs of $1235.10 opposing this motion. Bloom Decl. ¶¶ 8-12. Plaintiff requests recovery on post-trial briefing.

### III.  CONCLUSION

For the reasons stated above, the Court should deny Defendants' request to set aside the jury verdict or, in the alternative, for remittitur.

---

[31] Citation to *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408 (2003), analyzing the constitutionality of a punitive damages award, is irrelevant since compensatory damages do not implicate due process concerns. Even so, the Ninth Circuit has approved many high-ratio punitive damages awards. *See, e.g., Swinton v. Potomac Corp.,* 270 F.3d 794, 818 (9th Cir. 2001) (upholding a 28 to 1 punitive to compensatory damages ratio).

PLAINTIFF'S OPPOSITION TO MOTION
FOR NEW TRIAL OR REMITTITUR - 12
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798 (206) 682-6711

DATED this 19th day of November, 2018.

FRANK FREED SUBIT & THOMAS LLP

*s/ Beth Barrett Bloom*
Beth Barrett Bloom, WSBA No. 31702
*s/ Anne Silver*
Anne Silver, WSBA No. 51695
Attorney for Plaintiff Troy Coachman
705 Second Avenue, Suite 1200
Seattle, Washington 98104
(206) 682-67111

SCHROETER GOLDMARK & BENDER

*s/ Jamal N. Whitehead*
Jamal N. Whitehead, WSBA No. 39818
810 Third Avenue, Suite 500
Seattle, WA 98104
Tel: (206) 622-8000
whitehead@sgb-law.com

*Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO MOTION
FOR NEW TRIAL OR REMITTITUR - 13
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104–1798  (206) 682-6711

# CERTIFICATE OF SERVICE

I, Hannelore Ohaus, certify and state as follows:

1. I am a citizen of the United States and a resident of the state of Washington; I am over the age of 18 years and not a party of the within entitled cause. I am employed by the law firm of Frank Freed Subit & Thomas LLP, whose address is 705 Second Avenue, Suite 1200, Seattle, Washington 98104.

2. I caused the foregoing document to be served upon counsel of record at the address and in the manner described below, on November 19, 2018.

| | |
|---|---|
| Sheryl J. Willert, WSBA #08617<br>Jeffery M. Wells, WSBA #45840<br>WILLIAMS, KASTNER & GIBBS PLLC<br>601 Union Street, Suite 4100<br>Seattle, WA 98101-2380<br>Telephone: (206) 628-6600<br>swillert@williamskastner.com<br>jwells@williamskastner.com | [ ] U.S. Mail<br>[ ] ABC Legal Messenger<br>[ ] Facsimile<br>[ ] E-Mail<br>[X] Via CM/ECF |

Attorneys for Defendants

| | |
|---|---|
| Howard M. Goodfriend, WSBA # 14355<br>Catherine W. Smith, WSBA # 9542<br>Ian C. Cairns, WSBA # 43210<br>1619 8th Avenue North<br>Seattle, WA 98109<br>Telephone: (206) 624-0974<br>howard@washingtonappeals.com<br>cate@washingtonappeals.com<br>ian@washingtonappeals.com<br>Attorneys for Defendants | [ ] U.S. Mail<br>[ ] ABC Legal Messenger<br>[ ] Facsimile<br>[ ] E-Mail<br>[X] Via CM/ECF |

I hereby declare under the penalty of perjury of the laws of the State of Washington that the foregoing is true and correct.

DATED at Seattle, Washington on this 19th day of November, 2018.

*s/* Hannelore Ohaus
Hannelore Ohaus

PLAINTIFF'S OPPOSITION TO MOTION
FOR NEW TRIAL OR REMITTITUR - 14
CASE NO.: 2:17-CV-00187-RSM

FRANK FREED
SUBIT & THOMAS LLP
Suite 1200 Hoge Building, 705 Second Avenue
Seattle, Washington 98104-1798  (206) 682-6711